WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo

Proposed Special Litigation Counsel
for the Debtors and Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————————————x | | Chapter 11 |
| In re: | : | |
| | | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | |
| Debtors. | : | |
| ———————————————————————x | | |
| LEHMAN BROTHERS SPECIAL FINANCING INC. | : | |
| Plaintiff, | : | |
| − against − | : | Adversary Proceeding |
| | | No.: _____ (JMP) |
| BANK OF AMERICA NATIONAL ASSOCIATION, | : | |
| THE BANK OF NEW YORK MELLON NATIONAL | | |
| ASSOCIATION, BNY CORPORATE TRUSTEE | : | |
| SERVICES LTD., CITIBANK, N.A., DEUTSCHE BANK | | |
| TRUST COMPANY AMERICAS, U.S. BANK | : | |
| NATIONAL ASSOCIATION, WELLS FARGO BANK | | |
| NATIONAL ASSOCIATION, | : | |
| Trustee Defendants, | : | **COMPLAINT** |
| − and − | : | |
| 801 GRAND CDO SPC, f/a/o THE SERIES 2006-1, as | : | |
| Issuer, 801 GRAND CDO SERIES 2006-1 LLC, as | | |
| Co-issuer, 801 GRAND CDO SPC, f/a/o THE SERIES | : | |
| 2006-2, as Issuer, 801 GRAND CDO SERIES 2006-2 | | |
| LLC, as Co-issuer, ALTA CDO SPC, f/a/o THE SERIES | : | |
| 2007-1 SEGREGATED PORTFOLIO, as Issuer, ALTA | | |
| CDO LLC, FOR SERIES 2007-1, as Co-issuer, ALTA | : | |

CDO SPC, f/a/o THE SERIES 2007-2 SEGREGATED
PORTFOLIO, as Issuer, ALTA CDO LLC, FOR SERIES   :
2007-2, as Co-issuer, BARTON SPRINGS CDO SPC, f/a/o
THE SERIES 2005-1 SEGREGATED PORTFOLIO, as   :
Issuer, BARTON SPRINGS CDO SERIES 2005-1 LLC, as
Co-Issuer, BARTON SPRINGS CDO SPC, f/a/o THE   :
SERIES 2005-2 SEGREGATED PORTFOLIO, as Issuer,
BARTON SPRINGS CDO SERIES 2005-2 LLC, as Co-   :
issuer, BLUE POINT CDO SPC, f/a/o THE SERIES 2005-
1 SEGREGATED PORTFOLIO, as Issuer, BLUE POINT   :
CDO SERIES 2005-1 LLC, as Co-issuer, BLUE POINT
CDO SPC, f/a/o THE SERIES 2005-2 SEGREGATED   :
PORTFOLIO, as Issuer, BLUE POINT CDO SERIES
2005-2 LLC, as Co-issuer, CHERRY HILL CDO SPC,   :
f/a/o THE SERIES 2007-1 SEGREGATED PORTFOLIO,
as Issuer, CHERRY HILL CDO LLC THE SERIES 2007-   :
1, as Co-issuer, CHERRY HILL CDO SPC, f/a/o THE
SERIES 2007-2 SEGREGATED PORTFOLIO, as Issuer,   :
CHERRY HILL CDO LLC FOR SERIES 2007-2, as Co-
issuer, COPPER CREEK CDO SPC, f/a/o SERIES 2007-1   :
SEGREGATED PORTFOLIO, as Issuer, COPPER
CREEK CDO LLC, as Co-issuer, CROWN CITY CDO   :
2005-2 LIMITED, as Issuer, CROWN CITY CDO 2005-2
LLC, AS CO-ISSUER, FREEDOM PARK CDO SERIES   :
2005-1 LIMITED, as Issuer, FREEDOM PARK CDO
SERIES 2005-1 LLC, as Co-issuer, FULLERTON DRIVE   :
CDO LIMITED, as Issuer, FULLERTON DRIVE CDO
LLC, as Co-issuer, GREYSTONE CDO SPC, f/a/o THE   :
SERIES 2006-1 SEGREGATED PORTFOLIO, as Issuer,
GREYSTONE CDO SERIES 2006-1 LLC, as Co-issuer,   :
GREYSTONE CDO SPC, f/a/o THE SERIES 2006-2
SEGREGATED PORTFOLIO, as Issuer, GREYSTONE   :
CDO SERIES 2006-2 LLC, as Co-issuer, JEFFERSON
VALLEY CDO SPC, f/a/o THE SERIES 2006-1   :
SEGREGATED PORTFOLIO, as Issuer, JEFFERSON
VALLEY CDO SERIES 2006-1 LLC, as Co-Issuer,   :
LAKEVIEW CDO SPC, f/a/o THE SERIES 2007-1
SEGREGATED PORTFOLIO, as Issuer, LAKEVIEW   :
CDO LLC SERIES 2007-1, as Co-issuer, LAKEVIEW
CDO SPC, f/a/o THE SERIES 2007-2 SEGREGATED   :
PORTFOLIO, as Issuer, LAKEVIEW CDO LLC, f/a/o
THE SERIES 2007-2 SEGREGATED PORTFOLIO, as   :
Co-issuer, LAKEVIEW CDO SPC, f/a/o THE SERIES
2007-3 SEGREGATED PORTFOLIO, as Issuer,   :
LAKEVIEW CDO LLC, f/a/o THE SERIES 2007-3
                                                  :

SEGREGATED PORTFOLIO, as Co-issuer, PANTERA      :
VIVE CDO SPC, f/a/o THE SERIES 2007-1, as Issuer,
PANTERA VIVE CDO LLC, as Co-issuer, PEBBLE         :
CREEK LCDO 2007-2, LTD., as Issuer, PEBBLE CREEK
LCDO 2007-2, LLC, as Co-issuer, PENN'S LANDING     :
CDO SPC, f/a/o THE SERIES 2007-1 SEGREGATED
PORTFOLIO, as Issuer, PENN'S LANDING CDO LLC,      :
as Co-issuer, PHOENIX 2002-1 LIMITED, as Issuer,
PHOENIX 2002-1 LLC, as Co-issuer, PHOENIX 2002-2   :
LIMITED, as Issuer, PYXIS ABS CDO 2007-1 LTD., as
Issuer, PYXIS ABS CDO 2007-1 LLC, as Co-issuer,    :
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2005-19-C TRUST,          :
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2005-21-C TRUST,          :
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-1-C TRUST,           :
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2007-4-C TRUST,           :
RAACLC TRUST, SERIES 2003-A, RUBY FINANCE
PLC, f/a/o THE SERIES 2005-1, as Issuer, RUBY      :
FINANCE PLC, f/a/o THE SERIES 2006-4, as Issuer,
RUBY FINANCE PLC, f/a/o THE SERIES 2007-1, as      :
Issuer, SECURITIZED PRODUCT OF RESTRUCTURED
COLLATERAL LIMITED SPC, f/a/o THE SERIES 2007-  :
1 FEDERATION A-1 SEGREGATED PORTFOLIO, as
Issuer, SECURITIZED PRODUCT OF RESTRUCTURED  :
COLLATERAL LIMITED SPC, f/a/o THE SERIES 2007-
1 FEDERATION A-2 SEGREGATED PORTFOLIO, as      :
Issuer, SOLAR V CDO SPC, f/a/o THE SERIES 2007-1
SEGREGATED PORTFOLIO, as Issuer, SOLAR V CDO   :
LLC, as Co-issuer, STOWE CDO SPC, f/a/o THE SERIES
2006-1SEGREGATED PORTFOLIO, as Issuer, STOWE   :
CDO SERIES 2006-1 LLC, as Co-issuer, SUNSET PARK
CDO LIMITED SPC, f/a/o THE SERIES 2005-5           :
SEGREGATED PORTFOLIO, as Issuer, SUNSET PARK
CDO SERIES 2005-5 LLC, as Co-issuer, SUNSET PARK   :
CDO SERIES 2005-6 LIMITED, as Issuer, SUNSET
PARK CDO SERIES 2005-6 LLC, as Co-issuer,          :
SECURITIZED PRODUCT OF RESTRUCTURED
COLLATERAL LIMITED SPC, f/a/o THE SERIES 2007-  :
1 TABXSPOKE (07-1 40-100) SEGREGATED
PORTFOLIO, as Issuer, SERIES 2007-1 TABXSPOKE      :
(07-1 40-100) LLC, as Co-issuer, TAVARES SQUARE
CDO LIMITED, as Issuer, TAVARES SQUARE CDO         :
LLC, as Co-issuer, VOX PLACE CDO LIMITED, as

Issuer, VOX PLACE CDO LLC, as Co-issuer,                    :

                              Issuer Defendants,            :

− and −                                                    :

AC CAPITAL PARTNERS LTD., ACA FINANCIAL                     :
GUARANTY CORPORATION, ASTERI GROUP LTD.,
BABSON CAPITAL MANAGEMENT, BANK OF                          :
CHINA, BARCLAYS BANK PLC, BASIS YIELD
ALPHA CAPITAL, BASIS CAPITAL PTY LIMITED,                   :
BLUE CROSS BLUE SHIELD, BEAR STEARNS ASSET
MANAGEMENT, BENEFICIAL LIFE INSURANCE                       :
CO., BLACKROCK, INC., CALYON NEW YORK,
CANADIAN IMPERIAL BANK OF COMMERCE,                         :
CENTRAL REINSURANCE CORP., CHEYNE
CAPITAL MANAGEMENT (UK) LLP, CITIGROUP                      :
ALTERNATIVE INVESTMENTS LLC, CSFB
ALTERNATIVE CAPITAL I, CSFB CDO-CITI, THE                   :
DAEGU BANK, LTD., DELAWARE INVESTMENT
ADVISORS INC., DELAWARE MANAGEMENT                          :
BUSINESS TRUST, DELPHI FINANCIAL GROUP,
INC., DEXIA, EDISON INTERNATIONAL, EQUITY                   :
GROUP, INC., ETHIAS SA, FAXTOR SECURITIES BV,
GARADEX INC., GARLAND INVESTMENT                            :
MANAGEMENT INC., GATEX PROPERTIES INC.,
GOLDMAN SACHS US MORTGAGES SAI FUND,                        :
GORDON RAUSSER, GORDON RAUSSER (DEFINED
BENEFIT PENSION PLAN), GORDON RAUSSER                       :
(IRA), KUO HUA LIFE INSURANCE, LTD., IKB
DEUTSCHE INDUSTRIEBANK, INTERNATIONAL                       :
BANK OF TAIPEI, IRON FINANCIAL, JA HOKKAIDO
SHINREN, KOREA'S NATIONAL AGRICULTURAL                      :
COOPERATIVE FEDERATION, MAGNETAR
CAPITAL, MBIA CAPITAL MANAGEMENT                            :
CORPORATION, MKP CAPITAL MANAGEMENT
LLC, MODERN WOODMEN, MONEYGRAM USA,                         :
NACF (), THE OCEANIC HEDGE FUND, OHIO
PUBLIC EMPLOYEE RETIREMENT SYSTEM,                          :
OMICRON INVESTMENT MANAGEMENT GMBH
(f/k/a UNIQA ALTERNATIVE INVESTMENTS GMBH), :
PB CAPITAL CORPORATION, PRINCETON
ADVISORY GROUP, INC., PRINCIPAL GLOBAL                      :
INVESTORS, (EUROPE) LIMITED, PRINCIPAL
GLOBAL INVESTORS, RABOBANK                                  :
INTERNATIONAL NEW YORK BRANCH,

RABOBANK GROUP, RGA LLC, ROTHSCHILD        :
ASSET MANAGEMENT INC., SENECA CAPITAL
MANAGEMENT LLC, SENTINEL MANAGEMENT        :
GROUP INC., SHIELD SECURITIES, SHINHAN BANK,
SOUTHERN MISSOURI  BANCORP, INC., SOCIETE   :
GENERALE, STONE TOWER, SUSQUAHANA BANK,
SWISS LIFE LTD., TAIWAN LIFE, TOM DEPPING,   :
TRAVELERS EXPRESS COMPANY INC., TRUST CO.
OF THE WEST INC., UNION INVESTMENT GROUP,   :
UNIQA ALTERNATIVE INVESTMENTS,
VANDERBILT CAPITAL ADVISORS, VERITAS        :
CAPITAL, WELLS FARGO, NATIONAL
ASSOCIATION, ZAIS GROUP, LLC, ZAIS          :
INVESTMENT GRADE LTD., Individually and as
Representatives of all others similarly situated,      :

                            Noteholder Defendants.      :
_____x

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Special Financing Inc. ("LBSF" or "Plaintiff"), a debtor and

debtor in possession in the above-captioned jointly administered case of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors," and

together with its non-debtor affiliates "Lehman"), by and through undersigned counsel, brings

this Complaint against certain indenture trustees (referred to collectively as the "Trustees") and

certain special-purpose entities more fully identified on Schedule 1 hereto (referred to

collectively as the "Issuers"), which is attached and fully incorporated herein, a class of

noteholders and trust certificate holders who received distributions from the Trustees, including

the Noteholders more fully identified on the attached Schedule 2 (referred to collectively as the

"Noteholders") (the Trustees, Issuers and Noteholders are referred to collectively as

"Defendants"), and respectfully states:

## PRELIMINARY STATEMENT

1.       Plaintiff LBSF files this adversary proceeding (i) to prevent certain unenforceable *ipso facto* clauses from improperly modifying LBSF's right to priority of payment of more than three billion dollars under certain transaction documents related to credit default swap agreements based solely upon LBSF and its ultimate parent, LBHI, filing for bankruptcy; and (ii) to recover funds that were improperly paid to the Noteholders.

2.       LBSF is party to numerous credit default swap agreements (the "Swap Agreements") pursuant to which it purchased credit protection from the Issuers in connection with 43 collateralized debt obligation transactions (the "CDOs").  LBHI is LBSF's credit support provider and guarantor under the Swap Agreements.  The transaction documents for each of the CDOs provide that, upon any early termination of the Swap Agreement, the Trustee is generally required to disburse termination payments owed to LBSF under the Swap Agreements prior to disbursing interest and principal payments to the CDO's Noteholders.  The transaction documents also contain, however, clauses that modify LBSF's foregoing senior payment priority, making such right junior to the payment rights of the Noteholders (or eliminating LBSF's right to payment altogether) in instances where LFSB was the "Defaulting Party" (as defined in the Swap Agreements) (the "Priority Modification Provisions").  The Swap Agreements expressly include the filing of a bankruptcy petition by LBSF (or LBHI) as an Event of Default under which LBSF becomes the "Defaulting Party."

3.       Therefore, as a direct result of LBSF and LBHI's bankruptcy filings in 2008, LBSF's right to payment priority ahead of the Noteholders was modified and, with respect to each of the Defendant Issuers, the Defendant Trustee liquidated and distributed (in whole or in part) to the Defendant Noteholders the CDO collateral that otherwise would have been due and owing to LBSF.  As a result, however, LBSF's loss of its senior payment priority position by

2

operation of the Priority Modification Provisions cost the bankruptcy estate and its creditors more than three billion dollars. Accordingly, in order to restore LBSF's valuable rights and interests in the Swap Agreements, the Court should grant the relief requested herein.

4.      In a prior adversary proceeding in this consolidated Chapter 11 case, the Court held that substantially similar priority modification provisions were unenforceable *ipso facto* clauses under Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code and that any attempt to enforce such provisions would violate the automatic stay triggered by LBSF's bankruptcy filing:

> LBHI commenced a case that entitled LBSF, consistent with the statutory language, fairly read, to claim the protections of the *ipso facto* provisions of the Bankruptcy Code because its ultimate corporate parent and credit support provider at a time of extraordinary panic in the global markets, had filed a case under the Bankruptcy Code.
>
> The Court finds that the provisions in the Transaction Documents purporting to modify LBSF's right to priority distribution solely as a result of a chapter 11 filing constitute unenforceable *ipso facto* clauses. Moreover, any attempt to enforce such provisions would violate the automatic stay . . . . because it would deprive LBSF and its creditors of a valuable property interest.

*Lehman Bros. Special Financing, Inc. v. BNY Corp. Trustee Svcs, Ltd.,* 422 B.R. 407, 420-21 (Bankr. S.D.N.Y 2010) (Peck, J.) ("<u>*LBSF v. BNY*</u>"). The Court further held that the priority modification provisions do not fall within the limited "safe harbor" for *ipso facto* clauses in swap agreements pursuant to Section 560 of the Bankruptcy Code because, among other reasons, the safe harbor applies only to "the liquidation, termination or acceleration" of swap agreements or the "offset or net out" of the parties' positions and does not apply to modifications of a debtor's payment rights. *Id.* at 421.

5.      Thus, consistent with the Court's prior ruling, LBSF is entitled to a declaration that the Priority Modification Provisions are unenforceable *ipso facto* clauses and the

purported application of those provisions by Defendant Trustees and subsequent distribution to

the Noteholders violated the automatic stay.  Further, plaintiff is entitled to a judgment nullifying

all such actions taken in violation of the stay and restoring the parties to their positions

immediately prior to the stay violation.

6.     For purposes of alternative pleading, even if the Priority Modification

Provisions were enforceable in whole or in part, to the extent those provisions were effective

*before* the commencement of LBSF's bankruptcy case, the modification of LBSF's priority

interest constituted either (a) a preferential transfer of an interest of LBSF in property that may

be avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the

Bankruptcy Code, and preserved for the benefit of the estate under section 551 of the Bankruptcy

Code, or (b) a constructive fraudulent transfer of an interest of LBSF in property that may be

avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section 550 of the

Bankruptcy Code, and preserved for the benefit of the estate under section 551 of the Bankruptcy

Code.  To the extent that the Priority Modification Provisions were effective *after* the

commencement of LBSF's bankruptcy case, the modification of LBSF's priority interest

constituted an unauthorized postpetition transfer of property of LBSF's estate that may be

avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the

Bankruptcy Code, and preserved for the benefit of the estate under section 551 of the Bankruptcy

Code.

7.     Moreover, the purported modification of LBSF's interest and subsequent

distributions to the Noteholders wiped out Lehman's substantial "in-the-money" position under

the Swap Agreements, resulting in an enormous (and unjustifiable) windfall to the Noteholders at

LBSF's expense.  Accordingly, LBSF asserts claims of (i) unjust enrichment and (ii) money had and received against the Noteholders to recover the improperly distributed amounts.

8.      Finally, in connection with one of the largest of the 43 CDO deals (the "Pyxis Transaction"), Canadian Imperial Bank of Commerce ("CIBC") – the senior Noteholder – entered into a separate agreement (the "Note Purchase Agreement") to advance funds to the issuer to cover any shortfall in payments to LBSF under the relevant Swap Agreement (the "Pyxis Swap Agreement").  This obligation is also set forth in the Pyxis Indenture.  At the time the Pyxis Swap Agreement was purportedly terminated, LBSF was massively "in the money" and entitled to payment of over $1.3 billion, a significant portion of which CIBC would have been required to pay pursuant to its obligations under the Note Purchase Agreement and the Pyxis Indenture.  In connection with the improper and unenforceable modification of LBSF's priority payment rights, however, Defendant Bank of America – the indenture trustee on the Pyxis Transaction – improperly purported to terminate the Note Purchase Agreement, and with it CIBC's obligation to cover the anticipated shortfall in funds available to pay LBSF. Accordingly, LBSF is entitled to a declaration that the purported termination of the Note Purchase Agreement was null and void and CIBC's obligations to pay amounts due to LBSF under the Pyxis Swap Agreement remain in full force and effect.

9.      In addition, under the Pyxis transaction documents, the Pyxis Noteholders are contractually obligated to hold, in trust, the Collateral distributed to them pursuant to the Priority Modification Provisions and to return such improperly distributed proceeds to the Pyxis Trustee for payment to the appropriate party – here, LBSF.  The Pyxis Noteholders' failure to return the improperly distributed proceeds is a breach of their obligations, which LBSF is entitled to enforce as an express third-party beneficiary.

## PARTIES

10.      Plaintiff LBSF is a Delaware corporation with its current principal

business address at 1271 Avenue of the Americas, 46th Floor, New York, New York 10020.

11.      Bank of America National Association ("Bank of America") is a national

banking association organized under the laws of the United States with its principal place of

business at 100 North Tryon Street, Charlotte, North Carolina 28202.  Bank of America National

Association is also the successor in interest to LaSalle Bank National Association.

12.      The Bank of New York Mellon National Association is a national banking

association organized under the laws of the United States with its principal place of business at

One Wall Street, New York, New York 10286.  The Bank of New York Mellon National

Association is also the successor in trust to JPMorgan Chase Bank.

13.      BNY Corporate Trustee Services Ltd. is a limited company organized

under the laws of the United Kingdom of Great Britain and Northern Ireland with its principal of

business at One Canada Square, London, E14 5AL.

14.      Citibank, N.A. is a national banking association organized under the laws

of the United States with its principal place of business at 388 Greenwich Street 14th Floor, New

York, New York 10013.

15.      Deutsche Bank Trust Company Americas is a banking association

organized under the laws of the State of New York with its principal place of business at 60 Wall

Street, 27th Floor, New York, New York 10005.

16.      U.S. Bank National Association is a national banking association

organized under the laws of the United States with its principal place of business at 1 Federal St.,

3rd Floor, Main Station EX-MA-FED, Boston, Massachusetts 02110.

17.    Wells Fargo Bank, National Association is a national banking association organized under the laws of the United States with its principal place of business at 9062 Old Annapolis Road, Columbia, Maryland 21045.

18.    The Issuer Defendants are named and identified on the attached Schedule 1 and may be served with process as set forth therein.

19.    Upon information and belief, the Noteholders identified on the attached Schedule 2 are individuals or entities who received Distributions (as defined herein) from the defendant Trustees.  The Noteholders are sued both individually, and as representatives of a class of all noteholders who received Distributions from the Trustees following LBSF's bankruptcy filing (the "Noteholder Class").

## JURISDICTION AND VENUE

20.    The Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. §§ 157, 1334.  This is a "core proceeding" under 28 U.S.C. § 157(b).

21.    Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

22.    The statutory prerequisites for the relief requested herein are sections 105(a), 362(a)(3), 365(e)(1), 541(c)(1), 547, 548(a)(1)(B), 549(a), 550, and 551 of the Bankruptcy Code, section 2201 of Title 28 of the United States Code, Federal Rule of Civil Procedure 57, and Rules 7001 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## CLASS ACTION ALLEGATIONS

23.    The claims against the Noteholder Class are brought pursuant to Rule 23(a), 23(b)(1), and 23(b)(3) of the Federal Rules of Civil Procedure.  The named Noteholders are sued both individually and on behalf of all members of the Noteholder Class.

24.     The Noteholder Class consists of all noteholders who received

Distributions from the Trustees following LBSF's bankruptcy filing, including the representative

Noteholders identified on Schedule 3.

25.     The Noteholder Class is so numerous that joinder of all its members is

impracticable.  Plaintiff is informed and believes that there are in excess of 90  members of the

Noteholder Class.

26.     Common questions of law and fact exist which predominate over any

questions affecting individual members of the Noteholder Class, including:

(a)     Whether the Priority Modification Provisions are unenforceable *ipso facto* clauses that violate sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code;

(b)     Whether the Priority Modification Provisions violate the automatic stay under 11 U.S.C. § 362(a);

(c)     Alternatively, whether the Priority Modification Provisions effected a preferential transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholder Class that is subject to avoidance pursuant to section 547(b) of the Bankruptcy Code;

(d)     Alternatively, whether the Priority Modification Provisions effected a fraudulent transfer of Plaintiff's Senior Payment Priority to or for the benefit of the Noteholder Class that is subject to avoidance pursuant to section 548(a)(1)(B) of the Bankruptcy Code;

(e)     Alternatively, whether the Priority Modification Provisions effected an unauthorized postpetition transfer of property of Plaintiff's estate to or for the benefit of the Noteholder Class that is subject to avoidance under section 549 of the Bankruptcy Code;

(f)     Whether the distributions unjustly enriched the Noteholder Class; and

(g)     Whether the equitable remedy of money had and received requires the Noteholder Class to return LBSF's rightful share of funds distributed to the Noteholder Class ahead of LBSF pursuant to the Priority Modification Provisions.

27.     The defenses of the named Noteholders are typical of the defenses of all

members of the Noteholder Class.

28.     The prosecution of separate actions by or against individual members of

the Noteholder Class would create a risk of:

(a)     inconsistent or varying adjudications with respect to individual members
of the Noteholder Class which would establish incompatible standards of
conduct; or

(b)     adjudications with respect to individual members of the Noteholder Class
which would, as a practical matter, be dispositive of the interests of other
members not parties to the adjudications or substantially impair or impede
their ability to protect their interests.

29.     A defendant class action is superior to the other available methods for the

fair and efficient adjudication of this controversy.  The central issues raised in this Complaint

regarding whether (i) the Priority Modification Provisions are unenforceable *ipso facto* clauses

and (ii) application of the Priority Modification Provisions would violate the automatic stay have

already been resolved by the Court.  The terms of the applicable contracts and the relevant

conduct of the Defendants are substantially similar with respect to each of the 43 CDOs.

Therefore, the class claims principally, if not exclusively, raise legal issues (including, in

particular, the application of the Court's prior ruling in *LBSF v. BNY*) rather than factual issues.

The named class representative Noteholders' interests are aligned with those of the absent class

members and they will fairly and adequately represent such absent class members.  Defendants

thus have little, if any, legitimate interest in individually controlling their defenses in separate

actions.  Moreover, because the Notes are tradable in the secondary market it would be difficult,

if not impossible, for LBSF to identify and sue all the present holders of the Notes individually.

Accordingly, in the absence of a defendant class, LBSF may be unable to obtain relief with

respect to all Noteholders.  Finally, permitting LBSF to prosecute its claims against a defendant

class will not give rise to any significant administrative difficulties.  In fact, it will be more

efficient and less burdensome on the Court to adjudicate LBSF's claims against the Noteholders

as a class rather than in numerous separate adversary proceedings.

## **BACKGROUND**

30.     Lehman was formerly the fourth largest investment bank in the United

States.  For more than 150 years, Lehman was a leader in the global financial markets by serving

the financial needs of corporations, governmental units, institutional clients, and individuals

worldwide. Lehman's headquarters in New York and regional headquarters in London and

Tokyo were complemented by a network of offices in North America, Europe, the Middle East,

Latin America, and the Asia Pacific region.

31.     Plaintiff's and LBHI's chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule

1015(b).

32.     Plaintiff and LBHI are authorized to operate their businesses and manage

their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

33.     In connection with the CDOs, the Issuers issued series of notes or, in

certain instances, trust certificates (collectively, the "Notes") pursuant to certain transaction

documents specific to each series of notes (together with the corresponding Swap Agreements,

the "Transaction Documents"), including trust or indenture documentation (the "Indentures"), in

order to raise funds with which to acquire assets.  The Trustees serve pursuant to the Transaction

Documents.

34.     The Issuers and LBSF were parties to one or more Swap Agreements in

connection with each CDO pursuant to which LBSF bought credit protection with respect to

various debt obligations, including residential mortgage-backed obligations and corporate bonds (collectively, "Reference Obligations").

35.    This credit protection is extremely valuable to LBSF because the underlying Reference Obligations have dramatically decreased in value, providing LBSF with a correspondingly significant increase in the value of its interest in the Swap Agreements.  Were LBSF or a third party to go out into the market today and acquire the same protection provided in the Swap Agreements (in the unlikely event it is even available), the incremental additional cost, upon information and belief, would be in excess of $2 billion.  LBSF's interest in the Swap Agreements, therefore, represents a substantial asset of the Debtors' estate.

36.    The Trustees, or an agent for one of the other Defendants, hold for the benefit of (among others) LBSF and the Noteholders the collateral (the "Collateral") or proceeds from the Collateral that secures the Issuers' respective payment obligations both to LBSF and to the Noteholders.  LBSF's and the Noteholders' recourse for payment of claims against the Issuers was limited to the Collateral and/or any other assets of the Issuers related to that particular series of Notes.  LBSF's and the Noteholders' respective payment priorities for their claims against the Issuers were to be enforced and realized through the distribution of the Collateral or its proceeds.

37.    On September 15 and October 3, 2008, respectively, LBHI and Plaintiff filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  Under the Swap Agreements, the commencement of a case under the Bankruptcy Code by either LBSF or its Credit Support Provider, LBHI, constituted an Event of Default under the Swap Agreements with respect to LBSF.

38.     Under certain of the Transaction Documents, when LBSF has a claim against a particular Issuer under their respective Swap Agreement (because an early termination payment becomes due and the swap is "in-the-money" to LBSF), LBSF's claim has priority over the claims of other Noteholders.  In other words, LBSF's claim has "Senior Payment Priority" and the Noteholders' claims have "Junior Payment Priority."  But upon (a) the occurrence of an Event of Default under the Swap Agreements for which Plaintiff is deemed responsible (including a bankruptcy filing), and (b) the resulting trigger of the Priority Modification Provisions, Senior Payment Priority is transferred from LBSF to the Noteholders, leaving LBSF with, at best, only Junior Payment Priority for its claim.  In some instances, LBSF's right to its termination payment is extinguished altogether.  This purported "flip" of payment priorities pursuant to the Priority Modification Provisions is referred to hereafter in this Complaint as the "Payment Priority Exchange."

39.     The Priority Modification Provisions were triggered here *solely* as the result of LBSF's or LBHI's bankruptcy filing.

40.     Moreover, effecting the Payment Priority Exchange pursuant to the Priority Modification Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy Code because it involves an improper exercise of control over property of LBSF's estate.  As such, LBSF seeks a declaratory judgment that such provisions violate the automatic stay.

41.     If the Payment Priority Exchange is not invalidated under the *ipso facto* doctrine, as LBSF believes it should be, then the Priority Modification Provisions work as an intercreditor agreement between LBSF and the Noteholders in connection with their respective claims against the Issuers.  If enforceable, the Priority Modification Provisions would obligate

LBSF, in contractually specified circumstances, to transfer its interest in particular property – the right to Senior Payment Priority – to or for the benefit of the Noteholders, thereby enhancing the Noteholders' ability to recover on their claims against the Issuers. The Payment Priority Exchange would thus cause LBSF to part with a valuable property interest – its contractual right to Senior Payment Priority – by giving it to or for the benefit of the Noteholders. LBSF's parting with that interest would constitute an avoidable "transfer" under section 101(54) of the Bankruptcy Code.

42. If enforceable, the Priority Modification Provisions operate as a covenant by LBSF that, upon the occurrence of specified events, LBSF will pledge some of its property to, or for the benefit of the Noteholders, to further secure the Noteholders' claims against the Issuer. Just as such a covenant would give the Noteholders a contractual right to obtain property from LBSF through such a pledge, the Priority Modification Provisions, if enforceable, would give the Noteholders a contractual right to obtain property from LBSF through the Payment Priority Exchange. And just as LBSF would satisfy its contractual obligation to the Noteholders under such a covenant by delivering property to, or for the benefit of, the Noteholders, through such a pledge if the Priority Modification Provisions are found to be enforceable, LBSF would, through the Payment Priority Exchange, satisfy its contractual obligation to the Noteholders to give Senior Payment Priority to, or for the benefit of, the Noteholders. Even if the Priority Modification Provisions might be read to effectuate the Payment Priority Exchange automatically rather than through some action by LBSF, this does not change the fact that the Payment Priority Exchange constitutes a transfer of an interest of LBSF in property to or for the benefit of the Noteholders that satisfies an existing contractual obligation of LBSF to the Noteholders to make such transfer.

43.     Alternatively, if the Payment Priority Exchange is not effected pursuant to, and in satisfaction of, an existing contractual obligation of LBSF, then any operation of the Payment Priority Exchange would be a gratuitous transfer of a property interest by LBSF for which LBSF received no value in exchange.

44.     If the Priority Modification Provisions are enforceable, then the Trustees would be required to effectuate the Payment Priority Exchange in violation of the Bankruptcy Code.

45.     Moreover, LBSF was heavily "in-the-money" on each of the Swap Agreements at the time of bankruptcy.  As a result, LBSF was entitled to a substantial amount of the Collateral in the event of a distribution following a termination of the Swap Agreement.  The Trustees, however, seizing upon the Priority Modification Provisions and the Payment Priority Exchange, declared LBSF a "defaulting party" and transferred all of the Collateral, including the portion to which LBSF was entitled, to the Noteholders (the "Distributions").  The Distributions effected a staggering windfall to the Noteholders.

46.     The Noteholders received or potentially will receive billions of dollars which, but for the invalid and unenforceable Priority Modification Provisions, were due to LBSF—funds of enormous value to the estate.  The Noteholders were, thereby, enriched at the expense of LBSF.

47.     All conditions precedent to suit have been performed, have occurred, or have been waived.

## ADDITIONAL ALLEGATIONS REGARDING THE PYXIS TRANSACTION

48.     LBSF entered into a Swap Agreement with Pyxis ABS CDO 2007-1 Ltd. ("Pyxis"), the Issuer in the Pyxis Transaction.

49.     Bank of America National Association, as successor in interest to LaSalle Bank National Association, is the Trustee under the Pyxis Transaction.

50.     The Notes in the Pyxis Transaction (as in the other CDOs) were issued in classes, or "tranches," based upon their seniority or priority of payment.  Pyxis invested the proceeds of the sale of the Notes in certain eligible investments that served as Collateral for payment on the Notes.  However, the senior class of notes in the Pyxis Transaction – the Class A-1 Variable Funding Senior Secured Floating Rate Notes (the "Class A-1 Notes") – was initially unfunded.  CIBC holds the Class A-1 Notes.

51.      In lieu of funding the Class A-1 Notes, CIBC entered into an agreement (the "Note Purchase Agreement") pursuant to which it committed, among other things, to advance funds to Pyxis as needed in order to meet its obligations to LBSF under the Swap Agreement.  This obligation is also set forth in the Pyxis Indenture.  As such, the greater the obligations of Pyxis to LBSF under the Swap Agreement, the greater the obligations of CIBC under the Note Purchase Agreement.

52.     LBSF is an express third-party beneficiary of the Note Purchase Agreement.

53.     In addition, under the terms of the Pyxis Indenture, the Pyxis Noteholders are required to hold, in trust, any funds that are distributed to them instead of to a party with senior priority to such funds, *i.e.*, LBSF as the swap counterparty.  The Pyxis Noteholders are further required to return such improperly distributed funds to the Trustee for payment to the appropriate party.  LBSF is an express third-party beneficiary of the Pyxis Indenture.

54.     At the time of LBHI's bankruptcy filing, LBSF was massively "in the money" on the Swap Agreement with Pyxis and was entitled to recover an approximately $1.3

billion termination payment from Pyxis and/or CIBC upon termination of the Pyxis Swap Agreement.

55.    Shortly after LBHI filed for bankruptcy on September 15, 2008, Bank of America purported to terminate the Swap Agreement between LBSF and Pyxis and, at the direction of CIBC, accelerated the maturity of the Pyxis Notes and began to liquidate the Collateral held by Pyxis.

56.    Bank of America has liquidated a portion of the Pyxis Collateral, received proceeds from such liquidation, and has distributed approximately $386 million to the Pyxis Noteholders but nothing to LBSF due to the Priority Modification Provisions in the Pyxis Transaction Documents.  Upon information and belief, Bank of America may liquidate the remaining Collateral and distribute it to the Pyxis Noteholders at any time.

57.    At the direction of CIBC, Bank of America also purported to terminate the Note Purchase Agreement and with it CIBC's obligation to cover any shortfall in payments to LBSF under the Swap Agreement with Pyxis.

58.    Upon information and belief, the proceeds from the liquidation of the remaining Pyxis Collateral will be insufficient to cover Pyxis's obligations to LBSF under their Swap Agreement.

59.    Furthermore, the Pyxis Noteholders have received Distributions from Bank of America, but upon information and belief have not returned to Bank of America any of the Collateral distributed to them pursuant to the Priority Modification Provision, in breach of their contractual obligations under the Pyxis Indenture to return such funds to the Trustee for payment to LBSF.

**COUNT I**
**Against All Defendants**

(*Declaratory Judgment -- Provisions Modifying Plaintiff's Payment Priority as a Result of the Bankruptcy Filings Are Unenforceable Ipso Facto Clauses*)

60.     LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

61.     At the time of the LBHI and LBSF bankruptcy filings, the parties' respective obligations under the Transaction Documents are continuing and the performance of obligations under the Swap Agreements and Transaction Documents remain outstanding.

62.     Accordingly, the Swap Agreements and Transaction Documents are executory contracts and subject to the protections of Sections 365(e) and 541(c)(1)(B) of the Bankruptcy Code.

63.     The Priority Modification Provisions that purport to effect the Payment Priority Exchange as a result of LBHI's or LBSF's bankruptcy filing constitute unenforceable *ipso facto* clauses that violate sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.

64.     The Bankruptcy Code protects debtors from being penalized for filing a chapter 11 case, notwithstanding any contractual provisions or applicable law that would have that effect.  Section 365(e)(1) of the Bankruptcy Code provides that:

> [n]otwithstanding a provision in an executory contract . . .  an executory contract . . . of the debtor may not be terminated *or modified*, and any right or obligation under such contract or lease may not be terminated *or modified*, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . the commencement of a case under this title . . . .

11 U.S.C. § 365(e)(1) (emphasis added).

65.     Similarly, section 541(c)(1) recognizes that a debtor's interest in property:

> becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that is conditioned on . . . the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1).

66.     Because the Priority Modification Provisions (a) become operative after the commencement of LBHI's or LBSF's bankruptcy case, (b) effect the Payment Priority Exchange solely because of "the commencement of a case" under the Bankruptcy Code, and (c) deprive LBSF of Senior Payment Priority, the provisions are unenforceable *ipso facto* clauses. *See* 11 U.S.C. §§ 365(e)(1), 541(c)(1).

67.     The Court should declare that the Priority Modification Provisions and the corresponding Payment Priority Exchange are unenforceable pursuant to sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code.

68.     There is an actual controversy between the parties on this issue because the Transaction Documents on their face require the Payment Priority Exchange in violation of the Bankruptcy Code and Defendants have not agreed to waive or disregard such Payment Priority Exchange.

69.     Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, LBSF requests that the Court enter a declaratory judgment that (a) the Priority Modification Provisions are unenforceable *ipso facto* clauses pursuant to sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code, and that (b) LBSF is entitled to Senior Payment Priority.

**COUNT II**
**Against All Defendants**

*(Declaratory Judgment – Provisions Modifying Plaintiff's Payment Priority as a Result of the
Bankruptcy Filings Violate the Automatic Stay)*

70.    LBSF repeats, realleges, and incorporates by reference the allegations
contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of
action.

71.    Section 362(a) of the Bankruptcy Code provides, in relevant part, that the
filing of a petition under Title 11 of the Bankruptcy Code "operates as a stay, applicable to all
entities, of -- . . . (3) any act to obtain possession of property of the estate or of property from the
estate or to exercise control over property of the estate . . .." 11 U.S.C. § 362(a)(3).

72.    At the time LBSF commenced its case under the Bankruptcy Code, its
right to Senior Payment Priority constituted a substantial asset of the estate.  Any action to
exercise control over LBSF's Senior Payment Priority, including any action to effect the
Payment Priority Exchange, would be, therefore, subject to, and in violation of, the automatic
stay, provided under section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(a)(3).

73.    Further, the Payment Priority Exchange improperly seeks to take property
of LBSF because of its or LBHI's bankruptcy filing.  Property of a debtor becomes property of
the estate, "notwithstanding any provision in an agreement . . . that is conditioned . . . on the
commencement of a case under this title . . . and that effects or gives an option to effect a
forfeiture, modification, or termination of the debtor's interest in property."  11 U.S.C. §
541(c)(1).  Effecting the Payment Priority Exchange would modify LBSF's Senior Payment
Priority, and thus cause LBSF to forfeit an interest in property because of "the commencement of
a case under this title."  This violates the automatic stay provided under section 362(a).

74.      There is an actual controversy between the parties on this issue because the Transaction Documents require the Payment Priority Exchange in violation of the Bankruptcy Code and Defendants have not agreed to waive or disregard such Payment Priority Exchange.

75.      Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, LBSF requests that this Court enter a declaratory judgment that all actions to enforce the Payment Priority Exchange constitute willful violations of the automatic stay under section 362(a)(3) of the Bankruptcy Code and are void *ab initio*.

### ALTERNATIVE COUNT III
#### Against the Trustees, Noteholders, and Noteholder Class

##### (*Prepetition Payment Priority Exchange Constitutes Avoidable Transfer Under Section 547 of the Bankruptcy Code*)

76.      LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

77.      Section 547(b) of the Bankruptcy Code provides that "any transfer of an interest of the debtor in property" may be subject to avoidance as a preference if the transfer is made: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) . . . while the debtor was insolvent; (4) . . . on or within 90 days before the date of the filing of the petition . . .; and (5) that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided for by the provisions of this title."  11 U.S.C. § 547(b).

78.     Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to LBSF under the Swap Agreements – constituted an Event of Default under the Swap Agreements with respect to LBSF.

79.     If the Payment Priority Exchange is found to be effective, it would cause LBSF to transfer to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class, an interest of LBSF in property–its right to Senior Payment Priority.

80.     To the extent that the Payment Priority Exchange may be found to (a) have taken effect *before* LBSF's petition date, (b) be enforceable, and (c) have been effected pursuant to an existing contractual obligation of LBSF, it is avoidable as a preferential transfer pursuant to section 547 of the Bankruptcy Code.

81.     If the provisions that govern the Payment Priority Exchange are found to be enforceable, they would effect a transfer of LBSF's right to Senior Payment Priority to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class, who, pursuant to their contractual rights, would, under those narrow circumstances, have been creditors of LBSF.

82.     Under the circumstances described in this count, the transfer of LBSF's right to Senior Payment Priority would be on account of an antecedent debt, consisting of LBSF's contractual obligation, in specified circumstances, to transfer its right to Senior Payment Priority to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class.

83.     Under these circumstances, any transfer would have been made no earlier than September 15, 2008 – within the 90 days preceding LBSF's bankruptcy filing – while LBSF was insolvent.

84.     If the Payment Priority Exchange is found to be enforceable and to have
operated as described in this alternative Count, it would allow the Trustees, the Noteholders,
and/or the members of the Noteholder Class, to receive more than they would have otherwise
received if the case were a case under chapter 7 of this title and the transfer effected by the
Payment Priority Exchange had not been made.

85.     If the Payment Priority Exchange is found to be enforceable and to have
operated as described in this alternative Count, it was a preferential transfer of LBSF's property
interest – its Senior Payment Priority – to or for the benefit of the Trustees, the Noteholders,
and/or the members of the Noteholder Class, which LBSF may avoid pursuant to section 547(b)
of the Bankruptcy Code and which LBSF may recover from the Trustees, the Noteholders,
and/or the members of the Noteholder Class, as the initial transferees of LBSF's said property
interest, pursuant to section 550(a)(1) of the Bankruptcy Code, and preserve for the benefit of its
estate pursuant to section 551 of the Bankruptcy Code.

86.     To the extent that each of the Trustees, the Noteholders, and/or the
members of the Noteholder Class members received subsequent transfers of LBSF's Senior
Payment Priority, each of the Trustees, the Noteholders, and/or the members of the Noteholder
Class constitutes an immediate and/or mediate transferee of the initial transferees within the
meaning of section 550(a)(2) of the Bankruptcy Code.  To the extent that each of the Trustees,
the Noteholders, and/or the members of the Noteholder Class received such subsequent transfers,
none of the Trustees, the Noteholders, and/or the members of the Noteholder Class took its
interest in the transferred property for value, in good faith, and without knowledge of the
voidability of the transfer within the meaning of section 550(b)(1) of the Bankruptcy Code.

87.     In this alternative Count, LBSF asserts its right to avoid the Payment

Priority Exchange and to recover and preserve, for the benefit of its estate, the Senior Payment

Priority from all initial transferees and from all immediate and/or mediate transferees of such

initial transferees.

## ALTERNATIVE COUNT IV
### Against the Trustees, Noteholders, and Noteholder Class

*(**Prepetition Payment Priority Exchange
Constitutes Avoidable Transfer Under Section 548 of the Bankruptcy Code**)*

88.     LBSF repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

89.     Section 548(a)(1)(B) of the Bankruptcy Code provides that a transfer of a

debtor's interest in property, made within two years before the commencement of the Debtors'

bankruptcy case, may be avoided as constructively fraudulent if the debtor (a) "received less than

reasonably equivalent value in exchange for such transfer" and (b) (i) "was insolvent on the date

that such transfer was made . . . or became insolvent as a result of such transfer or obligation,"

(ii) "was engaged in business or a transaction, or was about to engage in business or a

transaction, for which any property remaining with the debtor was an unreasonable small

capital," or (iii) "intended to incur, or believed that the debtor would incur, debts that would be

beyond the debtor's ability to pay as such debts matured."  11 U.S.C. § 548(a)(1)(B)(i)-(ii).

90.     Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on

September 15, 2008 – as Credit Support Provider to LBSF under the Swap Agreements –

constituted an Event of Default under the Swap Agreements with respect to LBSF.

91.     If the Payment Priority Exchange is found to be effective, it would cause LBSF to transfer to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class an interest of LBSF in property – its right to Senior Payment Priority.

92.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it would effect a transfer of LBSF's right to Senior Payment Priority to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class.

93.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, and to the extent that the Payment Priority Exchange is not found to have been effected pursuant to, and in satisfaction of, an existing contractual obligation of LBSF, it would have been done gratuitously, and therefore, in exchange for less than reasonably equivalent value.

94.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange would have occurred when LBSF was, or thereby became, insolvent, or left with unreasonably small capital, or intending or believing that it would incur debts that would be beyond its ability to pay as such debts matured.

95.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange was a constructive fraudulent transfer of LBSF's property interest – its Senior Payment Priority – to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class, which LBSF may avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code and which LBSF may recover from the Trustees, the Noteholders, and/or the members of the Noteholder

Class, as the initial transferees of LBSF's said property interest, pursuant to section 550(a)(1) of

the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the

Bankruptcy Code.

96.    To the extent that each of the Trustees, the Noteholders, and/or the

members of the Noteholder Class members received subsequent transfers of LBSF's Senior

Payment Priority, each of the Trustees, the Noteholders, and/or the members of the Noteholder

Class constitutes an immediate and/or mediate transferee of the initial transferees within the

meaning of section 550(a)(2) of the Bankruptcy Code.  To the extent that each of the Trustees,

the Noteholders, and/or the members of the Noteholder Class received such subsequent transfers,

none of the Trustees, the Noteholders, and/or the members of the Noteholder Class took its

interest in the transferred property for value, in good faith, and without knowledge of the

voidability of the transfer within the meaning of section 550(b)(1) of the Bankruptcy Code.

97.    In this alternative Count, LBSF asserts its right to avoid the Payment

Priority Exchange and to recover and preserve, for the benefit of its estate, the Senior Payment

Priority from all initial transferees and from all immediate and/or mediate transferees of such

initial transferees.

## ALTERNATIVE COUNT V
### Against the Trustees, Noteholders, and Noteholder Class

### (*Postpetition Payment Priority Exchange*
### *Constitutes Avoidable Transfer Under Section 549 of the Bankruptcy Code*)

98.    LBSF repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

99.     Section 549(a) of the Bankruptcy Code provides that any transfer of property of a debtor's estate that occurs (a) "after commencement of the case," and (b) without authorization under the Bankruptcy Code or by the Court, may be avoided.  11 U.S.C. § 549(a).

100.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, to the extent that the Payment Priority Exchange was effected ***after*** the commencement of LBSF's bankruptcy case, it caused LBSF to transfer to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class, a property interest of LBSF's estate – its right to Senior Payment Priority.

101.     Any such transfer was not authorized under the Bankruptcy Code or by the Court.  In the alternative, any purported right to such transfer would have to be asserted as a claim through the normal claims procedures.

102.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange was an unauthorized postpetition transfer of property of LBSF's estate – its Senior Payment Priority – to or for the benefit of the Trustees, the Noteholders, and/or the members of the Noteholder Class, which LBSF may avoid pursuant to section 549 of the Bankruptcy Code and which LBSF may recover from the Trustees, the Noteholders, and/or the members of the Noteholder Class, as the initial transferees of LBSF's said property interest, pursuant to section 550(a)(1) of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.

103.     To the extent that each of the Trustees, the Noteholders, and/or the members of the Noteholder Class members received subsequent transfers of LBSF's Senior Payment Priority, each of the Trustees, the Noteholders, and/or the members of the Noteholder

Class constitutes an immediate and/or mediate transferee of the initial transferees within the

meaning of section 550(a)(2) of the Bankruptcy Code.  To the extent that each of the Trustees,

the Noteholders, and/or the members of the Noteholder Class received such subsequent transfers,

none of the Trustees, the Noteholders, and/or the members of the Noteholder Class took its

interest in the transferred property for value, in good faith, and without knowledge of the

voidability of the transfer within the meaning of section 550(b)(1) of the Bankruptcy Code.

104.    In this alternative Count, LBSF asserts its right to avoid the Payment

Priority Exchange and to recover and preserve, for the benefit of its estate, the Senior Payment

Priority from all initial transferees and from all immediate and/or mediate transferees of such

initial transferees.

## COUNT VI
### Against the Noteholders and Noteholder Class

### (*Unjust Enrichment*)

105.    LBSF repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

106.    At the time of LBSF's filing of its voluntary petition for bankruptcy

protection, LBSF was heavily "in-the-money" on the Swap Agreements.  The Trustees'

determination to enforce the Priority Modification Provision, however, and distribute the

Collateral, wiped away LBSF's "in-the-money" position and funneled all the Collateral,

including LBSF's share, to the Noteholders.  The Noteholders thereby received a staggering

windfall, including LBSF's entire share of the Collateral, without providing any compensation

whatsoever to LBSF.

107.    The Noteholders have been improperly and unjustly enriched, at LBSF's expense, as a result of the Distribution.  LBSF's entire interest in the Collateral, and the amount it should have received in the event of a distribution, were transferred to the Noteholders.  LBSF received nothing in return.  Equity and good conscience require that the Noteholders return the portion of the Collateral that was due to LBSF.

## COUNT VII
### Against the Noteholders and Noteholder Class

### (*Constructive Trust*)

108.    LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

109.    The Trustees have a confidential and/or fiduciary relationship with LBSF with respect to LBSF's interest in the Collateral.  In entering into the Swap Agreements and making payments thereunder, LBSF relied on the Trustees' implicit promise not to improperly transfer Collateral in which LBSF had an interest to other parties.

110.    As a result of the Distributions, the Noteholders have been improperly and unjustly enriched, at LBSF's expense.

111.    At the time of the Distributions, the Noteholders were on notice that LBHI had filed for Chapter 11 bankruptcy and that transactions relating to the estates of LBHI and its affiliated debtors were subject to the Bankruptcy Code.  Accordingly, the Noteholders were not *bona fide* purchasers of proceeds received in the Distributions.

112.    Because of the unjust enrichment of the Noteholders, LBSF is entitled to the imposition of a constructive trust with respect to proceeds transferred to the Noteholders in the Distributions.

## ALTERNATIVE COUNT VIII
### Against the Noteholders and Noteholder Class

(*Money Had and Received*)

113.    LBSF repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

114.    LBSF was substantially "in-the-money" on the Swap Agreements.  LBSF,

therefore, had an interest in the Collateral.  As a result of the Distribution, the Noteholders

received funds that rightfully belonged to LBSF.  Indeed, the Distributions resulted in an

enormous windfall to the Noteholders.  LBSF received nothing in return.  Equity and good

conscience dictate that the Noteholders not be permitted to retain the portion of the Collateral

that rightfully belongs to LBSF.

## COUNT IX
### Against Bank of America, National Association; LaSalle Bank National Association; and Canadian Imperial Bank of Commerce

(*Declaratory Judgment – Improper Termination of the Note Purchase Agreement*)

115.    LBSF repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

116.    There is an actual controversy between the parties on this issue because

the purported termination of CIBC's obligations under the Note Purchase Agreement would

erode the value to LBSF's estate of the Swap Agreement between LBSF and Pyxis.

117.    Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001,

LBSF requests that this Court enter a declaratory judgment that the purported termination of the

Note Purchase Agreement was null and void and CIBC's obligations to pay amounts due to

LBSF under the Pyxis Swap Agreement remain in full force and effect.

## ALTERNATIVE COUNT X
### Against the Pyxis Noteholders

### (*Breach of Contract*)

118.     LBSF repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

119.     LBSF is a secured party and an express third-party beneficiary under the

Pyxis Indenture.

120.     In the alternative to LBSF's foregoing claim against the Pyxis Noteholders

for unjust enrichment, pursuant to the Pyxis Indenture, the Pyxis Noteholders are contractually

required to hold all amounts distributed to them post-petition in trust and to return to the Trustee

amounts that were improperly distributed so they can be paid to the appropriate party.

121.     As a result of the Payment Priority Exchange, amounts due to LBSF post-

petition under the Pyxis Indenture were improperly distributed to the Pyxis Noteholders.

122.     By failing to return the improper distributions, the Pyxis Noteholders have

breached their obligations under the Indentures.

123.     LBSF has satisfied its obligations under the Pyxis Indenture and any

conditions precedent to suit have been performed, have occurred, or have been waived.

124.     As a result of the Pyxis Noteholders' breach of the Indentures, LBSF is

entitled to an award of damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, LBSF respectfully requests that the Court grant the following

relief:

A.    Certification of the Noteholder Class under Rule 23 of the Federal Rules

of Civil Procedure;

B.    For declaratory judgment that the Payment Priority Exchange improperly

modified LBSF's Senior Payment Priority as a result of a bankruptcy

filing, and, as such, the Priority Modification Provisions constitute

unenforceable *ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and

541(c)(1) and LBSF is entitled to Senior Payment Priority;

C.    For preliminary declaratory relief and final declaratory judgment that any

action to enforce the Payment Priority Exchange as a result of a

bankruptcy filing violates the automatic stay under 11 U.S.C. § 362(a) and

is void *ab initio*;

D.    Alternatively, for a judgment that the Payment Priority Exchange was a

preferential transfer to or for the benefit of the Trustees, the Noteholders,

and/or the members of the Noteholder Class that is avoidable pursuant to

section 547 of the Bankruptcy Code, and pursuant to sections 550 and 551

of the Bankruptcy Code, LBSF is entitled to recover and preserve Senior

Payment Priority for the benefit of its estate;

E.    In the further alternative, for a judgment that the Payment Priority

Exchange was a constructive fraudulent transfer to or for the benefit of the

Trustees, the Noteholders, and/or the members of the Noteholder Class

that is avoidable pursuant to section 548 of the Bankruptcy Code, and

pursuant to sections 550 and 551 of the Bankruptcy Code, LBSF is

entitled to recover and preserve Senior Payment Priority for the benefit of

its estate;

F.      In the further alternative, for a judgment that the Payment Priority

Exchange was an unauthorized postpetition transfer to or for the benefit of

the Trustees, the Noteholders, and/or the members of the Noteholder Class

that is avoidable pursuant to section 549(a) of the Bankruptcy Code, and

pursuant to sections 550 and 551 of the Bankruptcy Code, LBSF is

entitled to recover and preserve Senior Payment Priority for the benefit of

its estate;

G.      For a judgment against the Noteholders and Noteholder Class for LBSF's

interest in Collateral that was improperly conveyed to the Noteholders

through the Distributions;

H.      For damages against the Noteholders in an amount to be determined at

trial;

I.      For declaratory judgment against Bank of America, LaSalle Bank, and

CIBC that the purported termination of the Note Purchase Agreement was

null and void and CIBC's obligations to pay amounts due to LBSF under

the Pyxis Swap Agreement remain in full force and effect;

J.      For an order imposing a constructive trust on proceeds received by the

Noteholders in the Distributions;

K.      For additional damages against the Pyxis Noteholders alternatively for

breach of contract; and

L.      Any such other and further relief as the Court deems just and proper,

including costs and attorneys' fees.

Respectfully submitted,

By: _____/s/_____
      William A. Maher
      Paul R DeFilippo
      WOLLMUTH MAHER & DEUTSCH LLP
      500 Fifth Avenue
      New York, New York 10110
      Telephone: (212) 382-3300
      Facsimile: (212) 382-0050

      Proposed Special Litigation Counsel
      for the Debtors and Debtors In Possession

Dated:     New York, New York
         September 14, 2010

## SCHEDULE 1

| | NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|---|---|---|---|
| 1 | 801 Grand CDO SPC, f/a/o the Series 2006-1, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 2 | 801 Grand CDO Series 2006-1 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 3 | 801 Grand CDO SPC f/a/o the Series 2006-2, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 4 | 801 Grand CDO Series 2006-2 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 5 | ALTA CDO SPC, f/a/o the Series 2007-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 6 | ALTA CDO LLC, for Series 2007-1, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |

| | **NAME** | **ADDRESS** | **AGENT FOR PROCESS OF SERVICE** |
|---|---|---|---|
| 7 | ALTA CDO SPC, f/a/o the Series 2007-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 8 | ALTA CDO LLC, for Series 2007-2, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 9 | Barton Springs CDO SPC, f/a/o the Series 2005-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 10 | Barton Springs CDO Series 2005-1 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 11 | Barton Springs CDO SPC, f/a/o the Series 2005-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 12 | Barton Springs CDO Series 2005-2 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

| | NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|---|---|---|---|
| 13 | Blue Point CDO SPC, f/a/o the Series 2005-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, Queensgate House, P.O. Box 1093 GT, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 14 | Blue Point CDO Series 2005-1 LLC, as Co-issuer | c/o Donald J. Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711 | |
| 15 | Blue Point CDO SPC, f/a/o the Series 2005-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, Queensgate House, P.O. Box 1093 GT, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 16 | Blue Point CDO Series 2005-2 LLC, as Co-issuer | c/o Donald J. Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711 | |
| 17 | Cherry Hill CDO SPC, f/a/o the Series 2007-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 18 | Cherry Hill CDO LLC for Series 2007-1, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

| | NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|---|---|---|---|
| 19 | Cherry Hill CDO SPC, f/a/o the Series 2007-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 20 | Cherry Hill CDO LLC for Series 2007-2, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 21 | Copper Creek CDO SPC, f/a/o Series 2007-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 22 | Copper Creek CDO LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 23 | Crown City CDO 2005-2 Limited, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 24 | Crown City CDO 2005-2 LLC, as Co-issuer | c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711 | |

| NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|---|---|---|
| 25 Freedom Park CDO Series 2005-1 Limited, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 26 Freedom Park CDO Series 2005-1 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 27 Fullerton Drive CDO Limited, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 28 Fullerton Drive CDO LLC, as Co-issuer | c/o National Registered Agents, Inc., 9 East Lookerman St., Suite 1B, Dover, DE 19901 | |
| 29 Greystone CDO SPC, f/a/o the Series 2006-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 30 Greystone CDO Series 2006-1 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

| | **NAME** | **ADDRESS** | **AGENT FOR PROCESS OF SERVICE** |
|---|---|---|---|
| 31 | Greystone CDO SPC, f/a/o the Series 2006-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 32 | Greystone CDO Series 2006-2 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 33 | Jefferson Valley CDO SPC, f/a/o the Series 2006-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 34 | Jefferson Valley CDO Series 2006-1 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 35 | Lakeview CDO SPC, f/a/o the Series 2007-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 36 | Lakeview CDO LLC Series 2007-1, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

| | **NAME** | **ADDRESS** | **AGENT FOR PROCESS OF SERVICE** |
|---|---|---|---|
| 37 | Lakeview CDO SPC, f/a/o the Series 2007-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 38 | Lakeview CDO LLC, f/a/o the Series 2007-2 Segregated Portfolio, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 39 | Lakeview CDO SPC, f/a/o the Series 2007-3 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 40 | Lakeview CDO LLC, f/a/o the Series 2007-3 Segregated Portfolio, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 41 | Pantera Vive CDO SPC, f/a/o the Series 2007-1, as Issuer | Portfolio, c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 42 | Pantera Vive CDO LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | CT Corporation, 111 8th Avenue, New York, New York 10011 |

| | NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|---|---|---|---|
| 43 | Pebble Creek LCDO 2007-2, Ltd., as Issuer | c/o Deutsche Bank (Cayman) Ltd., P.O. Box 1984 GT, Grand Cayman KY-1104, Cayman Islands | |
| 44 | Pebble Creek LCDO 2007-2, LLC, as Co-issuer | Deutsche International Corporate Services (Delaware), 1011 Centre Rd., Suite 200, Wilmington, DE 19805 | |
| 45 | Penn's Landing CDO SPC, f/a/o the Series 2007-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 46 | Penn's Landing CDO LLC, as Co-issuer | c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711 | |
| 47 | Phoenix 2002-1 Limited, as Issuer | c/o M&C Corporate Services Ltd., P.O. Box 309 GT, Ugland House, South Church Street, Grand Cayman, Cayman Islands, British West Indies | QSVP Ltd., PO Box 1093GT, Queensgate House, South Church Street, Grand Cayman, Cayman Islands, British West Indies |
| 48 | Phoenix 2002-1 LLC, as Co-issuer | The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 | Puglisi & Associates, 850 Library Avenue, Suite 204, Newark DE 19711 |

| | **NAME** | **ADDRESS** | **AGENT FOR PROCESS OF SERVICE** |
|---|---|---|---|
| 49 | Phoenix 2002-2 Limited, as Issuer | Queensgate House, P.O. Box 1093 GT, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation System, 111 8th Avenue 13th Floor, New York, NY 10011 |
| 50 | Pyxis ABS CDO 2007-1 Ltd., as Issuer | c/o Maples Finance Limited, Queensgate House, P.O. Box 1093 GT, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 51 | Pyxis ABS CDO 2007-1 LLC, as Co-issuer | c/o Donald J. Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711 | |
| 52 | Restructured Asset Certificates with Enhanced Returns, Series 2005-19-C Trust | c/o U.S. Bank National Association, 1 Federal St., 3rd Floor, Main Station EX-MA-FED, Boston, MA 02110 | |
| 53 | Restructured Asset Certificates with Enhanced Returns, Series 2005-21-C Trust | c/o U.S. Bank National Association, 1 Federal St., 3rd Floor, Main Station EX-MA-FED, Boston, MA 02110 | |
| 54 | Restructured Asset Certificates with Enhanced Returns, Series 2006-1-C Trust | c/o U.S. Bank National Association, 1 Federal St., 3rd Floor, Main Station EX-MA-FED, Boston, MA 02110 | |

| | **NAME** | **ADDRESS** | **AGENT FOR PROCESS OF SERVICE** |
|---|---|---|---|
| 55 | Restructured Asset Certificates with Enhanced Returns, Series 2007-4-C Trust | c/o U.S. Bank National Association, 1 Federal St., 3rd Floor, Main Station EX-MA-FED, Boston, MA 02110 | |
| 56 | RAACLC Trust, Series 2003-A | c/o Deutsche Bank Trust Company Americas 60 Wall Street, 27th Floor, New York, NY 1005 | |
| 57 | Ruby Finance PLC, f/a/o the Series 2005-1, as Issuer | AIB International Centre, International Financial Services Center, Dublin 1, Ireland | Lehman Brothers International (Europe), 25 Bank Street, London, England E14 5LE |
| 58 | Ruby Finance PLC, f/a/o the Series 2006-4, as Issuer | AIB International Centre, International Financial Services Center, Dublin 1, Ireland | Lehman Brothers International (Europe), 25 Bank Street, London, England E14 5LE |
| 59 | Ruby Finance PLC, f/a/o the Series 2007-1, as Issuer | AIB International Centre, International Financial Services Center, Dublin 1, Ireland | Lehman Brothers International (Europe), 25 Bank Street, London, England E14 5LE |
| 60 | Securitized Product of Restructured Collateral Limited SPC, f/a/o the Series 2007-1 Federation A-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |

| NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|------|---------|------------------------------|
| 61 | Securitized Product of Restructured Collateral Limited SPC, f/a/o the Series 2007-1 Federation A-2 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 62 | Solar V CDO SPC, f/a/o the Series 2007-1 Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | Corporation Service Co., 1133 Avenue of the Americas, Suite 3100, New York, New York 10036 |
| 63 | Solar V CDO LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 64 | Stowe CDO SPC, f/a/o the Series 2006-1 Segregated Portfolio, as Issuer | Stowe CDO SPC, for the account of the Portfolio, c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 65 | Stowe CDO Series 2006-1 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

| NAME | ADDRESS | AGENT FOR PROCESS OF SERVICE |
|---|---|---|
| 66 | Sunset Park CDO Limited SPC, f/a/o the Series 2005-5 Segregated Portfolio, as Issuer | Sunset Park CDO Ltd. SPC, c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 67 | Sunset Park CDO Series 2005-5 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 68 | Sunset Park CDO Series 2005-6 Limited, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 69 | Sunset Park CDO Series 2005-6 LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |
| 70 | Securitized Product of Restructured Collateral Limited SPC, f/a/o the Series 2007-1 TABXSPOKE (07-1 40-100) Segregated Portfolio, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 71 | Series 2007-1 TABXSPOKE (07-1 40-100) LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

| | **NAME** | **ADDRESS** | **AGENT FOR PROCESS OF SERVICE** |
|---|---|---|---|
| 72 | Tavares Square CDO Limited, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | |
| 73 | Tavares Square CDO LLC, as Co-issuer | c/o National Registered Agents, Inc., 9 East Lookerman St., Suite 1B, Dover, DE 19901 | |
| 74 | Vox Place CDO Limited, as Issuer | c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands | CT Corporation, 111 8th Avenue, New York, New York 10011 |
| 75 | Vox Place CDO LLC, as Co-issuer | c/o Donald J. Puglisi, 850 Library Avenue, Suite 204, Newark, DE 19711 | |

## SCHEDULE 2

| | NAME | ADDRESS |
|---|---|---|
| 1 | AC Capital Partners Ltd. | 19/20 City Quay<br>Dublin 2<br>Ireland |
| 2 | ACA Financial Guaranty Corporation | 600 Fifth Ave., 2nd Fl.<br>New York, NY 10020 |
| 3 | Asteri Group Ltd. | 200 Park Ave. S., Ste. 1511<br>New York, NY 10003 |
| 4 | Babson Capital Management | 1500 Main Street<br>Springfield, MA 01115-5189 |
| 5 | Bank of China | 410 Madison Ave.<br>New York, NY 10017 |
| 6 | Barclays Bank PLC | 200 Park Ave.<br>New York, NY 10003 |
| 7 | Basis Yield Alpha Capital | Walker House, 87 Mary Street<br>George Town, Grand Cayman, Cayman Islands,<br>KY1-9002, British West Indies |
| 8 | Basis Capital Pty Limited | PO Box 2003, George Town, Grand Cayman,<br>Cayman Islands, KY1-9002, British West<br>Indies |
| 9 | Blue Cross Blue Shield | 225 North Michigan Ave.<br>Chicago, IL 60601 |
| 10 | Bear Stearns Asset Management | 383 Madison Ave., 29th Fl., New York, NY<br>10179 |
| 11 | Beneficial Life Insurance Co. | c/o Beneficial Financial Group<br>150 Social Hall Ave.<br>P.O. Box 45654<br>Salt Lake City, UT 84145-0654 |
| 12 | BlackRock, Inc. | 55 East 52nd Street<br>New York, NY 10055 |

| | NAME | ADDRESS |
|---|---|---|
| 13 | Calyon New York | 1301 Avenue of the Americas<br>New York, NY 10019 |
| 14 | Canadian Imperial Bank of Commerce | 199 Bay Street, Commerce Court West, Toronto, Ontario, Canada M5L 1A2 |
| 15 | Central Reinsurance Corp. | 12F 53 Nanking East Road, Section 2, Taipei, 104, Taiwan |
| 16 | Cheyne Capital Management (UK) LLP | Stornoway House, 13 Cleveland Row London SW1A 1DH |
| 17 | Citigroup Alternative Investments LLC | 399 Park Ave., New York NY 10022 |
| 18 | CSFB Alternative Capital I | 11 Madison Ave., New York, NY 10010-3629 |
| 19 | CSFB CDO-CITI | 11 Madison Ave., New York, NY 10010-3629 |
| 20 | The Daegu Bank, Ltd. | 118, Suseong-dong 2-ga, Suseong-gu Daegu 706-712, South Korea |
| 21 | Delaware Investment Advisors Inc. | 2005 Market Street Floor 39 Philadelphia, PA 19103-7026 |
| 22 | Delaware Management Business Trust | 2005 Market Street Philadelphia, PA 19103 |
| 23 | Delphi Financial Group, Inc. | 2001 Market Street Suite 1500 Philadelphia, PA 19103 |
| 24 | Dexia | Place Rogier 11 B – 1210 Brussels |
| 25 | Edison International | P.O. Box 976, Rosemead CA 91770 |
| 26 | Equity Group, Inc. | 800 Third Ave., 39th Floor New York, NY 10022 |

| | NAME | ADDRESS |
|---|---|---|
| 27 | Ethias SA | Rue des Croisiers 24<br>Liege, 4000<br>Belgium |
| 28 | FAXTOR Securities BV | Strawinskylaan 377, 1077 XX Amsterdam,<br>Netherlands |
| 29 | Garadex Inc. | 1840 -1245 Rue Sherbrooke O<br>Montreal, QC, H3G 1G2 |
| 30 | Garland Investment Management Inc. | 920 Country Club Drive, Moraga<br>CA 94556-1954 |
| 31 | Gatex Properties Inc. | 1245 Quest Rue Sherbrooke St. W. Ste. 1640<br>Montreal, CD |
| 32 | Goldman Sachs US Mortgages SAI Fund | c/o Goldman Sachs Asset Management Group<br>4900 Sears Tower<br>Chicago, IL 60606 |
| 33 | Gordon Rausser | 222 North LaSalle Street<br>Suite 210<br>Chicago, IL 60601 |
| 34 | Gordon Rausser (Defined Benefit Pension Plan) | 222 North LaSalle Street<br>Suite 210<br>Chicago, Illinois 60601 |
| 35 | Gordon Rausser (IRA) | 222 North LaSalle Street<br>Suite 210<br>Chicago, Illinois 60601 |
| 36 | Kuo Hua Life Insurance, Ltd. | 3F 42 Chung Shan North Road, Section 2,<br>Taipei, Taiwan |
| 37 | IKB Deutsche Industriebank | Wilhelm-Bötzkes-Straße 1, 40474 Düsseldorf,<br>P.O. Box 10 11 18 · 40002 Düsseldorf |
| 38 | International Bank of Taipei | 36 Nan King East Road, Section 3, Taipei<br>10411 Taiwan |
| 39 | IRON Financial | 630 Dundee Rd, Suite 200, Northbrook, IL<br>60062 |

| | NAME | ADDRESS |
|---|---|---|
| 40 | JA Hokkaido Shinren | 245 Park Ave. New York, NY 10167-0104 |
| 41 | Korea's National Agricultural Cooperative Federation | 75 Chungjongro 1-Ga, Jung-Gu, Seoul, South Korea and/or 9F, imkwang B/D, 267, Mikeun-Dong Seodaemun-Gu, Seoul, Korea |
| 42 | Magnetar Capital | 1603 Orrington Ave., 13th Floor, Evanston, IL 60201 |
| 43 | MBIA Capital Management Corporation | 113 King St., Armonk, NY 10504 |
| 44 | MKP Capital Management LLC | 600 Lexington Ave., 18th Floor, New York, NY 10022 |
| 45 | Modern Woodmen | 1701 1st Ave., Rock Island, IL 61201 |
| 46 | MoneyGram USA | 1550 Utica Ave. South, St. Louis Park, MN 55416 |
| 47 | The Oceanic Hedge Fund | 1 Albermarle Street London W1S 4HA, London, United Kingdom |
| 48 | Ohio Public Employee Retirement System | Ohio Public Employee Retirement System, 277 East Town Street Columbus, OH 43215-4642 |
| 49 | Omicron Investment Management GmbH (f/k/a UNIQA Alternative Investments GmbH) | Herrengasse 1-3, A-1010 Vienna, Austria |
| 50 | PB Capital Corporation | 230 Park Ave., New York NY 10169 |
| 51 | Princeton Advisory Group, Inc. | 700 Alexander Park Suite 302 Princeton, NJ 08540 |
| 52 | Principal Global Investors, (Europe) Limited | Level 4, 10 Gresham Street London, England EC2V 7JD |
| 53 | Principal Global Investors | Level 4, 10 Gresham Street London, England EC2V 7JD |

| NAME | ADDRESS |
|------|---------|
| 54 | Rabobank International New York Branch | 10 Exchange Place 16th Fl., Jersey City, NJ 07302; and<br>245 Park Ave.<br>New York, NY 10167-3700 |
| 55 | Rabobank Group | Croeselaan 18 31 30 216 00 00, Utrecht Netherlands, P8 10022 |
| 56 | RGA LLC | 1370 Timberlake Manor Parkway<br>Chesterfield, Missouri 63017-6039 |
| 57 | Rothschild Asset Management Inc. | 1251 Ave. of the Americas, 44th Floor<br>New York, NY 10020 |
| 58 | Seneca Capital Management LLC | 909 Montgomery Street<br>San Francisco, CA 94133-4618 |
| 59 | Sentinel Management Group Inc. | 650 Dundee Road<br>Suite 460<br>Northbrook, IL 60062 |
| 60 | Shield Securities | Shield House, 27a Kingsmead, Farmborough, Hampshire, GU14 7SJ |
| 61 | Shinhan Bank | 100-102, the main branch of Shinhan Bank, Daekyung Bldg., 120 Bungi, Taupyeong-ro 2-ga, Jung-gu, Seoul, Korea |
| 62 | Southern Missouri Bancorp, Inc. | 531 Vine St.<br>Poplar Bluff, MO 63901 |
| 63 | Societe Generale | 1221 Avenue of the Americas<br>New York, NY 10020 |
| 64 | Stone Tower | 152 West 57th Street<br>New York, NY 10019-3386 |
| 65 | Susquahana Bank | 1570 Manheim Pike<br>Lancaster, PA 17604-3300 |
| 66 | Swiss Life Ltd. | General-Guisan-Quai 40<br>P.O. Box 8022<br>Zurich, Switzerland |

| | NAME | ADDRESS |
|---|---|---|
| 66 | Taiwan Life | 17 Hsu Chang Street, 18th Floor<br>Taipei, Taiwan |
| 67 | Tom Depping | Main Street Bank<br>P.O. Box 5799<br>Kingwood, TX 77325 |
| 68 | Travelers Express Company Inc. | 1550 Utica Ave.<br>South Minneapolis, MN 55416 |
| 69 | Trust Co. of the West Inc. | 865 Figueroa Street, Ste 1800<br>Los Angeles CA 90017 |
| 70 | Union Investment Group | Wiesenhüttenstr. 10, D-60329 Frankfurt am Main |
| 71 | UNIQA Alternative Investments | Untere Donaustrasse 21<br>1020 Vienna, Austria |
| 72 | Vanderbilt Capital Advisors | 200 Park Ave. 20th Floor<br>New York, NY 10166 |
| 73 | Veritas Capital | 590 Madison Ave., 41st Floor<br>New York, NY 10022 |
| 74 | Wells Fargo, National Association | 9062 Old Annapolis Rd.<br>Columbia, MD 21045 |
| 75 | ZAIS Group, LLC | 2 Bridge Ave.<br>Suite 322<br>Red Bank, NJ  07701 |
| 76 | ZAIS Investment Grade Ltd. | Genisis Bldg. 4th Fl<br>PO BOX 2199<br>Grand Cayman, Cayman Islands<br>British West Indies |