**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | |
| Plaintiff, | |
| -against- | Adversary Proceeding No. 10-03547 (SCC) |
| BANK OF AMERICA NATIONAL ASSOCIATION, *et al.*, | |
| Defendants. | |

**LBSF'S OPPOSITION TO JA HOKKAIDO SHINREN'S
APPLICATION TO LIFT LITIGATION STAY SOLELY FOR THE PURPOSE
OF FILING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Counsel for Plaintiff*
*Lehman Brothers Special Financing Inc.*

May 7, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

ARGUMENT ..............................................................................................................................9

    The Proposed Scheduling Order ..........................................................................................9

    The ADR Process ...............................................................................................................10

    Personal Jurisdiction ..........................................................................................................11

CONCLUSION ..........................................................................................................................15

# TABLE OF AUTHORITIES

**Case**                                                                                                            **Page**

*Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*,
    62 N.Y.2d 65, 464 N.E.2d 432 (1984) ................................................................................ 14

*Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*,
    700 F.2d 1279 (9th Cir. 1983) ............................................................................................ 13

*In re Indianapolis Downs, LLC*,
    462 B.R. 104 (Bankr. D. Del. 2011) .................................................................................. 13

*In re Med-Atl. Petroleum Corp.*,
    233 B.R. 644 (Bankr. S.D.N.Y. 1999) ............................................................................... 14

*In re Simon*,
    153 F.3d 991 (9th Cir. 1998) .............................................................................................. 13

*Katchen v. Landy*,
    382 U.S. 323 (1966) ............................................................................................................ 13

*Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd.*
*(In re Lehman Bros. Holdings Inc.)*,
    452 B.R. 31 (Bankr. S.D.N.Y. 2011) .................................................................................... 5

*Lehman Bros. Special Fin. Inc. v. BNY Corporate Trustee Servs. Ltd.*
*(In re Lehman Bros. Holdings Inc.)*,
    422 B.R. 407 (Bankr. S.D.N.Y. 2010) .................................................................................. 5

*Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv. Sec. LLC)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ............................................................................... 12

*Picard v. Chais* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    440 B.R. 274 (Bankr. S.D.N.Y. 2010) ............................................................................... 14

*Picard v. Maxam Absolute Return Fund, L.P.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................ 13, 14

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ............................................................................................ 12-13

**Other Authority**

CPLR 302 ................................................................................................................................... 14

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF"), through Lehman Brothers Holdings Inc. ("LBHI"),[1] the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), the Plaintiff in the above-captioned adversary proceeding (the "Distributed Action"), hereby submits this opposition to JA Hokkaido Shinren's ("JAH") Application to Lift Litigation Stay Solely for the Purpose of Filing Motion to Dismiss for Lack of Personal Jurisdiction (the "Lift Stay Motion") [ECF No. 714, Adv. Proc. No. 10-03547] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. As the Court knows, the parties just completed briefing on the appropriate protocol pursuant to which the Distributed Action will be managed. The litigation stay applicable to the Distributed Action (the "Litigation Stay") will expire thirty days after the date on which this Court enters a protocol. *See Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated Jan. 31, 2014 [ECF No. 42417, Case No. 08-13555] (the "Stay Extension Order").[2]

2. Simply stated, there is no basis for JAH to be treated any differently than the other 230 Defendants in this action. Rather, JAH should be subject to the same scheduling protocol that will soon be set by the Court and that will apply to LBSF and all other Defendants. The Lift

---

[1] As used herein, the "Chapter 11 Estates" means LBHI and certain of its subsidiaries, including LBSF.

[2] The Stay Extension Order extended the Litigation Stay that was initially imposed by the Court in the *Order Staying Avoidance Actions and Granting Certain Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated Oct. 20, 2010 [ECF No. 12199, Case No. 08-13555] (the "Stay Order"). Pursuant to the Stay Order, LBSF filed a notice of entry of the Stay Order in the Distributed Action on November 5, 2010 [ECF No. 31, Adv. Proc. 10-03547] and notices of each extension of the Litigation Stay, most recently on February 3, 2014 [ECF No. 703, Adv. Proc. No. 10-03547].

Stay Motion seeks to lift not only the Litigation Stay, which is set to expire anyway, but also seeks to lift the separate stay under the SPV Derivatives ADR Procedures (as defined below) (the "ADR Stay"), which is an integral part of the extensive alternative dispute resolution ("ADR") process that has been in place for several years and that has been enormously successful. The Order that LBSF has proposed to govern this action going forward already provides that the ADR Stay will be modified for each Defendant to allow it to participate in the phases of this action which prospectively impact that Defendant, and it is unnecessary to make a special exception for JAH. Finally, as discussed below, the motion to dismiss that JAH seeks to file is likely to fail since JAH has more than sufficient contacts for this Court to exercise jurisdiction. The Lift Stay Motion should be denied in its entirety.

## FACTUAL BACKGROUND

3.  JAH, a federation of 110 agricultural cooperatives in the Hokkaido prefecture of Japan that invests funds from those cooperatives for the benefit of the cooperatives and its individual members, is one of 143 named Noteholder Defendants (as well as a substantial putative Noteholder class) sued by LBSF in the Distributed Action. LBSF seeks, among other things, avoidance and recovery of transfers made to JAH as Noteholder.

4.  On June 28, 2013, JAH filed its original application seeking relief from the Stay Order solely for the purpose of filing a motion to dismiss for lack of personal jurisdiction [ECF No. 612, Adv. Proc. 10-03547]. JAH attached its motion to dismiss as an exhibit to the application.

5.  The original application was subsequently withdrawn by agreement of the parties in order for the parties to engage in informal discovery to evaluate the jurisdictional issues raised by JAH's proposed motion to dismiss. While LBSF was evaluating the jurisdictional issues in

light of the informal discovery received from JAH,[3] and seeking to schedule a time for a further meet and confer with JAH, JAH broke off communications and re-filed the Lift Stay Motion on March 19, 2014.

6. The Lift Stay Motion is substantially similar to the original application. Once again, it attaches JAH's motion to dismiss as an exhibit. The motion to dismiss principally argues that there is no personal jurisdiction over JAH because JAH lacks sufficient minimum contacts with the United States. JAH further argues that, even if the Court were to find sufficient minimum contacts, forcing JAH to litigate in New York would offend traditional notions of fair play and substantial justice. For the reasons previewed below, these arguments are without merit.

7. Meanwhile, LBSF has submitted the Proposed Scheduling Order (the "Proposed Scheduling Order") [ECF No. 717, Adv. Proc. 10-03547], which will permit the Court to address complicated issues prevalent among all Defendants in the Distributed Action in an efficient and orderly three-stage process: Phase I (class certification and issues ancillary to class certification); Phase II (individualized pretrial issues that may not be resolved by virtue of class certification, such as statute of limitations defenses (in the absence of class tolling) and challenges to personal jurisdiction); and Phase III (any other pretrial matters not addressed during Phase I or Phase II, including, *e.g.*, responsive pleadings and/or motions to dismiss (on a class-wide basis upon class certification), followed by fact and expert discovery).

8. In addition to the Lift Stay Motion, JAH submitted a separate objection to the Proposed Scheduling Order (the "JAH Objection") [ECF No. 725, Adv. Proc. 10-03547]. The

---

[3] The informal discovery received to date has only strengthened LBSF's view that this Court has personal jurisdiction over JAH.

3

JAH Objection adds nothing to the important case management issues before the Court. It simply repeats JAH's extraordinary and unwarranted request for special treatment.

9. In the Lift Stay Motion, JAH also seeks to terminate its involvement in the Court's ADR program. While the specific relief sought by JAH with respect to the ADR program is discussed below, some background on the ADR program is necessary.

10. This Court has established an innovative ADR program that has been critical to, among other things, the Chapter 11 Estates' ability to resolve disputes in connection with the unwinding of the more than 1.2 million derivative trades that were in place at the time of the Chapter 11 Estates' bankruptcy filings. The Court has initiated three separate, although related, ADR programs to help resolve derivative matters pursuant to three separate orders.

- On September 17, 2009, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 5207, Case No. 08-13555], approving ADR procedures for the Chapter 11 Estates' derivative contracts with recovery potential (the "Derivatives ADR Procedures").

- On May 2, 2012, the Court entered the *Order Amending the Tier 2 Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 27698, Case No. 08-13555], approving ADR procedures for the Chapter 11 Estates' derivative contracts with recovery potential for which a Chapter 11 Estate's claim is equal to or less than $5 million (the "Tier 2 Derivatives ADR Procedures").

- On October 2, 2013, the Court entered the *Order Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-452 Further Amending the Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicles* [ECF No. 40267, Case No. 08-13555], approving ADR procedures related to special purpose vehicles (the "SPV Derivatives ADR Procedures").[4]

---

[4] As used herein, the "Affirmative ADR Procedures" means, together, the Derivatives ADR Procedures, the Tier 2 Derivatives ADR Procedures, and the SPV Derivatives ADR Procedures, as each may have been amended and/or modified from time to time.

11. The ADR procedures have been especially instrumental in helping to resolve matters where a special purpose vehicle ("SPV") is a counterparty to one or more derivative swaps. These disputes involve SPVs with "flip clauses" – clauses that modify the priority of payments in connection with payments by these SPVs and which clauses already have been held by this Court in two opinions[5] to be invalid *ipso facto* clauses – in which the underlying assets in the SPVs (i) have not been distributed to noteholders of the SPVs (together, the "Non-Distributed Actions")[6] or (ii) have already been distributed to noteholders of the SPVs (*i.e.*, the Distributed Action).[7]

12. Instead of engaging in costly and burdensome litigation with defendants in the SPV Actions, the Chapter 11 Estates have engaged in the Court-ordered ADR program. Describing itself as a "huge proponent" of the ADR process, *see* Tr. of Hr'g, Feb. 13, 2013, at 41:14-15, the Court, on numerous occasions, has endorsed the ADR process, including as recently as this past January. *See* Tr. of Hr'g, Jan. 29, 2014, at 47:18-22 ("ongoing alternative dispute resolution measures . . . demonstrably have been extremely beneficial to the Lehman estate . . . [and] also have been beneficial to the counterparties themselves by avoiding the expense, burden and delay of litigation").

---

[5] *See Lehman Bros. Special Fin. Inc. v. BNY Corporate Trustee Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 407, 420 (Bankr. S.D.N.Y. 2010) ("*BNY*"); *Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd. (In re Lehman Bros. Holdings Inc.)*, 452 B.R. 31, 39 (Bankr. S.D.N.Y. 2011) ("*Ballyrock*").

[6] The Non-Distributed Actions are as follows: *Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, et al.*, Adv. Proc. No. 10-03542 (JMP); *Lehman Brothers Financial Products Inc. v. The Bank of New York Mellon Trust Co., National Association, et al.*, Adv. Proc. No. 10-03544 (JMP); *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, Adv. Proc. No. 10-03545 (JMP); *Lehman Brothers Special Financing Inc. v. Wells Fargo Bank National Association, et al.*, Adv. Proc. No. 10-03809 (JMP); *Lehman Brothers Special Financing Inc. v. Bank of New York Mellon National Association*, Adv. Proc. No. 10-03811 (JMP).

[7] As used herein, the "SPV Actions" means, together, the Non-Distributed Actions and the Distributed Action.

13. The Court has deemed the ADR process "one of the most extraordinarily successful aspect[s] of case administration in this massive case." Tr. of Hr'g, Feb. 13, 2013, at 41:18-20. The Court has also called ADR "indisputably a success" and observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court . . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion." Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2; *see also* Tr. of Hr'g, July 17, 2013, at 39:18-22 (noting that the ADR program has not only "produced material economic benefits to the estate, but the program has also correspondingly produced benefits to the counterparties, all of whom avoided the expense, distraction, and burden of litigation").

14. The Court has found that ADR program has produced "remarkable successes," *see* Tr. of Hr'g, June 15, 2011, at 31:11. The results of the Court's ADR program as a whole vividly show its success: under the Affirmative ADR Procedures cumulatively, the Chapter 11 Estates have recovered more than $2.25 billion as a result of 328 ADR settlements with 435 counterparties, all without Court intervention. Of the 158 ADR matters that have reached the mediation stage and have been concluded, 147 have been settled, a remarkable 93%. *See Letter to Hon. Shelley C. Chapman Regarding Fifty-Third ADR Status Report*, dated April 24, 2014 [ECF No. 44089, Case No. 08-13555].

15. Specifically, the Chapter 11 Estates' use of the ADR process in connection with the SPV Actions has been enormously successful, as described below.

Non-Distributed Actions

- Out of approximately 150 defendants in the Non-Distributed Actions, the Chapter 11 Estates have settled with all but 17 defendants.
    - Out of those 17 defendants, there are pending ADR proceedings with respect to 15 defendants. The Chapter 11 Estates have reached settlements in principle and are working toward final resolutions with a number of defendants that have been in the ADR process since it first began, including

6

post-mediation negotiations for well over a year. Although these ADR proceedings often take time, the parties have been able to bridge gaps and resolve their disputes – in large part because they had the time and a conducive atmosphere in which to engage in productive settlement negotiations.

- Only two defendants remain unsettled and outside of the ADR process – and as to one defendant, only one certain tranche of its transaction remains unsettled and outside of the ADR process. Each of these transactions (or tranches) raises unique issues that the Chapter 11 Estates are seeking to resolve expeditiously outside of litigation and ADR.

- While the Non-Distributed Actions have fewer named defendants than the Distributed Action, the SPV defendants sold notes to hundreds of individual noteholders. Settlements with the SPVs in the Non-Distributed Actions necessarily resolve disputes with the noteholder constituents which hold notes in the SPVs. For example, the recently settled cash hybrid transactions had 12 named defendants but encompassed at least 100 individual noteholders.[8]

Distributed Action

- LBSF has served ADR notices upon 140 defendants in the Distributed Action.[9]

    - There are pending ADR proceedings with respect to 108 defendants in the Distributed Action.

- LBSF has conducted in-person mediation sessions with 31 defendants in the Distributed Action.

- LBSF has settled with and dismissed 23 defendants from the Distributed Action.

- LBSF expects to settle with and consequently dismiss up to 16 other defendants within the next few weeks.

- LBSF has identified 24 noteholder defendants in the Distributed Action for which ADR proceedings have not been commenced:

    - Settlements are in process for six defendants.

---

[8] *See, e.g., Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Partial Settlement Agreement Relating to Certain Credit Default Swap Agreements and Indentures*, dated August 22, 2013 [ECF No. 39624, Case No. 08-13555]; *Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Partial Settlement Agreement Relating to Airlie CDO I, Ltd. Credit Default Swap Agreement and Indenture*, dated July 25, 2013 [ECF No. 39017, Case No. 08-13555].

[9] With respect to the Distributed Action, the term "defendants" refers to former, current, and potential defendants.

7

- With respect to seven defendants, LBSF has not been able to obtain information about the amount of funds distributed to or received by each defendant. LBSF is continuing with the discovery process to obtain the needed information to commence meaningful ADR proceedings as to those defendants.

- Eleven defendants are in unique situations in which it may be difficult to value the deal or the amounts at issue are very small.

16. In total, the Chapter 11 Estates have now settled – through ADR and otherwise – with over 156 defendants in connection with the SPV Actions, and there are currently approximately 123 defendants in the SPV Actions that are subject to the SPV Derivatives ADR Procedures.[10] Moreover, virtually all identified defendants in the SPV Actions are engaged with the Chapter 11 Estates in mediation, settlement discussions outside mediation, or otherwise.[11] Fourteen additional mediations currently are scheduled for the next couple of months.

17. While the Chapter 11 Estates recognize that litigation will commence pursuant to the scheduling order entered in this action, the Chapter 11 Estates believe that the more efficient and cost-effective way for all parties to move forward is to continue using ADR to pursue consensual resolutions of the SPV Actions while litigation is ongoing, a belief which the Court has endorsed. *See* Tr. of Hr'g, July 17, 2013, at 21:21-23, 22:5-7 ("The theory that litigation is a particularly efficient and important way to get to resolution I believe is overstated. . . . Litigation is not necessarily a good alternative to the procedures that are currently in place . . ."). Indeed, the Chapter 11 Estates remain optimistic that even the most difficult and contentious disputes can be resolved in ADR – notwithstanding the commencement of litigation as long as there is a procedure in place that best limits the amount of time and money most litigants have to spend litigating while the ADR process continues.

---

[10] In all types of ADRs to date, the Chapter 11 Estates have served more than 500 ADR notices.

[11] ADR proceedings have not been commenced with respect to the trustee defendants or the issuer defendants in the Distributed Action.

8

18. As the Plan Administrator has previously indicated, the expectation has been that the ADR process will not end when litigation commences. *See Omnibus Reply in Support of Motion of Lehman Brothers Holdings Inc., Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated Jan. 27, 2014 [ECF No. 42217, Case No. 08-13555], at ¶ 8. The stay imposed under the SPV Derivatives ADR Procedures (the "SPV ADR Stay") is a key component of those procedures, but the Proposed Scheduling Order contemplates practical and targeted relief from the SPV ADR Stay in order to allow defendants in the SPV Actions to participate in each stage of the SPV Actions. The Proposed Scheduling Order does not contemplate wholesale relief from the SPV ADR Stay, as JAH seeks here, which could undermine the ADR program and impair its effectiveness.

## ARGUMENT

### The Proposed Scheduling Order

19. Dispositive motions such as the motion to dismiss that JAH is seeking to file should not be addressed on an *ad hoc* basis, but in an orderly fashion pursuant to the scheduling and case management protocol to be set by the Court following the parties' recently-closed briefing on the matter.

20. There is nothing special about JAH or its planned motion to dismiss that necessitates any deviation from the process and procedure to be applied to each of the other Defendants in this proceeding.

21.     As set forth both in LBSF's Proposed Scheduling Order[12] and even the proposal by the group of 77 Defendants (the "Group") that objected to various other aspects of LBSF's proposal,[13] motions to dismiss for lack of personal jurisdiction, such as JAH's motion, should be addressed in an orderly fashion in Phase II, not now.

**The ADR Process**

22.     While JAH frames its motion as a request to lift the Litigation Stay, JAH effectively seeks to lift the SPV ADR Stay in whole. The Chapter 11 Estates have commenced ADR proceedings against JAH. Consequently, JAH is subject to the SPV ADR Stay. JAH has indicated that it would rather litigate than engage in good faith negotiations in the ADR process, and its motion is nothing more than a collateral attack on the SPV Derivatives ADR Procedures.

23.     The SPV Derivatives ADR Procedures would almost certainly be rendered ineffective if parties like JAH were able to file dispositive motions and litigate actively at the same time as the parties were attempting to engage in ADR. Instead of seeking to bypass the ADR process, JAH should comply with the orders of this Court and let the already-successful ADR process operate to facilitate discussions among the parties. JAH is free to assert all of its arguments before the mediator, including its arguments as to personal jurisdiction. The impartial mediators are sophisticated attorneys (including some former judges) who are capable of weighing the relative strengths and weaknesses of various arguments. The mediators are well-positioned to make an evaluation of the merits and try to help facilitate a settlement that

---

[12] All of the arguments set forth in LBSF's Omnibus Reply to the Objections and Responses to LBSF's Proposed Scheduling Order [ECF No. 754, Adv. Proc. No. 10-03547] (the "LBSF Reply") are incorporated herein by reference.

[13] *See* Response of Group of 77 Defendants to LBSF's Proposed Scheduling Order [ECF No. 730, Adv. Proc. No. 10-03547], at 26, n.24.

10

recognizes the weight of the arguments. Moreover, ultimate resolution of any ADR is a purely consensual process – no party can be forced to settle on terms to which it does not agree.

24. In the event that the ADR with JAH has not been terminated at the time that the personal jurisdiction issue is litigated in the Distributed Action, JAH will be afforded limited relief from the SPV ADR Stay and have a full and fair opportunity to participate in litigation of the issue at that time.[14] The Court should, therefore, deny JAH's request for wholesale relief from the SPV ADR Stay. JAH's collateral attack on the SPV Derivatives ADR Procedures should be summarily rejected.

**Personal Jurisdiction**

25. To be clear, LBSF has compelling responses to JAH's planned motion to dismiss for lack of personal jurisdiction, on which LBSF believes it will prevail when the motion is fully briefed at the appropriate time.

26. JAH's proposed motion to dismiss argues that JAH lacks sufficient minimum contacts with the United States and that even if the Court were to find sufficient minimum contacts, forcing JAH to litigate in New York would offend traditional notions of fair play and substantial justice. These arguments are without merit.

27. As a brief preview, LBSF has strong arguments that JAH's motion to dismiss should be denied based upon at least the following grounds.[15]

28. First, the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court") has held due process is satisfied where, as here, a foreign

---

[14] JAH will have the opportunity to participate in each stage of litigation in the Distributed Action.

[15] LBSF reserves all rights to add to and/or modify the arguments previewed herein at the time LBSF actually submits its opposition to JAH's motion to dismiss.

defendant that knowingly intended to profit from an investment with a nexus to the United States is forced to defend itself in a suit arising from such investment activities. *Picard v. Bureau of Labor Insurance* (*In re Bernard L. Madoff Inv. Sec. LLC*), 480 B.R. 501, 516-17 (Bankr. S.D.N.Y. 2012). JAH was the sole investor in a highly customized synthetic CDO—an investment through which it "intentionally tossed a seed from abroad to take root and grow . . . in the United States and reap the benefits therefrom." *Id.* at 506. JAH's investment had a clear U.S. nexus based upon at least the following facts which JAH knew or should have known: (i) the co-issuer of the notes was a Delaware LLC; (ii) the CDO assets consisted of a credit default swap between the issuer and LBSF, a Delaware corporation with its principal place of business in New York (which was guaranteed by LBHI, a Delaware corporation with its principal place of business in New York), and a guaranteed investment agreement with FSA Capital Management Services LLC, a Delaware LLC (which was guaranteed by a monoline insurance company organized under the laws of the State of New York); (iii) the Notes were offered by and through Lehman Brothers Inc. in New York and Lehman Brothers International (Europe), as managers; (iv) the deal was structured in New York, as the offering memorandum directs questions and requests for additional information to Lehman Brothers Inc., Transaction Management Group, in New York; (v) the portfolio manager was a Delaware corporation based in Chicago; and (vi) the reference portfolio underlying the credit default swap was largely comprised of obligations of U.S.-based issuers.

29.    Second, courts have held that a choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, purposely avail themselves of the benefits and protections of the laws of the forum whose laws they agreed would govern their relationship. *Id.* at 516 (citing *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 23 (2d Cir.

12

2004)).  Here, the relevant underlying agreements (*i.e.*, the indenture, the notes, the portfolio management agreement, the credit default swap, the permitted long-term investment and the purchase agreement) are all governed by New York law.  By participating in investments with a U.S. nexus, and invoking the benefits and protections of New York law via the relevant deal documents, JAH reasonably should have expected adjudication of related disputes to take place in the United States.

30. Third, especially for transfers that occurred post-petition, like the transfer to JAH, this Court also has the power to adjudicate issues involving property of the estate by its exercise of *in rem* jurisdiction, "even if the court does not have *in personam* jurisdiction over all the parties affected by that adjudication." *In re Indianapolis Downs, LLC*, 462 B.R. 104, 112 (Bankr. D. Del. 2011).  "The court's exercise of 'custody' over the debtor's property, via its exercise of *in rem* jurisdiction, essentially creates a fiction that the property—regardless of actual location—is *legally* located within the jurisdictional boundaries of the district in which the court sits." *In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998) (emphasis in original) (citing *Katchen v. Landy*, 382 U.S. 323, 327 (1966) (noting that bankruptcy courts have "constructive possession" over estate property) (internal quotation marks and citations omitted); *Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*, 700 F.2d 1279, 1282 (9th Cir. 1983) (noting that under the Bankruptcy Code, "all property of the debtor, wherever located, is in *custodia legis* of the bankruptcy court") (citation omitted)).  This includes property outside the territorial jurisdiction of the United States.  *In re Simon*, 153 F.3d at 996 (citations omitted).

31. Fourth, the exercise of jurisdiction over JAH would not offend justice according to Judge Lifland's analysis of the issue in *Picard v. Maxam Absolute Return Fund, L.P.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 460 B.R. 106, 119 (Bankr. S.D.N.Y. 2011).  Whatever

13

burdens may be imposed in requiring JAH to defend itself here are outweighed by the United States' nexus to its investment activities, Plaintiff's close connections to New York, the fact that JAH is represented by U.S. counsel, the "conveniences of modern communication and transportation," and the strong interest of the United States in applying the avoiding powers of the Bankruptcy Code. *Maxam*, 460 B.R. at 119 (citations omitted).

32. Finally, while JAH entirely ignores the New York long-arm statute (CPLR 302), courts have held that because it does not reach as far as the Constitution permits, due process will be satisfied if the long-arm statute is satisfied. *See, e.g., Picard v. Chais* (*In re Bernard L. Madoff Inv. Sec. LLC*), 440 B.R. 274, 280 (Bankr. S.D.N.Y. 2010); *see also Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 71, 464 N.E.2d 432, 434-35 (1984) ("The long-arm jurisdiction legitimized by the *International Shoe* court was implemented in [New York] by statute."). Receipt of an avoidable transfer which originated in the United States and caused economic injury to a New York bankruptcy estate may confer long-arm jurisdiction over the recipient of such transfer. *See In re Med-Atl. Petroleum Corp.*, 233 B.R. 644, 659-60 (Bankr. S.D.N.Y. 1999).

## **CONCLUSION**

33.    For the foregoing reasons, LBSF respectfully requests that the Court deny JAH's Lift Stay Motion.

Dated: New York, New York
        May 7, 2014

                              /s/William F. Dahill
                              Paul R. DeFilippo
                              William F. Dahill
                              Vincent T. Chang
                              Adam M. Bialek
                              Jeffrey Coviello

                              WOLLMUTH MAHER & DEUTSCH LLP
                              500 Fifth Avenue
                              New York, New York 10110
                              (212) 382-3300

                              - and -

                              Richard W. Slack
                              Jacqueline Marcus
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              (212) 310-8000

                              *Counsel for Plaintiff Lehman Brothers Special*
                              *Financing Inc.*