DIAMOND McCARTHY LLP
620 Eighth Avenue, 39th Floor
New York, New York 10018
Tel:  (212) 430-5400
Fax:  (212) 430-5499
Howard D. Ressler, Esq.
Stephen T. Loden, Esq.
Benjamin R. Garry, Esq.

*Counsel for JA Hokkaido Shinren*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                                  :

In re:                                            :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al*,    :        Chapter 11

                      Debtors.                    :        Case No. 08-13555 (JMP)

**LEHMAN BROTHERS SPECIAL FINANCING INC.**  :

                      Plaintiff,                :

v.                                             :        Adv. No.: 10-03547  (JMP)

**BANK OF AMERICA, N.A.,** *et al*                :

                      Defendants.            :
------------------------------------------------------------------------x

## REPLY IN SUPPORT OF APPLICATION TO LIFT LITIGATION STAY

TO:    THE HONORABLE SHELLEY C. CHAPMAN
         UNITED STATES BANKRUPTCY JUDGE

Subject to the Special Appearance[1], JA Hokkaido submits this reply in support of its Application to Lift the Litigation Stay Solely For the Purpose of Filing Motion to Dismiss for

---

[1] All capitalized terms used herein but not otherwise defined shall have the meanings accorded to them in the JA Hokkaido's Application to Lift Litigation Stay Solely for the Purpose of Filing Motion to Dismiss for Lack of Personal Jurisdiction [Adv. Dkt. No. 714].

Lack of Personal Jurisdiction (the "Lift Stay Motion") and, in support thereof, respectfully states as follows:

### JA Hokkaido Has Shown Good Cause To Lift The Litigation Stay

The Litigation Stay that Judge Peck entered on October 20, 2010 and extended multiple times thereafter expressly provides that the stay can be lifted for "good cause shown". Dkt. No. 12199, p. 3. Indeed, at the hearing to consider entry of the litigation stay, counsel for LBSF argued that the stay should be entered as proposed because "[t]he objectors are protected; they can come to court if there's cause to modify the stay, if we're not making progress. [emphasis added]" *See Transcript from October 20, 2010 hearing before Judge Peck*, Dkt. No. 12420, at p. 66, lln. 18 – 20, attached hereto as **Exhibit A**. Likewise, the Court made it clear that for:

> any party, whether it's a party represented by Boise, Schiller or (Indiscernible) or any other party for that matter, that is in a position to articulate distinguishing characteristics that would suggest that the imposition of the stay as to that party or parties is inappropriate or prejudicial. The order permits the filing of appropriate motion papers in the hearing to consider, in effect, relief from the stay.

**Exhibit A**, p. 67, ln. 23 – p. 68, ln. 3. In light of that history, LBSF's assertion that the Lift Stay Motion represents an "extraordinary and unwarranted request for special treatment" is absurd. *Response,* p. 4, ¶ 8. The Lift Stay Motion simply represents JA Hokkaido's acceptance of LBSF's counsel's invitation to "come to court if there's cause to modify the stay," which there most certainly is.

The Lift Stay Motion was not filed to prompt a referendum on LBSF's ADR procedure, nor does JA Hokkaido question LBSF's assertions that the ADR procedures have facilitated the negotiated resolution of scores of disputes. Indeed, the success or failure of LBSF's ADR procedures is completely irrelevant to the question presented by the Lift Stay Motion. Rather, the Lift Stay Motion poses a simple question which is not directly addressed anywhere in

2

#503075v1

LBSF's response – namely, whether JA Hokkaido has shown "good cause" for this Court to lift the Litigation Stay to allow it to the Motion to Dismiss.

JA Hokkaido has waited to address its jurisdictional concerns with LBSF for over three years, yet LBSF has stalled all attempts to discuss the substance of those issues. Now, LBSF asks the Court to likewise delay any inquiry into the substance of those jurisdictional concerns until it first conducts a lengthy class certification process. LBSF's continuing refusal to address the merits of JA Hokkaido's jurisdictional arguments has worked serious harms on JA Hokkaido, including:

- None of JA Hokkaido's senior management speaks English, thus requiring it to hire Japanese counsel at significant cost to translate all court filings and coordinate with US counsel with respect to these matters.

- JA Hokkaido will be required to retain additional counsel and expend further amounts in connection with an audit by the Japanese Ministry of Agriculture, Forestry and Fisheries that is anticipated to focus on this litigation, all of which could be avoided with a speedy resolution of the Motion to Dismiss.

- JA Hokkaido's current board of directors is scheduled to be replaced very soon with new directors, none of whom know anything about this litigation or the investments upon which this litigation is based.

- Other JA Hokkaido employees with knowledge of the transactions upon which this litigation is founded have left the company and continue to leave, thus hampering JA Hokkaido's ability to mount a defense, and the Court's opportunity to hear evidence on LBSF's claims.

- The uncertainty caused by this litigation has cast a chill over JA Hokkaido's investment decisions that will persist until the Motion to Dismiss is resolved.

Due process requires LBSF to "allege (1) that [JA Hokkaido] has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2nd Cir.

3

#503075v1

2013), *citing, Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Yet LBSF's complaint makes no attempt to satisfy that requirement, and LBSF's response to the Lift Stay Motion makes no attempt to refute JA Hokkaido's showing of good cause. Instead, LBSF's response extols the virtues of the litigation stay and the ADR procedures, and asserts that JA Hokkaido "should comply with the orders of this Court and let the already-successful ADR process operate to facilitate discussions among the parties." *Response,* p. 10, ¶ 23.

LBSF's logic is circular: in arguing that the Lift Stay Motion should be denied because the ADR procedures have been so successful, LBSF assumes without question that this Court has the authority to compel JA Hokkaido to participate in ADR – the very question that LBSF wants to avoid by delaying a ruling on the Motion to Dismiss for an indefinite period of time. Requiring JA Hokkaido to participate in an expensive forced mediation in a foreign country and in a foreign language without first determining that there are facts to support personal jurisdiction is antithetical to due process and traditional notions of fair play and substantial justice.

JA Hokkaido does not seek "special treatment", nor does JA Hokkaido seek to mount a "collateral attack on the SPV Derivatives ADR Procedures". *Response*, p. 4, ¶ 8; p. 10, ¶ 22. Rather, JA Hokkaido simply maintains that due process requires LBSF to demonstrate that JA Hokkaido is subject to personal jurisdiction in the United States before requiring participation in a lengthy and expensive ADR process or class certification litigation. Requiring LBSF to make that initial showing before proceeding with its claims against JA Hokkaido will ensure the "just, speedy, and inexpensive determination" of this proceeding. *See* FED. R. BANKR. P. 1001. Moreover, requiring LBSF to show personal jurisdiction before proceeding with its claims

4

#503075v1

against JA Hokkaido will lessen or eliminate the significant harms that JA Hokkaido will otherwise suffer if resolution of the Motion to Dismiss is further delayed.

### Requiring LBSF To Promptly Address The Jurisdictional Merits Works No Harm On The Chapter 11 Estates

LBSF's response demonstrates that it is more than able to immediately address the merits of JA Hokkaido's jurisdictional arguments.  Indeed, LBSF has spent over 5 months reviewing and analyzing JA Hokkaido's voluntary production of documents related to JA Hokkaido's contacts (or lack thereof) with the United States.  LBSF states in its response that its review of the "informal discovery received to date has only strengthened LBSF's view that this Court has personal jurisdiction over [JA Hokkaido]." *Response,* p. 3, n. 3.  In fact, LBSF's investigation allowed it to list no less than 6 facts about which LBSF asserts JA Hokkaido "knew or should have known." *Response,* p. 12, ¶ 28.  Yet LBSF makes no showing as to why it cannot bring the documents and evidence supporting those assertions to the Court's (and JA Hokkaido's) attention today as opposed to at the conclusion of a lengthy ADR and class certification process.

In addition to its factual investigation, LBSF has also researched and prepared its legal arguments in defense of the Motion to Dismiss.  In its response, LBSF devotes significant efforts to explain why it believes *Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 501, 516-17 (Bankr. S.D.N.Y. 2012) supports the assertion of personal jurisdiction over JA Hokkaido.  In fact, LBSF researched the merits of the Motion to Dismiss to such a degree that it confidently states that JA Hokkaido's jurisdictional arguments "are without merit," and that "LBSF has compelling responses to [JA Hokkaido's] planned motion to dismiss for lack of personal jurisdiction . . . ." *Response*, p. 11, ¶¶ 25-26.  What LBSF fails to explain, however, is why it cannot present those "compelling responses" to the Court until it first litigates what will almost certainly be an expensive and contentions class certification battle.

5

JA Hokkaido is ready to present its Motion to Dismiss to the Court as soon as a hearing can be scheduled, and at that hearing JA Hokkaido will demonstrate that LBSF's jurisdictional arguments are without merit.[2] For example, the facts in *Picard* are clearly distinguishable. In *Picard*, the foreign fraudulent transfer defendant actively sought out investments in the U.S. by hiring an investment advisor agent to find U.S. investments, affirmatively opened U.S. bank accounts, signed contracts irrevocably and affirmatively submitting to the jurisdiction of "New York Courts", agreed that all investments and payments would flow through U.S. bank accounts, made and received payments through New York bank accounts, and "invested tens of millions of dollars …*with the specific purpose* of having funds invested in…New York." *Picard* 480 B.R. at 506-509, 517 (emphasis added).

Upon hearing those facts, the *Picard* court's conclusion that the foreign defendant "intentionally tossed a seed from abroad to take root and grow a new tree in . . . the United States . . . ." is understandable. *Picard,* 480 B.R. at 506. But none of the facts that led to that conclusion in *Picard* are present in this case. Here, Lehman Brothers, through its Japanese subsidiary Lehman Brothers Japan, came to Japan to sell financial products to Japanese investors. No JA Hokkaido employees or representatives traveled to the United States in connection with these transactions, and JA Hokkaido maintains no business or presence in the United States. The vast majority of the deal documents were written in Japanese, and all of the JA Hokkaido documents were signed in Japan. The transactions at issue were completed via a transfer of Japanese yen between two Japanese bank accounts; JA Hokkaido maintains no bank accounts in the United States. Moreover, the deal documents themselves clearly state that the

---

[2] To be clear, the Lift Stay Motion only asks the Court to lift the litigation stay to permit the filing of the Motion to Dismiss – JA Hokkaido does not presently seek a ruling on the Motion to Dismiss.

6

#503075v1

investments being sold are not intended for United States residents or entities, but rather that they were intended solely to be sold to foreign interests.

In sum, it was not JA Hokkaido who "tossed a seed from abroad" to grow a business opportunity in the United States. If anything, that seed was tossed by Lehman Brothers towards Japan when Lehman Brothers used Lehman Brothers Japan to solicit customers for financial instruments that Lehman Brothers specifically stated would not be sold in the United States. *Picard* simply does not support LBSF's assertion that by selling foreign financial instruments through its Japanese affiliate, LBSF can hook JA Hokkaido, drag it over from Japan, and subject it to a lengthy and expensive ADR and class certification litigation in a foreign country where it conducts absolutely no business, has no contacts, maintains no bank accounts, has no employees, and does not even speak the language.

The rest of LBSF's arguments are similarly unavailing. For example, there is nothing dispositive about a New York choice of law clause buried deep in documents prepared by Lehman Brothers. *See Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 421 (E.D.N.Y. 2011) (stating that a choice of law clause is not dispositive in the personal jurisdiction analysis). This is especially the case were, unlike *Picard*, the choice of law clause Lehman drafted is wholly silent as to jurisdiction and venue. Likewise, the fact that a bankruptcy court maintains *in rem* jurisdiction over property of the estate regardless of where that property is located is irrelevant to whether this Court has specific *in personam* jurisdiction over foreign entities such as JA Hokkaido.

Finally, LBSF asserts that the Group of 77 Defendants (the "Group") supports LBSF's insistence that resolution of the Motion to Dismiss be delayed until after the class certification process. Although the Group is in the best position to explain its position on the Lift Stay

7

#503075v1

Motion, it should be noted that LBSF's assertion misrepresents what the Group states in its papers. While the Group does propose that JA Hokkaido's jurisdictional arguments be postponed until "Phase II", it qualifies that proposal by clarifying that the Group "do[es] not strongly object if the Court believes it appropriate to handle personal jurisdiction motions in Phase I…." *See Response of Group of 77 Defendants to LBSF's Proposed Scheduling Order* [Adv. Dkt. No. 730], at 26, n. 24.

Regardless of whether the Court ultimately adopts LBSF's or the Group's proposed litigation schedule, JA Hokkaido's position is the same: before JA Hokkaido can be hauled into a United States court and forced to attend ADR and litigate class certification, due process requires LBSF to demonstrate why this Court has personal jurisdiction over JA Hokkaido. JA Hokkaido first raised this argument by filing the Lift Stay Motion in June 2013. In response, LBSF asked JA Hokkaido to withdraw the motion without prejudice and to provide voluntary jurisdictional discovery, both of which JA Hokkaido did. Now, after having months to review that jurisdictional discovery, and after conducting a factual investigation and legal analysis of the Motion to Dismiss, LBSF still has not made any attempt to demonstrate why it cannot present its "compelling responses" to the Motion to Dismiss today, as opposed to months or longer from today.

## CONCLUSION

JA Hokkaido has patiently waited for over three years for LBSF to announce that it is ready to address the jurisdictional deficiencies in its complaint. During that wait, JA Hokkaido has suffered significant harms both to its business and its ability to defend against LBSF's claims. While the Court's inclination to grant LBSF leeway on these matters is understandable given the scope and complexity of the Lehman Brothers chapter 11 cases, that leeway should not

8

#503075v1

be without limits. LBSF is represented by two extremely competent law firms who are obviously ready to address the merits of the Motion to Dismiss. There is simply no reason that LBSF cannot address the merits of JA Hokkaido's Motion to Dismiss before class certification is litigated.

For all of these reasons, JA Hokkaido seeks entry of an order granting relief from the Stay Order solely for the purposes of allowing JA Hokkaido to file and obtain a ruling on the Motion to Dismiss, and granting such other and further relief as may be just and proper.

DATED:    May 12, 2014
          New York, New York

                                            Respectfully submitted,


                                            By:    /s/ Stephen T. Loden
                                                   Howard D. Ressler, Esq.
                                                   Stephen T. Loden, Esq.
                                                   Benjamin R. Garry, Esq.
                                            DIAMOND MCCARTHY LLP
                                            620 Eighth Avenue, 39th Floor
                                            New York, New York 10018
                                            Tel: (212) 430-5400
                                            Fax: (212) 430-5499
                                            *Counsel for JA Hokkaido Shinren*