# EXHIBIT A

Page 1

1

2      UNITED STATES BANKRUPTCY COURT

3      SOUTHERN DISTRICT OF NEW YORK

4      Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

5      - - - - - - - - - - - - - - - - - - - - -x

6      In the Matter of:

7

8      LEHMAN BROTHERS HOLDINGS INC., et al.

9               Debtors.

10     - - - - - - - - - - - - - - - - - - - - -x

11     In the Matter of:

12

13     LEHMAN BROTHERS INC.

14               Debtor.

15     - - - - - - - - - - - - - - - - - - - - -x

16               United States Bankruptcy Court

17               One Bowling Green

18               New York, New York

19

20               October 20, 2010

21               10:06 AM

22

23     B E F O R E:

24     HON. JAMES M. PECK

25     U.S. BANKRUPTCY JUDGE

Page 2

```
 1
 2    HEARING re Motion of Capital One, N.A. for Relief from the
 3    Automatic Stay
 4
 5    HEARING re Motion of Alpine Bank for Relief from the Automatic
 6    Stay
 7
 8    HEARING re Motion of Lehman Brothers Special Financing Inc. for
 9    Enforcement of the Automatic Stay and for Sanctions for
10    Violation of the ADR Procedures Order
11
12    HEARING re Motion of Debtors for Authorization and Approval of
13    the Global Settlement Among the Debtors and the Ambac Settling
14    Parties
15
16    HEARING re Motion of the Debtors for Authority to Enter into
17    Settlement with SunCal Trustee on Behalf of SunCal Involuntary
18    Debtors
19
20    HEARING re Debtors' Motion for Approval of a Settlement
21    Agreement Among LBSF, LBHI, and Societe Generale, New York
22    Branch and Certain Related Relief
23
24    HEARING re Debtors' Motion to Stay Avoidance Actions and Grant
25    Certain Related Relief
```

Page 3

```
 1

 2      HEARING re Lehman Brothers Special Financing Inc.'s Motion for

 3      Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014

 4

 5      SECURITIES INVESTOR PROTECTION CORPORATION PROCEEDINGS:

 6      HEARING re Motion of Newport Global Opportunities Fund (Master)

 7      L.P. and Newport Global Opportunities Fund L.P. for Entry of an

 8      Order Authorizing Newport to File Under Seal the Motion for

 9      Leave to Conduct Rule 2004 Discovery and Certain Exhibits

10      Thereto

11

12      HEARING re Motion of Newport Global Opportunities Fund (Master)

13      L.P. and Newport Global Opportunities Fund L.P. for Leave to

14      Conduct Rule 2004 Discovery

15

16

17

18

19

20

21

22

23

24

25      Transcribed by:  Lisa Bar-Leib
```

Page 4

```
 1
 2    A P P E A R A N C E S :
 3    WEIL, GOTSHAL & MANGES LLP
 4          Attorneys for Debtors and Debtors-in-Possession
 5          767 Fifth Avenue
 6          New York, NY 10153
 7
 8    BY:   HARVEY R. MILLER, ESQ.
 9          JACQUELINE MARCUS, ESQ.
10          ERIC J. PETERMAN, ESQ.
11
12    WEIL, GOTSHAL & MANGES LLP
13          Attorneys for Debtors and Debtors-in-Possession
14          700 Louisiana
15          Suite 1600
16          Houston, TX 77002
17
18    BY:   ALFREDO R. PEREZ, ESQ.
19
20
21
22
23
24
25
```

1

2    WEIL, GOTSHAL & MANGES LLP

3          Attorneys for Debtors

4          1300 Eye Street NW

5          Suite 900

6          Washington, DC 20005

7

8    BY:   RALPH I. MILLER, ESQ.

9          HOLLY E. LOISEAU, ESQ.

10

11   WEIL, GOTSHAL & MANGES LLP

12          Attorneys for Debtors

13          1395 Brickell Avenue

14          Suite 1200

15          Miami, FL 33131

16

17   BY:   EDWARD MCCARTHY, ESQ.

18          EDWARD SOTO, ESQ.

19          (TELEPHONICALLY)

20

21

22

23

24

25

Page 6

1

2    JONES DAY

3         Attorneys for the Debtors Lehman Brothers Holdings Inc.

4          and Lehman Brothers Special Financing

5         222 East 41st Street

6         New York, NY 10017

7

8    BY:   AVIVA W. SISITSKY, ESQ.

9          JAYANT W. TAMBE, ESQ.

10

11   STUTMAN, TREISTER & BLATT

12         Attorneys for Lehman Brothers Holdings, Inc.

13         1901 Avenue of the Stars

14         12th Floor

15         Los Angeles, CA 90067

16

17   BY:   MICHAEL NEUMEISTER, ESQ.

18         MARINA FINEMAN, ESQ.

19         JEFFREY H. DAVIDSON, ESQ.

20         (TELEPHONICALLY)

21

22

23

24

25

Page 7

```
 1

 2    HUGHES HUBBARD & REED LLP

 3          Attorneys for Movant, James W. Giddens, SIPA Trustee

 4          One Battery Park Plaza

 5          New York, NY 10004

 6

 7    BY:   JEFFREY S. MARGOLIN, ESQ.

 8          DAVID WILTENBURG, ESQ.

 9

10    MILBANK, TWEED, HADLEY & MCCLOY LLP

11          Attorneys for the Official Committee of Unsecured

12           Creditors

13          One Chase Manhattan Plaza

14          New York, NY 10005

15

16    BY:   DENNIS C. O'DONNELL, JR.

17          DENNIS F. DUNNE, ESQ.

18

19

20

21

22

23

24

25
```

Page 8

```
 1

 2    MILBANK, TWEED, HADLEY & MCCLOY LLP

 3         Attorneys for the Official Committee of Unsecured

 4          Creditors

 5          International Square Building

 6          1850 K Street, NW

 7          Washington, DC 20006

 8

 9    BY:   ADRIAN C. AZER, ESQ.

10

11    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

12          Conflicts Counsel for Committee

13          865 South Figueroa Street

14          10th Floor

15          Los Angeles, CA 90017

16

17    BY:   ERIC D. WINSTON, ESQ.

18

19    UNITED STATES DEPARTMENT OF JUSTICE

20          Office of the United States Trustee

21          33 Whitehall Street

22          Suite 2100

23          New York, NY 10004

24

25    BY:   ANDREW D. VELEZ-RIVERA, ESQ.
```

Page 9

```
 1
 2   ALSTON & BIRD LLP
 3        Attorneys for Bank of America, as Libra Trusted
 4        90 Park Avenue
 5        New York, NY 10016
 6
 7   BY:   MICHAEL E. JOHNSON, ESQ.
 8
 9   BECKER, GLYNN, MELAMED & MUFFLY LLP
10        Attorneys for Alpine Bank
11        299 Park Avenue
12        New York, NY 10171
13
14   BY:   ALEC P. OSTROW, ESQ.
15
16   BOIES SCHILLER & FLEXNER LLP
17        Attorneys for BnP Paribas London Branch
18        333 Main Street
19        Armonk, NY 10504
20
21   BY:   MOTTY SHULMAN, ESQ.
22
23
24
25
```

Page 10

```
 1

 2    BROWN RUDNICK LLP

 3          Attorneys for Loreley Financing (Jersey) Nos. 8, 15 and

 4           24 Limited

 5          Seven Times Square

 6          New York, NY 10036

 7

 8    BY:   ANDREW S. DASH, ESQ.

 9          DAVID J. MOLTON, ESQ.

10

11    BROWN RUDNICK LLP

12          Attorneys for Loreley Financing (Jersey) Nos. 8, 15 and

13           24 Limited

14          One Financial Center

15          Boston, MA 02111

16

17    BY:   BENJAMIN R. CHAPMAN, ESQ.

18          ANGELO THALASSINOS, ESQ.

19          (TELEPHONICALLY)

20

21

22

23

24

25
```

1

2    CHAPMAN AND CUTLER LLP

3         Attorneys for U.S. Bank, National Association, as Trustee

4         111 West Monroe Street

5         Chicago, IL 60603

6

7    BY:   FRANKLIN H. TOP, III, ESQ.

8          RICHARD DOWNEY, ESQ.

9          JAMES HEISER, ESQ. (TELEPHONICALLY)

10

11   DEWEY & LEBOEUF, LLP

12        Attorneys for Ambac Settling Parties

13        One Embarcadero Center

14        Suite 400

15        San Francisco, CA 94111

16

17   BY:   BENNETT G. YOUNG, ESQ.

18

19   DEWEY & LEBOEUF, LLP

20        Attorneys for Ambac Settling Parties

21        1301 Avenue of the Americas

22        New York, NY 10019

23

24   BY:   JEFFREY CHUBAK, ESQ.

25

```
 1

 2    FOLEY & LARDNER LLP

 3         Attorneys for Wisconsin Commissioner of Insurance

 4         Verex Plaza

 5         150 East Gilman Street

 6         Madison, WI 53703

 7

 8    BY:   MICHAEL B. VAN SICKLEN, ESQ.

 9          (TELEPHONICALLY)

10

11    KUTAK ROCK LLP

12         Attorneys for Nebraska Investment Finance Authority

13         The Omaha Building

14         1650 Farnam Street

15         Omaha, NE 68102

16

17    BY:   BRUCE A. WILSON, ESQ.

18

19    LOWENSTEIN SANDLER P.C.

20         Attorneys for Liberty View

21         65 Livingston Avenue

22         Roseland, NJ 07068

23

24    BY:   SEAN QUIGLEY, ESQ.

25
```

```
 1

 2    MAYER BROWN LLP

 3         Attorneys for Societe Generale and Canadian Imperial Bank

 4          of Commerce

 5         1675 Broadway

 6         New York, NY 10019

 7

 8    BY:   STEVEN WOLOWITZ, ESQ.

 9          BRIAN TRUST, ESQ.

10

11

12    NIXON PEABODY LLP

13         Attorneys for Deutsche Bank National Trust Co.

14         100 Summer Street

15         Boston, MA 02110

16

17    BY:   RICHARD C. PEDONE, ESQ.

18

19    REED SMITH LLP

20         Attorneys for Bank of New York Mellon Trust Company,

21          N.A., as Indenture Trustee

22         599 Lexington Avenue

23         New York, NY 10022

24

25    BY:   ERIC A. SCHAFFER, ESQ.
```

```
 1
 2    SEWARD & KISSEL LLP
 3         One Batter Park Plaza
 4         New York, NY 10004
 5
 6    BY:   JUSTIN L. SHEARER, ESQ.
 7         JOHN ASHMEAD, ESQ.
 8
 9    THOMAS PIETRANTNIO, P.C.
10         Attorneys for Interface Cable
11         334 Main Street
12         Port Washington, NY 11050
13
14    BY:   THOMAS PIETRANTONIO, ESQ.
15
16    WHITE & CASE LLP
17         Attorneys for Ad Hoc Committee of Lehman Brothers
18          Creditors
19         1155 Avenue of the Americas
20         New York, NY 10036
21
22    BY:   J. CHRISTOPHER SHORE
23
24
25
```

```
 1

 2    WILLKIE FARR & GALLAGHER LLP

 3         Attorneys for Natixis Financial Products LLC

 4         787 Seventh Avenue

 5         New York, NY 10019

 6

 7    BY:   MELANIE GROSSMAN, ESQ.

 8

 9    WOLLMUTH MAHER & DEUTSCH LLP

10         Proposed Counsel for the Debtors, Adversary 10-03547

11         500 Fifth Avenue

12         New York, NY 10110

13

14    BY:   PAUL R. DEFILIPPO, ESQ.

15         WILLIAM A. MAHER, ESQ.

16

17

18

19

20

21

22

23

24

25
```

Page 16

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  All rise.
 3            THE COURT:  Be seated, please.  Good morning.  Good
 4      morning, Mr. Miller.
 5            MR. HARVEY MILLER:  Good morning, Your Honor.  Harvey
 6      Miller, Weil Gotshal & Manges on behalf of the debtors.  This
 7      is an omnibus hearing, Your Honor, in the Lehman cases.
 8      Referring to the agenda, Your Honor, we have a number of
 9      uncontested matters.  Items 1 and 2, which are motions by
10      Capital One, N.A. and a motion by Alpine Bank for modification
11      of the automatic stay.  These have been resolved, Your Honor.
12      There are no appearances by the moving parties.  We've been
13      authorized to represent to the Court that it's been resolved.
14      Stipulations are in the process of being prepared and will be
15      submitted to the Court either this afternoon or tomorrow.
16            THE COURT:  I see Mr. Ostrow standing.  I don't know
17      if he's standing for either of these matters or if, for some
18      reason, he needed to stretch.
19            MR. OSTROW:  Good morning, Your Honor.  Alec Ostrow
20      from Becker, Glynn, Melamed & Muffly for Alpine Bank.  I don't
21      disagree with what Mr. Miller said.  I'm just here, Your Honor,
22      because we are very close to resolving the matter.  We have the
23      debtors' attention and I don't want to lose it.  If we can't
24      get to final resolution, I'd like the opportunity to bring this
25      back up on very short notice.  That's all.
```

1          THE COURT:  Okay.  You've said what you've said.  I'm

2     not commenting further.

3          MR. HARVEY MILLER:  It will be resolved, Your Honor.

4          THE COURT:  I expect so.

5          MR. OSTROW:  Thank you.

6          MR. HARVEY MILLER:  Your Honor, number 3 is a motion

7     by Lehman Brothers Special Financing Inc. to enforce the

8     automatic stay and for sanctions for violations of the ADR

9     procedures order.  The respondents, Your Honor, PT Mobile-8,

10    which is in Indonesia, has taken the position Your Honor has no

11    jurisdiction over it.  And we're moving forward, Your Honor.

12    There's a declaration by my associate, Holly Loiseau who is

13    here in court if Your Honor would like some further information

14    as to this motion.

15         THE COURT:  I looked pretty carefully at this.  Are

16    one of the issues of service or this is just a situation where

17    the Mobile-8 entity in Indonesia is thumbing its nose that

18    everything that goes on in this court?

19         MR. HARVEY MILLER:  Your Honor, may I introduce Ms.

20    Loiseau?  She is (indiscernible) in this matter.

21         THE COURT:  Fine.  Yes.  Welcome.

22         MS. LOISEAU:  Good morning, Your Honor.  Holly Loiseau

23    for the debtors.  Yes, Your Honor.  What has occurred with this

24    case is that the PT Mobile-8 was involved with the ADR

25    procedures process.  And they responded to the notice.  We held

Page 18

1    three additional settlement conferences with them by phone.

2    And then they refused to respond to the court-appointed

3    mediator for mediation.  And then, on September 10th, the

4    debtor received a copy of the complaint that had been filed

5    apparently in May of 2010 in the Jakarta court.  The

6    counterparty here was in full knowledge of the debtor's

7    bankruptcy case because they had been participating in the ADR

8    procedures process.

9         In addition, we have delivered notice of this motion

10   by e-mail, facsimile and by overnight mail.  We also delivered

11   a letter before we filed the motion saying that the Jakarta

12   action that they had filed was in violation of the automatic

13   stay and asking that they withdraw it immediately because it

14   was in violation of the stay.  The counterparty -- their

15   counsel refused to accept hand-delivery of that letter on

16   several occasions.  We had obtained local counsel on behalf of

17   the debtors in Jakarta who are very familiar with this

18   particular counsel for the counterparty and they refused to

19   accept service of that letter.

20        THE COURT:  Okay.  Based upon your representations,

21   there seems to be no doubt that Mobile-8 has actual notice of

22   the bankruptcy, participated to some extent in the ADR

23   procedures and, presumably by design, decided to ignore the

24   authority of the bankruptcy court and to take steps to protect

25   itself under local law.  I have no further questions of you.  I

08-13555-scc   Doc 24730-1   Filed 01/27/12   Entered 01/27/12 15:46:09   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.   Exhibit A
Part 1   Pg 20 of 36

Page 19

1   understand the situation.

2          MS. LOISEAU:  Thank you, Your Honor.

3          THE COURT:  This is, at this point, an uncontested

4   motion of Lehman Brothers Special Financing to enforce the

5   automatic stay and for sanctions.  It's unopposed and the

6   motion will be granted.  What happens thereafter, I leave to

7   the debtors.

8          MS. LOISEAU:  Thank you, Your Honor.

9          THE COURT:  What will happen at this point?

10          MS. LOISEAU:  Well, Your Honor, the debtors have filed

11   an adversary proceeding as well with respect to the amounts

12   that are owed by this counterparty which is approximately 4.6

13   million dollars plus interest.  And the debtors will proceed

14   with whatever avenues they -- are available to them to try to

15   enforce that judgment and to recover the amounts payable to the

16   estate.

17          THE COURT:  And I take it that you're taking

18   appropriate steps in Jakarta with local counsel to pursue all

19   remedies.

20          MS. LOISEAU:  What we have done is our first move was

21   to come to this court which we believe is the appropriate court

22   to decide all matters with respect to claims against the

23   debtor.  And -- but we have retained local counsel to advise us

24   on the procedures and the process there --

25          THE COURT:  Okay.

1          MS. LOISEAU:  -- and what impact this judgment might

2     have -- a judgment from this Court would have.

3          THE COURT:  All right.  Fine.  Good luck.

4          MS. LOISEAU:  Thank you.

5          MR. HARVEY MILLER:  If Your Honor please, for the

6     fourth uncontested matter, Jones Day appears on behalf of the

7     debtor.

8        (Pause)

9          MS. SISITSKY:  Good morning, Your Honor.  Aviva

10    Sisitsky of Jones Day for the debtors on the uncontested matter

11    of the motion by Lehman Brothers Holdings and its affiliated

12    debtors for authorization and approval for the settlement

13    agreement with Ambac Assurance Corporation and certain related

14    Ambac entities.

15          The global settlement agreement as described din the

16    motion provides that Ambac will be withdrawing all sixty of its

17    proofs of claim filed in the debtors' Chapter 11 cases which

18    relate to complex residential mortgage-backed securities

19    transactions and which, in the aggregate, exceeds 6.1 billion

20    dollars.

21          The global settlement agreement also provides for a

22    general release by each party of the other party and certain

23    related entities and resolves the issues involved in three

24    contested credit derivative contracts in which Ambac provided

25    financial guaranty insurance contracts.

```
 1              Your Honor, the motion and accompanying declaration of

 2    Daniel Ehrmann was filed on October 5th.  No objections have

 3    been filed and none received as of this morning.  Proper notice

 4    was provided in accordance with the claim settlement procedures

 5    established by this Court in its March 31st, 2010 order.  And

 6    the affidavit of service has also been filed.  The creditors'

 7    committee also supports this motion, Your Honor, and the global

 8    settlement agreement.

 9              Two points on the motion, if I may quickly.  The

10    parties reached final documentation and execution of the global

11    settlement agreement subsequent to the October 5th filing of

12    the motion.  Upon execution of the global settlement agreement,

13    the parties mutually agreed to add signatories to both sides.

14    The motion which summarizes in detail the salient terms of the

15    global settlement remains unchanged.  This is a technical

16    point, Your Honor.  Accordingly, there are now thirteen Ambac

17    related entities that are signatories and all of the Lehman

18    debtors are also signatories.

19              We had conducted an investigation by reviewing the

20    debtors' schedules and have spoken to our client and consent

21    that there are no claims by these additional debtor schedules.

22    Thus, we are here today on behalf of all the debtors asking for

23    Your Honor's approval of the global settlement agreements to

24    which they all are now parties.

25              We've amended the proposed order to reflect this
```

Page 22

1    technical change.  And if I may approach, I'm happy to hand up

2    the proposed order along with the blackline.

3           THE COURT:  Yes.  You may approach.

4       (Pause)

5           MS. SISITSKY:  I also wanted to mention that the

6    global settlement agreement, Your Honor, is subject to two

7    approvals:  Your Honor's approval and the approval of the

8    circuit court of Dane County of Wisconsin or the rehabilitation

9    court in which Ambac is engaged in their rehabilitation

10   proceeding.  The global settlement agreement provides that the

11   settlement becomes effective upon the approval of both Courts.

12   We should have participating by telephone counsel for Ambac

13   parties and counsel for the Office of the Commissioner of

14   Insurance.  That's my understanding that they were planning on

15   participating by phone.  And they can explain the process in

16   the rehabilitation court for getting the approval and that

17   prosecution of the plan of rehabilitation filed in the Ambac's

18   rehabilitation proceedings on October 8th would not affect the

19   global settlement agreement.

20          THE COURT:  Let's take a moment and find out if

21   anyone's on the phone from Wisconsin who wishes to speak up to

22   this issue.

23          MR. VAN SICKLEN (TELEPHONICALLY):  Yes, Your Honor.

24   My name is Mike van Sicklen.  I'm a partner at the law firm of

25   Foley & Lardner.  I'm appearing telephonically this morning

1    from Madison, Wisconsin.  We represent the Wisconsin

2    Commissioner of Insurance both as the regulator of Ambac

3    Assurance Corporation and as a court-appointed rehabilitator of

4    the segregated account of Ambac Assurance.  Are you able to

5    hear me okay, Your Honor?

6          THE COURT:  Loud and clear, thank you.

7          MR. VAN SICKLEN:  Okay.  Just three very brief points.

8    The commissioner here in Wisconsin supports approval both in

9    your court and in our court of the global settlement agreement.

10    We think it makes imminent sense.  It avoids protracted

11    litigation with very uncertain outcomes of both sides.  It's a

12    mutual release.

13          Secondly, we have filed already earlier this week a

14    parallel application for approval with our Wisconsin

15    rehabilitation court of the agreement.  It's set for a hearing

16    here in Wisconsin on November 5th with a prior deadline for

17    filing any objections.  If none are received, we will ask Dane

18    County Circuit Court to approve our entry through the

19    commissioner into the settlement on October 31st.  There was a

20    reference by counsel for Lehman Brothers a minute ago about our

21    pending plan for confirmation, the rehabilitation that we've

22    promulgated on behalf of the commissioner.  We do not think

23    that how that process unfolds at confirmation will alter or

24    impair the effectiveness of the global settlement being entered

25    into by the commissioner or Ambac both of which are

1    signatories.

2              So I'm happy to field any questions you have, Your

3    Honor.  But we're anticipating a smooth approval process at

4    this hearing.

5              THE COURT:  Okay.  Thank you.

6              MR. YOUNG (TELEPHONICALLY):  Your Honor, this is

7    Bennett Young of Dewey & LeBoeuf in San Francisco.  I represent

8    Ambac Assurance Corporation and its affiliates.  And I agree

9    with the statements that Mr. van Sicklen has just made

10   regarding the (indiscernible).  I just wanted to note my

11   appearance for Your Honor.

12             THE COURT:  All right.  Thank you very much.  This may

13   be a good time to hear from counsel for the committee to the

14   extent that there's any comment to be made on this.  Or if you

15   don't need to speak, you don't have to, but it seems like a

16   logical time since we're hearing from other parties.

17             MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

18   Tweed, Hadley & McCloy on behalf of the committee.  Not much to

19   say, Your Honor.  We agree.  We support the settlement.  It was

20   evaluated by both our derivative subcommittee and the full

21   committee and we believe that it's a good settlement for the

22   debtors.

23             THE COURT:  Okay.  Fine.

24             MS. SISITSKY:  One last thing, Your Honor.  Attached

25   to the motion is Mr. Ehrmann's written declaration which could

08-13555-scc Doc 24780-1 Filed 05/14/14 Entered 05/14/14 14:45:09 Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 1 Pg 26 of 36

Page 25

1   be treated as his testimony for hearing if Your Honor wishes.

2   Otherwise, I'm happy to proffer his testimony.

3          THE COURT:  You can do it but I've seen the

4   declaration on the record and this not only uncontested but

5   seems to be broadly supported by parties in interest.  And the

6   fact that it has been reviewed by the creditors' committee and

7   found acceptable is also very helpful.  It's obviously a

8   settlement that benefits both this estate and the Ambac

9   rehabilitation that was the cause of (indiscernible) endorsing

10  it on both sides.  And I accept the declaration that has been

11  filed as the functional equivalent of Mr. Ehrmann's testimony.

12         MS. SISITSKY:  Thank you, Your Honor.  And then I

13  think we're prepared to rest on our papers at this point and we

14  ask this Court to approve the motion and enter the proposed

15  order.

16         THE COURT:  I approve and I will enter the order.

17         MS. SISITSKY:  Thank you.

18         THE COURT:  One thing before I hear from Mr. Perez and

19  before you leave.  The order that was handed up doesn't have a

20  disk attached so that if you have another disk maybe we can

21  allow Weil Gotshal to act as the (indiscernible) but at counsel

22  table so that I can then (indiscernible).  Thank you.

23         MS. SISITSKY:  Thank you, sir.

24         MR. PEREZ:  Good morning, Your Honor.  Alfredo Perez

25  on behalf of the debtors.  Your Honor, I'm here on the only

Page 26

1   group of SunCal cases that I haven't been here on before.

2   There was the matters that we were here on the last time which

3   we called the Core I matters.  The Court approved the

4   settlement that was -- there's a motion to approve the

5   settlement agreement in the SunCal cases scheduled for late

6   December.  There is a hearing on the disclosure statement in

7   that case scheduled for early December.  Then there are the

8   SunCal voluntary cases which were the subject of several

9   hearings in this court.  Those are on appeal to the Second

10  Circuit.  Judge -- one of the -- Judge Cabranes expedited the

11  appeal so our brief is due next week and the matter is set to

12  be argued at the beginning of December.

13          Your Honor, with respect to these cases, which we call

14  the involuntary cases or the trustee cases, the debtor has

15  entered into a settlement agreement that will be incorporated

16  into a plan.  The total debt with respect to these cases is

17  about a billion one.  There are six loans but I think there are

18  seven properties that are actually covered by the loans, Your

19  Honor.

20          In essence, the settlement agreement would provide for

21  (a) the conveyance of the property to Lehman entities; (b) the

22  funding of a plan by the Lehman entities which -- and the plan

23  basically has two components.  One is the expenses and one is

24  the payment of creditors.  The creditors will be paid on a

25  sliding scale depending on what time they incurred their debt

1    or whether they're secured.  And then third, a full release of

2    all of the parties from all of the underlying litigation.

3           Your Honor, this has been the subject of very, very

4    lengthy extensive negotiations.  The motion papers that we

5    filed set forth, in essence, the general terms of the

6    agreement.  But on October 4th, attached to a notice under my

7    signature, we actually filed the actual plan and disclosure

8    statement that was filed both in the involuntary case.  And

9    then subject to a much earlier order of this Court, we filed

10   the upgrade of the plan in the voluntary cases, really not

11   related to this motion today.

12          Your Honor, we did receive one response.  It wasn't an

13   objection -- from counsel for the SunCal voluntary debtors, Mr.

14   O'Keefe.  I don't see him in the courtroom.  It's possible he's

15   on the phone but I don't know whether he is or not.

16          THE COURT:  Let's find out.  Mr. O'Keefe, are you

17   anywhere to be heard?  Apparently, he's not on the line.

18          MR. PEREZ:  Okay.  Thank you, Your Honor.  And

19   basically, he raised two points.  One, he wanted to make sure

20   that our settlement agreement was subject to the approval of

21   the plan in the SunCal cases which, of course, it was.  It said

22   it in there.  We filed a brief response saying that it was.

23   And second, he wanted some additional language in the order

24   making sure that there was no prejudgment as to the

25   jurisdiction of the California court which we've included in

1    the order.

2         We filed yesterday a very, very short declaration from

3    Mr. Brusco.  For all intents and purposes, Your Honor, the

4    matter is really not contested because I think we've addressed

5    the two issues that he raised.  And they really weren't an

6    objection but were more by means of clarification.  So unless

7    the Court has any questions, we would request entry of the

8    order.

9         THE COURT:  I don't have any questions in respect of

10   the matter before me.  But I do have a question as it relates

11   to the continued controversy with the plaintiffs represented by

12   Mr. O'Keefe and the degree to which that represents a threat to

13   the successful conclusion of the cases that are the subject of

14   the separate settlement agreements that I have already approved

15   and that I'm about to approve.

16        MR. PEREZ:  Your Honor, I think that -- just by way of

17   background.  There is a pending appeal in the Second Circuit on

18   Your Honor's two orders that were affirmed by Judge Hall.

19   There is the appeal in the Ninth Circuit with respect to the

20   order -- the back order.  There is a second appeal pending at

21   the BAP with respect to the proofs of claim that were filed by

22   Lehman.  There is currently a motion which has been briefed --

23   we referenced it in the footnote -- that has not been decided

24   or I don't even believe has been argued in which the SunCal

25   voluntary debtors are seeking to stay everything until relief

08-10558-scc Doc 2480-1 Filed 05/21/14 Entered 05/21/14 13:46:09 Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 1 Pg 30 of 36

Page 29

1    from stay is obtained in these cases.  And then there are

2    plans.  They have filed a plan with respect to all voluntary

3    and involuntary debtors.  And we have filed a plan with respect

4    to all voluntary and involuntary debtors.

5              So, Your Honor, not being the person directly involved

6    with it, I think that there is a significant possibility that

7    there might be some interference, if you will, as a result of

8    the controversy with the SunCal voluntary debtors.

9              THE COURT:  Are any conversations underway or

10   contemplated that might bring about a global resolution of all

11   issues in the cases?

12             MR. PEREZ:  Your Honor, there have been conversations

13   that have gone on between Mr. Pachulski and Mr. Soto and

14   counsel for Mr. Couchot, Mr. O'Keefe's partner.  There have

15   been conversations that have gone on from time to time with

16   respect to resolving portions of the matter, with respect to

17   solving things a little bit more generally.  But to my

18   knowledge, there are no what I would refer to current ongoing

19   global discussions.  But there are certainly discussions very

20   frequently with respect to particular issues and sometimes more

21   global aspects.

22             THE COURT:  Okay.  Thank you for that.  I've looked at

23   Mr. Brusco's declaration and this is essentially uncontested

24   now.  And unless someone wishes to be heard on the subject, I'm

25   prepared to approve this.

08-13555-scc  Doc 62430-1  Filed 05/11/21  Entered 05/11/21 13:46:09  Main Document
Part 1  Pg 31 of 36
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 30

1          MR. O'DONNELL:  Your Honor, Dennis O'Donnell again

2     from Milbank for the official committee.  We did file

3     statements for this one, Your Honor, as we have in the past.

4     SunCal is something we've been following very closely.  Our FAs

5     are heavily involved in the business decisions being made here.

6     And notwithstanding the status of potential issues that

7     confront getting this approved as part of the plan, we believe

8     that the settlement set forth in the motion is a good

9     settlement again and it should be approved by the Court.

10          THE COURT:  Fine.  I'm approving it.

11          MR. PEREZ:  Thank you, Your Honor.  May I be excused?

12          THE COURT:  Yes.

13          MR. PEREZ:  Thank you.

14     (Pause)

15          THE COURT:  Good morning, Mr. Miller.

16          MR. RALPH MILLER:  Good morning, Your Honor.  I'm

17     Ralph Miller from Weil Gotshal & Manges here for Lehman

18     Brothers Holdings Inc. known as LBHI and Lehman Brothers

19     Special Financing Inc. known as LBSF.  On the approval hearing

20     for a settlement with Societe Generale and disputes arising

21     from transactions known as Libra and MKP Vela -- I'm going to

22     refer to Societe Generale as SG.  First, I'm pleased to report

23     that we have resolved the last of the two objections this

24     morning in discussions with Mr. Eric Schaffer.  So there are no

25     objections to this motion pending.  But I do need to take a

1    moment to explain the basis for resolving these objections and

2    some changes to the order, if I may, Your Honor.

3         THE COURT:  Sure.

4         MR. RALPH MILLER:  May I approach, Your Honor, to

5    provide a couple of copies of the revised order to the Court?

6         THE COURT:  You may approach.

7      (Pause)

8         MR. RALPH MILLER:  There are two (indiscernible).

9    We'll talk about one, (indiscernible) motion.

10        Your Honor, after months of intense negotiations with

11   SG, the creditors' committee and LBSF have achieved a

12   settlement that will bring at least 425 million dollars of net

13   value into the LBSF estate.  And the preserves claims of LBSF

14   that could bring in an additional approximately seventy-two

15   million dollars.  Two limited objections were filed with the

16   settlement, one by the Libra trustee, which is Bank of America,

17   and one by the MKP Vela trustee which is the Bank of New York

18   Mellon Trust Company.  Through negotiations yesterday and this

19   morning, those objections were resolved.  The order I have

20   passed up is redlined to reflect the changes made last night.

21   And it has a handwritten edition that was negotiated this

22   morning which I'd like to read into the record.  Our proposal,

23   if it's acceptable to the Court, is for us to bring the Court a

24   corrected version this afternoon that reflects all of these

25   changes rolled into the order.

1           THE COURT:  Yes.  That's fine.

2           MR. RALPH MILLER:  The changes, Your Honor, all have

3    to do essentially with the future of the matter and it may make

4    sense if I take just a moment to explain to the Court what is

5    being resolved and what is not being resolved by the

6    settlement.

7           The Court's already aware of the structure of the

8    Libra transaction because it was the subject of an evidentiary

9    hearing concerning a letter agreement with Deutsche Bank that

10   dealt with a possible assumption of the Libra deal by Deutsche

11   Bank and because cross-motions for summary judgment were argued

12   but not yet decided concerning a purported determination of the

13   Libra transaction.  Fortunately, the transaction documents and

14   the MKP Vela transaction are, for all material purposes,

15   virtually identical to those in Libra.

16          For the record, let me explain briefly what the parts

17   of the transaction are that are being settled and what remains

18   open.  As the Court will recall from Libra, these transactions

19   have certain basic components.  First, there is a special

20   purpose entity that is created for each transaction.  Those

21   were called Libra CDO Limited, in the case of the Libra

22   transaction; MKP Vela CDO, Ltd. for that transaction.

23          Assets were put into these special purpose vehicles

24   through the sale of notes and the special purpose vehicles

25   entered into credit default swap agreements in October and

08-13555-scc Doc 24730-1 Filed 05/14/14 Entered 05/14/14 18:46:09 Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 1 Pg 34 of 36

Page 33

1    November of 2006 with LBSF that gave credit protection to LBSF

2    keyed primarily to the performance of certain mortgage pools.

3    As we all know, mortgages did not perform well between 2006 and

4    2008.  So the amount that would have been due to LBSF at the

5    time of the LBSF filing for protection in October of 2008 was

6    very large and was expected to increase.  The Court may recall

7    that a document called a "Green sledge declaration" was

8    presented to the Court in the hearing on the letter agreement

9    with Deutsche Bank which estimated the value of payments

10    expected under the Libra credit default swap agreement alone

11    would exceed 800 million dollars.

12    In addition to money raised through notes, these

13    special purpose vehicles also had a second source of funding

14    known as the senior swap agreement which was provided by SG for

15    both transactions.  LBSF contends that the purported

16    terminations of these transactions in October of 2008 were

17    invalid because they did not comply with certain requirements

18    in the documents for the termination procedures.  If these

19    transactions were not properly terminated, SG would be exposed

20    to payment of many hundreds of millions of dollars.  The assets

21    left in the special purpose entities would also be subject to

22    depletion if the transactions are not properly terminated.

23    As explained in detail in the motion, the settlement

24    agreement and the order, this settlement covers the exposure of

25    SG on its senior swap.  While preserving the right of LBSF and

```
1   SG as assignee of LBSF to recover the assets that remain in the

2   transaction.  Most of the changes, Your Honor, have to do with

3   the possibility of this -- what's referred to as future

4   litigation and how that is being dealt with in the order and

5   the agreement.

6           At this point, Your Honor, I'd like to yield to Mr.

7   Eric Winston, counsel for the official committee of unsecured

8   creditors for an explanation of the committee's position.  And

9   then I believe Mr. Steven Wolowitz wants to explain the

10  position of SG on the (indiscernible) briefly.  And that will

11  conclude the presentations for the motion unless the Court has

12  questions.

13          I do want to actually -- I have one more thing.  I do

14  want to read from, if I might, into the record, this

15  handwritten change.

16          THE COURT:  All right.

17          MR. RALPH MILLER:  -- is being made.  The handwritten

18  change, Your Honor, is on the last paragraph of the order.  And

19  since I believe all of that last paragraph is new since the

20  filed version, I'll read it all in context if I may briefly.

21  It's titled "Reservation of Rights with Respect to Future

22  Litigation".  "Nothing set forth in this order shall impair or

23  affect any rights, claims or defenses of the other Libra

24  parties with respect to the Libra termination claim or the

25  Libra priority claim or any of the rights, claims or defenses
```

```
 1    of the other Vela parties with respect to the Vela termination
 2    claim or the Vela priority claim" -- and this is the
 3    handwritten edition -- "or any other rights, claims or defenses
 4    of the other Libra parties or the other Vela parties in any
 5    litigation that the debtors or SG may bring related to the
 6    distribution of the remaining Libra assets or the remaining
 7    Vela assets."  I should note that there are some capitalized
 8    terms here which are defined in the order or the attached
 9    settlement agreement.
10         (Pause)
11         MR. RALPH MILLER:  I'm sorry.  I believe I read in a
12    word that was crossed out, Your Honor.  The word "may" was
13    crossed out in this document.  But we will correct it.  Okay.
14    I'm sorry.  That phrase should be "that the debtors or SG bring
15    related to the distribution", Your Honor.
16         And now, Mr. Winston.
17         MR. WINSTON:  Good morning, Your Honor.  Eric Winston
18    of Quinn Emanuel Urquhart & Sullivan on behalf of the
19    creditors' committee.  The committee supports the settlement
20    and requests that the Court grant the motion.  By virtue of the
21    settlement, the debtors' estate will obtain 370 million dollars
22    in cash within a very short period of time with a guaranty of
23    an additional seventy-five million dollars.  This comes with a
24    consensual resolution with Societe Generale which would
25    otherwise be expected to vigorously contest, as they have
```