1   already the termination claim.  In addition, the settlement

2   allows the estate the opportunity to recover up to

3   approximately seventy-two million dollars, as Mr. Miller

4   described.  Thus, the potential benefit to the estate is in

5   excess of a half a billion dollars.

6          The committee intervened in the Libra litigation last

7   year, participated in the summary judgment proceedings.  And

8   the committee's counsel, financial advisors and members have

9   been involved in lengthy negotiation with the debtors and

10  Societe Generale.  The product of this experience has resulted

11  in a settlement and the committee believes that the settlement

12  is in the best interest of the estates and general unsecured

13  creditors.

14         Unless Your Honor has any questions, that's the extent

15  of my presentation (indiscernible).

16         THE COURT:  Thank you.

17         MR. WINSTON:  Thank you.

18         MR. WOLOWITZ:  Good morning, Your Honor.  Steven

19  Wolowitz for Societe Generale.  Your Honor, SG supports and

20  agrees to the changes to the settlement agreement and the

21  proposed order and the conforming changes to the exhibits that

22  the debtors and the objecting parties have agreed to.  That's

23  the only statement for the record.

24         THE COURT:  It's a very brief statement.  I accept

25  that as a model for others to follow.

1          MR. RALPH MILLER:  Your Honor, the statement of Mr.

2     Wolowitz reminds me that we do need to clarify for the record

3     that in addition to some changes in the order, there have been

4     changes agreed to in the settlement agreement and some of the

5     implementing documents.  And those will also be reflected in

6     the final to be given to the Court this afternoon.

7          THE COURT:  Okay.  I have a couple of questions, Mr.

8     Miller.  And, really, it doesn't go to approving the settlement

9     which is now a consensual settlement that clearly offers

10    substantial benefits to the estate.  So as to that, there's no

11    issue.

12         I have a pure question about case administration.  I

13    have currently pending cross-motions for summary judgment that

14    I have happily disregarded for the past, I think, nine months.

15    And I may be wrong as to the exact time period.  But I was

16    first notified by counsel quite a while ago that because

17    settlement discussions were proceeding and the parties were

18    making significant progress that I might put my pencil down in

19    respect of the pending summary judgment decision.  I now see

20    that the issue of effective termination remains an open issue

21    or at least as it relates to certain aspects of the settlement.

22    To what extent, if at all -- and I think the answer is no but

23    if the answer is yes, I need to know.  To what extent, if at

24    all, do the parties expect that the termination issue will be

25    resolved in the context of pending motions for summary

1   judgment?  I think the answer is it won't be.  But if the

2   answer is it will, what, if anything, more is expected of the

3   Court other than simply rendering a decision?

4           MR. RALPH MILLER:  Your Honor, first of all, nothing

5   more is expected of the Court on those pending motions at this

6   time.  Let me explain very briefly how the debtors --

7           THE COURT:  I think the "at this time" clause is a

8   problem.

9           MR. RALPH MILLER:  Well, let me explain how the

10  debtors see this moving forward.  The debtors are always

11  anxious to try to work by cooperation and agreement if they

12  possibly can.  After this resolution, the debtors hope that we

13  will be able to develop a dialogue with the other parties which

14  includes the trustees and the noteholders or their

15  representatives.  There is some difficulty, Your Honor, in

16  these transactions actually finding all the noteholders and

17  determining who can speak for them.  If we're able to achieve

18  that, our goal obviously would be to see if there's some sort

19  of consensual resolution which would mean that there will be

20  nothing the Court would ever have to decide.  If there's not a

21  consensual resolution, the termination issue is somewhat

22  different between Libra and MKP Vela.  So if Libra were

23  resolved by agreement then these summary judgment motions would

24  clearly become essentially moot.  If Vela has to be heard,

25  there will need to be new -- probably discovery and some

1    motions because there is a discovery issue in Vela that may

2    have to be resolved or may not. It might be resolved by

3    agreement.

4           There is a remote possibility which I believe is

5    unlikely that the other parties might agree to go ahead and

6    basically adopt by reference the pleadings that were filed by

7    SG and ask the Court to reactivate the pending motions for

8    summary judgment. I think in that case, we would treat them as

9    a new filing for summary judgment but we probably would prefer

10   not to have all the papers discarded in the unlikely event that

11   that happens. If that occurred, essentially the same issues

12   that have already argued and presented would simply be

13   presented to the Court on that issue. But that would require

14   agreement of other parties and they would have to be convinced

15   that the arguments they want to make are arguments that have

16   already been made by SG. So in that regard, I think our

17   request would be please don't discard your files. Please do

18   treat these motions as inoperative at this point and we --

19          THE COURT: Did you say inoperative?

20          MR. RALPH MILLER: Inoperative, yes, Your Honor. And

21   if you wish to remove them in some administrative way from the

22   docket, that's fine. But in full disclosure, we really believe

23   those issues were well framed. The debtors feel strongly that

24   we were entitled to summary judgment. We feel that still, like

25   we're not able to settle, we're going to be brining that issue

Page 40

1    back to the Court in very much the same form that you've

2    already seen.  And then, of course, we would not like for the

3    Court to have to reinvent any wheels if that issue does not get

4    resolved by agreement.

5         THE COURT:  For docket control purposes, I rather wish

6    that we could come up with a way for this to be removed from

7    the docket without prejudice so that it could be restarted at

8    some point in the future only because I have to track pending

9    matters that aren't resolved.

10        MR. RALPH MILLER:  Your Honor, I think we will need to

11   confer briefly with all the parties who have interest in the

12   (indiscernible).  Certainly, that makes sense to remove it for

13   administrative purposes so it's no longer being tracked.  And

14   it's certainly not in our view anything that would be

15   appropriate to be decided until the other parties who may want

16   to weigh in get a chance to decide what position they want to

17   take.

18        THE COURT:  Okay.  My next question was to the Vela

19   matter which I didn't learn about until the summary judgment

20   motion was filed.  I may have learned about Vela in the context

21   of Libra but I don't remember knowing about it.  And what's not

22   clear to me is what if the litigation with respect to Vela

23   which as been described weakly in the moving papers will be

24   brought or is that simply a reservation of rights to bring that

25   litigation?

1          MR. RALPH MILLER:  Your Honor, there's a tolling

2    agreement involving Vela that tolls avoidance actions, ipso

3    facto claims and also would toll this termination claim.  And

4    we actually believe the termination claim doesn't need to be

5    tolled because there's no statute of limitations issue in the

6    contract claim.

7          So whether the Vela case even needs to be brought

8    would be a result of these discussions we hope to be able to

9    have.  I do understand that the Vela noteholders are somewhat

10   more available and accessible than the Libra noteholders have

11   been.  We understand that, we don't have details, that more of

12   them have been in contact with the trustee.  So we're somewhat

13   optimistic that we may be able to move more rapidly toward a

14   consensual agreement if that's possible in Vela.  And, of

15   course, there is a remote possibility, Your Honor, that the

16   parties might agree to an alternative dispute resolution

17   proceeding of some kind.  We don't think that's necessary, of

18   course, but that is another option.

19         While all those are proceeding, since there is a

20   tolling agreement, our intention would be not to put another

21   case on the Court's docket.  And if a case did come onto the

22   Court's docket, it would be focused on the issues that the

23   parties felt needed to be brought to the Court for decision.

24         THE COURT:  Okay.  Now, with some trepidation, I'm

25   going to mention something because it goes to docket control.

08-13555-scc Doc 24730-2 Filed 01/27/14 Entered 01/27/14 13:46:09 Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 2 Pg 7 of 25

Page 42

1    When I learned that there was a settlement that was being

2    documented in the context of the Libra case, I withheld the

3    issuance of a certain decision in Harrier and Ballyrock.  That

4    decision is, for all practical purposes, ready to issue.  The

5    principle reason that I withheld issuing my decision is that I

6    did not want any aspect of that decision to affect what I

7    understood to be sensitive ongoing negotiations in Libra.  I

8    intend to issue that decision.  It's just a question of when.

9         MR. RALPH MILLER:  Well, Your Honor, I'm well aware of

10   those overlapping issues.  The same sensitive issues are now

11   part of the negotiations with remaining parties in these

12   transactions.  And I think sometimes uncertainty is beneficial

13   in negotiations.  Sometimes it's not.  So obviously, we

14   don't -- well, it's the Court's decision on what you want to

15   do.  But in our view, the same sensitive issues are still being

16   discussed.  And the Court may recall -- and this is sort of a

17   technical issue -- that the senior swap was written so that it

18   did not cover termination payments.  The SG settlement

19   essentially reflects only the issues related to the inadequacy

20   of the termination mechanism.  It does not reflect one way or

21   another the value of what's called the priority claims.  And

22   those claims involve the ipso facto doctrine the Court has

23   already dealt with in part in the NY Sapphire decision of

24   January 25th.  They also involve certain avoidance actions that

25   have recently been filed that are essentially alternative

Page 43

1  rights to recovery in the event that those are interpreted in

2  certain ways.  The Ballyrock and Harrier decisions have impact

3  on some of those same issues particularly under New York law.

4  And for that reason, this settlement really leaves all of those

5  issues on the table and open and for discussion.  And this

6  settlement does not reflect any valuation or interaction with

7  those issues one way or another.  So the uncertainty remains

8  and our hope would be that we can have some discussions in the

9  present environment and try to see what comes from that.

10         THE COURT:  Well, to the extent uncertainty is

11  helpful, I'm going to keep things uncertain for a while longer

12  but not much longer.  And you have sixty days of uncertainty.

13  I hope you can use it wisely.

14         MR. RALPH MILLER:  Thank you, Your Honor.  Mr.

15  Schaffer, I think, wanted to --

16         MR. WOLOWITZ:  I'm sorry.  Could I just -- before Mr.

17  Schaffer, Your Honor -- Steve Wolowitz for SG.

18         THE COURT:  Yes, Mr. Wolowitz?

19         MR. WOLOWITZ:  Just --

20         THE COURT:  I just complimented you on brevity.

21         MR. WOLOWITZ:  I hope I'll be equally brief this time.

22  One slight modification to what Mr. Miller said with respect to

23  the pending Libra adversary proceeding.  SG, of course, if the

24  settlement agreement is approved, would be dismissed from that

25  action.

Page 44

1          THE COURT:  Yes, of course.

2          MR. SCHAFFER:  Hopefully just as brief.

3          THE COURT:  Mr. Schaffer?

4          MR. SCHAFFER:  Your Honor, Eric Schaffer for the Bank

5   of New York Mellon Trust Company, trustee on the MKP Vela.  In

6   our limited objection, we expressed our concerns that the

7   settlement not bind parties in any promised but not yet issued

8   future litigation.  The amendment to the order as has been

9   presented to the Court addresses our concern.

10         THE COURT:  Fine.  I'm pleased to hear that.  Is there

11  anyone else who wishes to be heard at this point?

12         MR. JOHNSON:  Yes, Your Honor.  Good morning, Your

13  Honor.  Michael Johnson from Alston & Bird on behalf of Bank of

14  America as the Libra trustee.  Your Honor, I just wanted to

15  address briefly some of the issues that have just been

16  discussed the pending motions in respect of termination of the

17  Libra swap.  Just to clarify something that Mr. Miller said, my

18  client and the Libra CDO are actually parties to the pending

19  transaction.  And I do not have any authority from my client as

20  of today here and now to stand down on those motions.  In light

21  of the concerns that Your Honor has expressed about the Court's

22  docket and the statements Mr. Miller just made about a desire

23  to have negotiations to see whether those motions can be

24  resolved, I'm prepared to go back to my client and talk about

25  those things.  But I just wanted to clarify today for the

Page 45

1   record, Your Honor, that right here right now I don't have any

2   authority to consent to withdrawing those motions on behalf of

3   my clients even on a without prejudice basis.  But again, I

4   will go back and talk to my clients about that and talk to Mr.

5   Miller about it as well.

6        THE COURT:  Okay.  Thank you for that.  I'll ask one

7   more time.  Is there anyone else who wishes to be heard on this

8   at this point?  Apparently not.

9        The motion for approval of the settlement is granted

10  in accordance with the form of order that has been handed

11  portions of which are handwritten and the handwritten portions

12  have been read into the record by Mr. Miller.  I'm pleased that

13  the parties have been able to reach what appears to be a very

14  favorable settlement from the estates' perspective.  One of the

15  aspects of the Libra case, and I gather Vela is comparable,

16  that may not be apparent from the relevant presentation today

17  is that the transactions that underlie the settlement are of a

18  rather complexity that is beyond that of (indiscernible).  It's

19  extraordinarily very hard to understand third party track.  And

20  the arguments made by both LBSF and SG in connection with the

21  summary judgment motion were extraordinarily well presented.

22  And the issues are issues of first impression and hopefully the

23  parties will agree to settlements in the other matters

24  including Vela.  It is apparent to me as noted in the motion

25  papers that any resolution of this in Court is one that will

1    not stop here and it will involve levels of appeal and expense

2    and ongoing risk.  And so for that reason, I am delighted to

3    approve the settlement and recognize that it represents an

4    extraordinary effort by the lawyers and other advisors who have

5    worked to develop I think a very sound resolution to this

6    ongoing dispute.  And for that reason, I approve it.

7         MR. RALPH MILLER:  Thank you, Judge.

8         THE COURT:  Mr. Miller?

9         MR. HARVEY MILLER:  Harvey Miller again.

10        THE COURT:  Oh.  If anyone wishes to be excused in

11   connection with this matter or other matters that we've heard,

12   you can leave.

13        (Pause)

14        MR. HARVEY MILLER:  I was about to say off the record,

15   Your Honor.  It's not often I can follow my father to

16   (indiscernible).

17        THE COURT:  Okay.  I'm the only one that laughed,

18   though.

19        (Pause)

20        MR. HARVEY MILLER:  If Your Honor please, this is item

21   7 on the agenda today.  It's the debtors' motion pursuant to

22   Section 105(a) of the Bankruptcy Code to stay prosecution of

23   avoidance actions as proposed in the motion and to extend the

24   time to serve summonses and complaints and to file the

25   avoidance actions.

```
1          Your Honor, in the context of the size and complexity
2    of the bankruptcy cases in the Lehman enterprise and the
3    thousands of transactions that have to be analyzed amidst the
4    many other complex and difficult tasks that the debtors have
5    had to undertake, the statute of limitations prescribed by
6    Section 546(a) do not present an adequate period of time to do
7    all the diligence and investigation that would normally occur
8    in connection with the prosecution of avoidance actions under
9    the Bankruptcy Code or otherwise.
10         As a result, the debtors worked with the -- closely
11   with the creditors' committee in an effort to preserve every
12   potentially collectible asset of the debtors and not to incur
13   unnecessary expenses of litigation and therefore undertook a
14   major effort to persuade potential defendants to enter into
15   agreements tolling the application of the statute of
16   limitations.  That effort was largely successful and there have
17   been over 230 tolling agreements that have been agreed to and
18   executed covering hundreds of potential defendants.
19         However, for lack of time, logistical problems and, in
20   some cases, positions asserted by potential defendants, the
21   debtors were compelled to commence approximately fifty-eight
22   adversary proceedings prior to the expiration of the statute of
23   limitations.  These adversary proceedings were commenced to
24   assure that no potential real claim would be lost because of
25   the expiration of the statute of limitations.
```

08-13555-scc  Doc 04730-2 Filed 05/12/14 Entered 05/12/14 13:46:09  Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.    Exhibit A
Part 2   Pg 13 of 25

Page 48

```
 1         Diligence as to all potential claims is ongoing.  It
 2    is the debtors' intention to the extent feasible to avoid
 3    substantial litigation with the attending costs and
 4    expenditures of time that would be involved in such litigation
 5    by seeking to resolve claims in a more expeditious manner and
 6    thereby promote judicial economy.
 7         The requested stay would be in the best interest of
 8    all parties and the administration of the cases.  Indeed, after
 9    further diligence and where appropriate, Your Honor, and
10    warranted, the debtors may discontinue the assertion of
11    avoidance claims.  To effectuate that intention and consistent
12    with the precedent in this circuit and elsewhere, the debtors
13    have made the instant motion.  The debtors propose that the
14    stay of prosecution be for an indefinite period but subject to
15    the right of any avoidance action defendant for cause shown to
16    move before the Court to vacate or modify the stay.  The
17    debtors would also have the right to terminate the stay should
18    they deem it appropriate to move forward with the prosecution
19    of any avoidance action.
20         In addition, as to the five avoidance actions, the
21    debtors request an extension of time within which to complete
22    service of process upon the main defendants pursuant to Rule
23    4(m) of the Federal Rules of Civil Procedure as incorporated
24    into the bankruptcy rules.  The debtors request that a sixty
25    day extension beyond the normal 120-day service period
```

1    specified in Rule 4(m).  A stay of time to complete service is

2    necessary as there are a number of transferees whose identities

3    are not readily available to the debtors.  They are noteholders

4    who received distributions made by the debtor to their

5    indenture trustee that were thereafter distributed to the

6    individual noteholders.  The debtors need additional time and

7    perhaps third party discovery to identify such noteholders and

8    to complete service.

9          In (indiscernible), Your Honor, this is a simple

10   motion.  It seeks a practical solution to a situation which is

11   inherent in cases of size and complexity of these cases.  Many

12   of the potential defendants agreed by entering into the tolling

13   agreements that have been executed and agreed to.

14         In connection with the fifty-eight adversary

15   proceedings commenced, only eight of the main defendants have

16   objected to the motion.  The remaining defendants did not

17   object.  And of the eight objections, Your Honor, two are

18   limited objections.  The objections of Deutsche Bank and

19   Canadian Imperial Bank of Commerce are limited objections

20   seeking a specific limitation on the stay in number of days.

21         The granting of the stay is provident and will result

22   in no prejudice to any of the adversary parties.  All rights

23   are reserved.  And a lapse of any time caused by the stay will

24   not be used to the disadvantage of any avoidance action

25   defendants.  As noted, any avoidance action defendant may seek

1  to modify or vacate the stay for cause shown.  There is no

2  intention to prejudice any party but rather provide the

3  opportunity to promote judicial economy and, at the same time,

4  explore more expedient means to resolve these cases.

5          There can be no dispute, Your Honor, that the granting

6  of the motion is within the sound discretion of the Court.  The

7  Court has the inherent power to issue such a stay and we have

8  cited the authorities in our submission papers.  And as Your

9  Honor is undoubtedly aware, in cases before the bankruptcy

10  court in this district, in the Delphi Corporation case and in

11  the Enron case, Judges Drain and Gonzales did extend the

12  prosecution -- did stay the prosecution of cases.  In the

13  Delphi case, there were more than 780 cases which were

14  stayed -- prosecution was stayed for over seventeen months and,

15  similarly, for extended periods in the Enron case.

16          Debtors filed a reply to the objections, Your Honor, a

17  rather extensive reply which dealt with the general contentions

18  of the objectors and some specific contentions of the

19  objectors.  I can go through that but I imagine Your Honor

20  would like to hear from the objectors.

21          THE COURT:  I would.  And I've also read the papers.

22          MR. HARVEY MILLER:  Thank you, Your Honor.  So I will

23  turn over to the objectors.  I assume the creditors'

24  committee -- you may want to hear from them now or after.

25          THE COURT:  Does the committee wish to wait or do you

Page 51

1    want to jump on now?

2         MR. O'DONNELL: I think we can state our position now,

3    Your Honor. Your Honor, Dennis O'Donnell again from Milbank

4    for the official committee of unsecured creditors. We filed a

5    statement in support of this motion, Your Honor. As Mr. Miller

6    indicated, we worked closely with the debtors and in terms of

7    the whole avoidance action process. We intended to

8    (indiscernible) the order as modified (indiscernible) our right

9    to participate and to assure, essentially, that these actions

10   are prosecuted with all of the appropriate (indiscernible)

11   turns out to be the right action to take. We believe that of

12   all the objections are adequately addressed by the provision in

13   the order that permits a defendant to come to this Court for

14   good cause shown to seek relief. All of the objections are

15   variations on the theme of it's too long or we'll be

16   prejudiced. If, in fact, there is a long delay or if there is

17   prejudice to be shown, they can come to the Court and ask the

18   Court for a relief from the stay.

19        So for that reason, we believe that those objections

20   should be overruled and the stay granted as requested.

21        THE COURT: Okay. I guess I'll hear from the

22   objectors one at a time. I can't tell how many ways you're

23   here representing objecting parties but I'll take them in no

24   particular order. Whoever gets to the podium first.

25        (Pause)

1          MR. TOP:  Good morning, Your Honor.  Frank Top of

2     Chapman & Cutler representing U.S. Bank, National Association,

3     as the trustee in a lot of these things -- transactions.  And

4     again, we filed papers in connection with this and

5     (indiscernible) to support (indiscernible).  So I'm not going

6     to dwell too much on things that we've already said in our

7     papers.  Just to point out that, really, the burden is upon

8     them to demonstrate the need for a stay.  And I don't doubt the

9     fact that these are very, very complex transactions and there's

10    a lot of adversary proceedings and the like.  Nonetheless, the

11    defendants in these also have rights that need to get these

12    proceedings moving as well.

13         THE COURT:  Well, how are the defendants' rights

14    adversely affected by the stay when there's the ability for

15    caution to obtain relief?

16         MR. TOP:  Well, because, first of all, to the extent

17    that a particular defendant is going to move the Court to do

18    so, it's going to be one particular defendant in what might be

19    a proceeding that has hundreds of defendants.  I think one of

20    those -- one of the adversary proceedings names at least ninety

21    noteholders and eight or nine different trustees and the like.

22         The stay may actually have an impact on -- from a

23    practical perspective, in terms of identifying witnesses and

24    things like that, people change jobs and the like.  It also may

25    have an affect on statutes of limitations.  I'm not sure but to

Page 53

1    the extent that that's a concern for some people particularly

2    where they have further distributed the money to somebody else,

3    I think that needs to be taken into consideration.

4         And that whole notion that we can come in and ask the

5    Court for some relief from the stay really puts the burden on

6    us, on the defendants, in order to show --

7         THE COURT:  Absolutely.

8         MR. TOP:  Yeah.

9         THE COURT:  Absolutely.

10        MR. TOP:  But that's not where the burden --

11        THE COURT:  What's wrong with that?

12        MR. TOP:  -- is under the law.

13        THE COURT:  But what's wrong with that?

14        MR. TOP:  Because the likelihood -- and I have no idea

15   how this will play out but it seems unlikely if only one

16   defendant is seeking relief from the stay that that would be

17   granted in the context of a much bigger case.  It would be much

18   harder to show cause.  I have no idea one way or the other.

19   But that -- again, that's putting the burden on us where if you

20   just put a limited amount of time on a particular stay and the

21   debtors need more time, they can file a paper, too, to say,

22   look, we're coming up on our six months or four months or

23   whatever the Court decides is an appropriate period of time.

24   They can come before the Court and say, look, we need some

25   additional time to do x, y or z.

```
 1            THE COURT:  So is your principle concern that the stay
 2    as requested is indefinite in duration and what you're really
 3    seeking is a time limited stay?  Is that your issue?
 4            MR. TOP:  I think that's part of it.  But I also think
 5    their ability just to say the stay is off unilaterally is also
 6    inappropriate and that it creates again a different leverage
 7    point as we try to negotiate resolutions in all these
 8    particular transactions.  I think it ought to be a mutual stay.
 9    And what I would suggest is forget about the stay but why not
10    put together a scheduling order with respect to these
11    transactions which takes into account all of the debtors'
12    needs.  They can -- if they feel they need six months in order
13    to put together a list of all the defendants and serve papers
14    and things like that, that's certainly something that people
15    can talk about.  But at least, if we have a scheduling order
16    that sets forth all the dates when things are going to be due,
17    when answers need to be submitted, when third party
18    defendants -- or when defendants can submit discovery and the
19    like to the debtors that's fair, that could all be put together
20    in some kind of a scheduling order that isn't necessarily
21    written in stone but at least that all parties in the
22    proceedings know exactly what to expect.
23            And so, with that, Your Honor, that's -- I'll leave it
24    to other objectors.  Thank you.
25            THE COURT:  Okay.  Thank you.
```

08-13555-scc  Doc 24730-2  Filed 05/12/14  Entered 05/12/14 13:46:09  Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 2 Pg 20 of 25

Page 55

1          MR. PIETRANTONIO:  Good morning, Your Honor.  Thomas

2     Pietrantonio on behalf of Interface Cable.  The objection of

3     Interface Cable is geared more towards this indefiniteness of

4     the stay, the length of the stay, Your Honor.  Our concern is

5     the preservation, the (indiscernible) and the preservation of

6     evidence.  Two years plus have already gone by.  We don't know

7     from the proposed order what the plans are for the -- when an

8     ADR type of format will be put in place, when the matters will

9     go forward, what access we'll have to relevant evidence.  It's

10    really the indefiniteness of time as counsel just said.

11          THE COURT:  Okay.

12          MR. PIETRANTONIO:  Thank you, Your Honor.

13          MR. PEDONE:  Good morning, Your Honor.  Richard Pedone

14    on behalf of Deutsche Bank Trust Company America as indenture

15    trustee.  We did not object to a stay entering but we do object

16    to the unlimited nature and duration of the stay as well as the

17    shifting of burdens.  We would agree with a 120-day stay with

18    the parties either coming back by consent or the debtors

19    establishing cause for the stay to continue.  That's what

20    Congress intended when they established the statute of

21    limitations.  So again, it's an objection to the shifting of

22    the burdens and the indefinite timetable.  Thank you.

23          THE COURT:  You're saying this is an issue of

24    congressional intent?

25          MR. PEDONE:  I believe when statutes of limitations

Page 56

1    were established, Congress did have an intent that litigation

2    proceed not that it be stayed indefinitely.

3          THE COURT:  Well, the litigation has commenced so the

4    statute's really not an issue.

5          MR. PEDONE:  Not if it's stayed for all purposes, Your

6    Honor.  I believe that's not the equivalent of actually

7    commencing --

8          THE COURT:  Well, I read the -- proscribed by Weil

9    Gotshal in response to the objections and agree with the

10   position expressed by Weil Gotshal and (indiscernible) think

11   it's (indiscernible) attributed to that as well.  The statute

12   as proposed has already served its purpose.  Parties understand

13   now precisely the nature of the claims being asserted.  And

14   you're on notice.  You can preserve your evidence.  You can do

15   whatever is necessary to protect yourself.  The only thing

16   that's happening is a period during which everybody is

17   (indiscernible) including the defendants.

18         MR. PEDONE:  Which is why we agree with the stay for a

19   definite period of time.

20         THE COURT:  I'm simply (indiscernible) with your

21   notion this is somehow congressionally sanctioned.

22         MR. PEDONE:  I accept that.

23         THE COURT:  Your objection is not congressionally

24   sanctioned in my view.

25         MR. PEDONE:  I respectfully restate my position, Your

1    Honor.  Thank you.

2         THE COURT:  Okay.  Fine.

3         MR. DASH:  Good morning, Your Honor.  Andrew Dash,

4    Brown Rudnick, on behalf of Loreley Financing (Jersey) Nos. 8,

5    15 and 24 Limited.  We join in the concern expressed by other

6    objecting counsel as to the indefinite nature of the proposed

7    stay and the unilateral ability of the debtors to declare the

8    stay lifted without any application notice to waive it.  Your

9    Honor, it provides them with an advantage in a negotiation.

10        We also object --

11        THE COURT:  What would you suggest would be the right

12   way for the stay to come to an end?

13        MR. DASH:  Well, Your Honor, if the applicants -- if

14   the objectors are to be required -- if the defendants are to be

15   required to come to the court on cause shown, obtain a lifting

16   of the stay from Your Honor, the debtors should be obligated

17   to, on notice, explain why they think the stay should be lifted

18   and appear at a hearing and allow other parties to address that

19   issue at that time.

20        In addition, Your Honor, I would suggest that it may

21   be -- if Your Honor is inclined to grant the stay, it may be

22   appropriate under these circumstances to ask the debtors to

23   provide periodic reports on the status of their diligence, the

24   status of their negotiations efforts so that the defendants can

25   understand where the debtors are in their process rather than

Page 58

1    waiting for some unknown time in the future to commence the

2    litigation.  We would think a thirty or sixty-day interval

3    would be appropriate in that regard.

4            THE COURT:  Okay.

5            MR. DASH:  Thank you, Your Honor.

6        (Pause)

7            MR. SHULMAN:  Good morning, Your Honor.  Motty Shulman

8    of Boies Schiller & Flexner on behalf of BnP Paribas London

9    branch.  Our objection is slightly different than all the other

10   objectors because our case is different.  We're here as a

11   defendant.  The debtor is a defendant in our matter.  Unlike

12   all the other avoidance actions where the debtor came, filed

13   lawsuits on the eve of the statute of limitations, our lawsuit

14   was commenced about a month prior by the trustee of our

15   facility, of our bank.  We remain as a defendant; the debtor

16   remains as a defendant.  Subsequently, the debtor filed a

17   counterclaim naming the facility as a counter -- as an

18   interpleader defendant.  This is not a situation where there's

19   nobody losing money, there's nobody being prejudiced because

20   the defendant has the money.  The plaintiff simply needs a

21   little more time.

22           We have millions of dollars that are being tied up by

23   virtue of the pending litigation.  The debtor comes in now and

24   says let's put this on an indefinite stay.  Our money is being

25   tied up.  We are prejudiced by the stay.  In fact, the debtor

08-13555-scc Doc 12730-2 Filed 05/12/14 Entered 05/12/14 13:46:09 Main Document
LEHMAN BROTHERS HOLDINGS INC., et al. Exhibit Part 2 Pg 24 of 25

Page 59

1    recognizes it's prejudice.  In response to U.S. Bank's

2    objection, the debtor recognizes the distinction and in a reply

3    makes a distinction between a plaintiff seeking a stay which

4    the debtor says -- it cites law saying the Court should give

5    weight to it and a defendant who's coming in and seeking a

6    stay.  The defendant who's coming in and seeking a stay or

7    objecting to a stay is giving less deference because there is

8    much less prejudice.

9         We object to the stay not so much in terms of the

10   limitations of the stay or the time or the other objections

11   that were raised by the other parties, but we are asking that

12   we simply be taken out from the list of Schedule A on the

13   actions that are subject to the stay because we are differently

14   situated.

15        THE COURT:  Let me ask you this.  My understanding of

16   the stay that's being proposed here is that it's not everybody

17   standing around with their hands in their pockets.  It's people

18   simply not litigating but being permitted to engage in

19   consensual resolutions if those are possible.

20        he adversary docket in these cases was an extensive

21   docket even before the fifty-eight cases were commenced last

22   month.  And many of those cases have been pending for very long

23   periods of time at no fault of the Court and no fault of the

24   parties.  It's just the nature of litigation as you know.

25   You're not getting as many (indiscernible) anyway.  How are you

Page 60

1   really prejudiced?

2          MR. SHULMAN:  Well --

3          THE COURT:  Because the only you get the money quickly

4   is if you reach some kind of an agreement that resolves the

5   interpleader because parties are acting like matured bond

6   notes.

7          MR. SHULMAN:  This is not a situation where there has

8   been a lawsuit filed and now we need to take a stay and pause

9   simply to engage in settlement negotiations.  Before the

10  lawsuit was filed, the parties engaged in settlement

11  negotiations.  Those settlement negotiations apparently were

12  unsuccessful.  But --

13         THE COURT:  Maybe it's time for ADR?

14         MR. SHULMAN:  We proposed to the debtor that we take a

15  sixty-day stay for ADR.  We have the same stipulation with

16  regard to an overcollateralization of escrow.  We did propose

17  that.  The debtor has rejected that.  We're amenable to

18  settlement negotiations.  What we are objecting to is the

19  debtor, who is a defendant over here, simply hijacking the

20  litigation to the plaintiff is giving the right to litigate in

21  the matter that they choose.  And it's different than all the

22  other fifty-seven avoidance actions that the debtor has filed.

23  All the other fifty-seven actions are actions where the debtor

24  comes in and filed a lawsuit.  The defendant still has the

25  money.  We don't have the money.  We're a defendant  over here.