Page 61

1   The debtor's a defendant over here and does not deserve the

2   deference that's given to a plaintiff by seeking a stay.

3           THE COURT:  All right.  I understand your position.

4           MR. SHULMAN:  Thank you.

5           MS. GROSSMAN:  Good morning, Your Honor.  Melanie

6   Grossman of Willkie, Farr and Gallagher on behalf of Natixis

7   Financial Products, LLC.  I just wanted to note my appearance

8   for the record, but we joined in the papers filed by the BnP

9   and I don't have anything to add to counsel's arguments.

10          THE COURT:  Okay.

11          MS. GROSSMAN:  Thank you.

12          MR. TRUST:  Good morning, Your Honor.  Brian Trust,

13  counsel to Canadian Imperial Bank of Commerce.  This is with

14  respect to the transaction; it's a synthetic CD I'll refer to

15  in the pages as Pixus (ph.).  And CIBC or Canadian Imperial

16  Bank of Commerce holds the class A1 note issued by Pixus which

17  similar to (indiscernible), the CEO issuer in that transaction.

18          You know, first and foremost, we certainly hope for a

19  trial date.  CIBC generally supports the debtors' request for a

20  litigation stay, like the rationale for the filing of avoidance

21  actions and we certainly understand and appreciate the debtors'

22  desire for the stay as stated on the record today as

23  (indiscernible) in the moving papers.

24          CIBC obviously has several board constituents

25  including its regulated stake holders and some disclosure

```
 1    requirements.  The primary focus of what we'd like to suggest

 2    the Court consider really relate to achieving a modest balance

 3    by focusing on some rational, reasonable but limited end date.

 4         Not -- nothing that is either too short, nothing

 5    obviously that would go out too, too far as well, but we would

 6    just suggest that the order be entered and the Court consider

 7    putting some reasonable end date in the order for the purpose

 8    of allowing the parties to take stock of where they are, to

 9    allow the parties as well as the Court and all of the parties

10    in interest to understand where we are in the stake process.

11         It strikes us that this is a, I'd say, a minor burden

12    that would be placed upon the debtors to actually have to go

13    back after some reasonable period of time.  And just to be

14    clear, I'm not talking about three or six months, but some

15    reasonable period of time given the quantum of the lawsuits

16    filed to in fact move the Court to raise supplemental extension

17    and give parties in interest an opportunity at that point in

18    time to consider what their rights are as opposed to an all-

19    the-time obligation for, you know, cause shown.  Because facts

20    change, circumstances change and it's impossible to -- they

21    have these litigations with them play out (sic).

22         So from CIBC's perspective, we are only focused on the

23    tenor and we thing that the minor adjustment of the reasonable

24    time with the debtors would be in everyone's interest and

25    certainly preserve the interest of the estate, as well.
```

Page 63

1          Thank you, Your Honor.

2          THE COURT:  Okay.  Thank you, Mr. Trust.

3     (Indiscernible) --

4          MR. WILSON:  Your Honor, this is Bruce Wilson of Kutak

5     Rock appearing telephonically on behalf of Nebraska Investment

6     Finance Authority.

7          THE COURT:  Okay.

8          MR. WILSON:  We're the last objector, I think, to the

9     motion.  And we believe we're material and different than the

10    other objectors in one respect and that is in our circumstance,

11    the debtors have committed -- it has been alleged that an

12    individual or former employee of the debtors have (sic)

13    committed actual fraud.  And in that context we believe that

14    internal discovery and mediation would be insufficient because

15    we may need sworn statements -- just doing depositions, we may

16    need (indiscernible).  There's currently no talking

17    preservation requirement in place.

18          So, for the reason that we believe there's been an

19    alleged actual fraud, nothing in these circumstances would

20    compel our case with an -- except if we were -- except if we

21    were staying to proceed.

22          Now, we also believe we're getting prejudice because

23    we filed the claim that the debtor owed the Nebraska Investment

24    Finance Authority a certain sum and they allege that we owe the

25    debtors a certain sum plus interest.  And we believe interest

Page 64

1    is accruing and we don't believe the debtors should both file a

2    claim against our claim and as for a stay, all interest is

3    accruing.

4              THE COURT:  That's your position?

5              MR. WILSON:  yes, Your Honor.  We believe that because

6    the -- primarily, the allegation is actual fraud.  But we don't

7    believe that the parties should sit back and really do nothing

8    and, you know, in terms of (indiscernible) mediation, really

9    amounts to, in our view, an insufficient measures (sic) to

10   protect and preserve evidence and to move forward.

11             THE COURT:  Okay.  I've heard you.

12             Are there any other objectors on the (indiscernible)?

13             MR. MILLER:  I counted eight, Your Honor, and they

14   were all identified.

15             THE COURT:  All right.  Have you been counting?  I

16   haven't.  Mr. Miller, do you want to respond?

17             MR. MILLER:  Very briefly, Your Honor.  First, I'm a

18   little confused, Your Honor, by Nebraska, because in their

19   papers, they basically say mediation should be ordered to

20   proceed immediately.  And if not successful, the stay should be

21   lifted.  I think the position announced by the gentleman on the

22   phone is different from that.

23             But more importantly, Your Honor asked a key question.

24   How are any of the defendants prejudiced, particularly in light

25   of the fact, as Your Honor pointed out, adversary proceedings

Page 65

1    by their nature take a long time -- nobody's fault in

2    connection with that.  And we're talking about, Your Honor, 445

3    names defendants in the 58 actions.  And when we are able to

4    identify the note holders in some of these transactions, that

5    number may multiply by two times.  So we may be talking about

6    1,000 defendants.

7            And the objective of the stay motion, Your Honor, is

8    to avoid proceedings in this courtroom.  As Your Honor pointed

9    out, there's no intention to sit around and just let time

10   expire.  The effort is going to be to try and find an expedient

11   means, maybe alternative dispute resolution, to resolve these

12   claims.

13           In addition, there is further diligence that has to be

14   done with respect to all of the claims, Your Honor.  It would

15   be, in our view, Your Honor, in the interest of judicial

16   economy, to avoid having constant proceedings before Your Honor

17   about discovery, about timings and schedules.  The concept of

18   having scheduling orders for all of these matters, Your Honor,

19   would tie you up, I think, for weeks.  And would be

20   unnecessary, particularly if we can resolve this in another and

21   easier fashion.

22           So we have 445 named defendants; we have over 230

23   towing (ph.) agreements covering hundreds of defendants.  So

24   what we're talking about, Your Honor, essentially is well over

25   1,000 defendants.  In terms of preservation, all the records

08-10055547-scc Doc 024730-3 Filed 007112144E Entered 0705110144 B46609Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 3 Pg 6 of 23

Page 66

1    are being preserved.  There is no substantive relief here that

2    would in any way affect the rights of any of the defendants.

3          The two limited objections, Your Honor, basically

4    say -- all they ask Your Honor to do is fix a time limitation.

5    Given the scope and the complexity of all of these

6    transactions, they're not simple vendor preferences, Your

7    Honor.  They're very complex situations in some of the

8    situations, and some of them, frankly, are novel and have to be

9    discussed among the parties.

10         This gives us the opportunity to search out a method

11   to deal with all of these claims, and in the context that

12   there's no prejudice to anybody.  Insofar as the debtors' right

13   to go forward, these are the debtors' claims.  It's sort of

14   weird in my experience, Your Honor, for the defendants to

15   object to lack of prosecution of a plaintiff's action.  These

16   are plaintiff's claims, clearly within the (indiscernible)

17   discretion of the Court.

18         So we would ask that Your Honor grant this motion.

19   The objectors are protected; they can come to court if there's

20   cause to modify the stay, if we're not making progress.  And,

21   Your Honor, I would commit at every state of the estate or

22   every omnibus hearing, we could give Your Honor a report as to

23   where we stand in connection with avoidance actions.  So in

24   that context, Your Honor, I don't believe there's any prejudice

25   and so request that the order be entered, Your Honor.

08-10055547cscDocDoc2730-3FileFiled0057121415EnteedOO951171141B346609MaExhDDicAment
LEHMXX BXGT FUNEHOLDINGS INC., et al.
Part 3Pg 8g of of 233

Page 67

1          THE COURT:  All right.  Thank you, Mr. Miller.

2          I receive monthly reports from Mr. Miller's partner,

3     Peter Vimberger (ph.) concerning the progress of the ADR

4     program, which is currently underway in these cases.  And those

5     letter reports are uniformly encouraging.

6          One of the modest achievements of this bankruptcy case

7     has been dedication of resources outside of the Bankruptcy

8     Court to dispute resolution.  And without going into specifics,

9     I am satisfied that the ADR program is working extremely well.

10          My understanding of the motion for a stay is that ADR

11     mediation, conversation between the debtors and defendants in

12     these adversary proceedings will be taking place during the

13     period of the request in (indiscernible).  I've reviewed the

14     objections to the stay and the response to those objection

15     filed by the debtors and I am satisfied that a stay is

16     absolutely desirable here and in the best interests, actually,

17     of all parties.

18          The only real issue may be complaints of individual

19     defendants, (indiscernible) being one, that somehow the stay

20     shouldn't apply to them.  I'm not carving anybody out today.

21     I'm going to enter an order that will apply to all defendants

22     in all other avoidance action adversary proceedings.  But I

23     note that to the extent that any party, whether it's a party

24     represented by Boies, Schiller or (Indiscernible) or any other

25     party for that matter, that is in a position to articulate

1  distinguishing characteristics that would suggest that the

2  imposition of the stay as to that party or parties is

3  inappropriate or prejudicial.

4      The order permits the filing of appropriate motion

5  papers in the hearing to consider, in effect, relief from the

6  stay. And in fact, something not particularly (indiscernible)

7  from the firm, motions for stay relief that are heard and

8  considered by bankruptcy courts every day of the week.

9      I am concerned, however, about the completely open-

10  ended nature of the stay and I note that my colleague Judge

11  Drain with Adelphi cases has entered a number of orders as

12  relating to the impositions of a stay. And I note that many of

13  the objectors have directly or indirectly raised some questions

14  as to having a stay that doesn't have an end date.

15      Independent of those objections, I had some concern

16  about a stay that doesn't have an end date. And so the

17  question becomes, what should the end date be? Three or four

18  months is too short, a year is too long. And something in

19  between there may not be (indiscernible) but it will be part of

20  the order.

21      I'm going to impose a nine-month period with the

22  understanding that within the nine-month period, there will be

23  active discussions between the debtors and the defendants.

24  There may be possible claims resolutions and presumably, an ADR

25  program that will take place within the period of time after

1    there has been sufficient active sharing of information that

2    allows for a meaningful ADR process to proceed.

3          The only thing really that the stay is doing is

4    looping the unnecessary pursuit of hostilities in this court.

5    I heard the reference to doing this by means of a scheduling

6    order and candidly, that's what I do in every one of the

7    adversary cases on my docket.  One of them, and you may know

8    which case I'm talking about, involved the scheduling order

9    that calls for a trial date in March of 2012.  That's a

10   scheduling order that demonstrates that litigation takes a long

11   time and as a result, it's a scheduling order that doesn't

12   answer the question before the Court.

13         As Mr. Miller both stated and implied, the Court has a

14   responsibility here to manage the docket.  And the docket in

15   these extraordinarily complex cases, I believe, is unique.  It

16   is unique not only in respect of the subject matter that is

17   being presented for adjudication on this morning's hearing in

18   connection with Alegra (ph.) settlement demonstrates the

19   extraordinary complexity of many of the transactions that are

20   at issue in the various litigations that are pending on the

21   adversary docket.  But it also demonstrates that parties need

22   time in order to understand the strengths and weaknesses of

23   their positions and to accommodate one another in reference to

24   the actual risks the parties face.

25         I'm entering an order in the form presented with the

Page 70

1    understanding that it will be a nine-month duration for the

2    stay.  I do have some concern as to the unilateral ability of

3    the debtors to, in effect, declare that the stay is no longer

4    in effect.

5            I'm going to leave that provision in with the

6    understanding that the debtors' ability to do that will be for

7    good cause.  And provided that there is good cause shown, and

8    I'm confident that the debtors will be in a position to do

9    that, I see no particular reason for the Court to be a

10   gatekeeper for a stay that is designed to benefit, in this

11   instance, the plaintiff.

12           Those are my comments.  The motion is granted.

13           MR. MILLER:  Thank you, Your Honor.

14           THE COURT:  If anyone wishes to be excused now, you

15   may be excused in reference to --

16           MR. MILLER:  Yes, Your Honor --

17           THE COURT:  -- (indiscernible) docket.

18           MR. MILLER:  -- item 8 is the (Indiscernible)

19   representing (indiscernible).

20           THE COURT:  We have one of the matter relating to

21   expedited discovery.

22           MR. DEFILIPPO:  Yes, Your Honor.

23           Good morning, Your Honor.  Paul DeFilippo, proposed

24   counsel for the debtors, adversary 10-03547.  This is a slight

25   exception to the stay, Your Honor, just to prove in this action

Page 71

1  there were forty-seven transactions and there's -- the

2  collateral has been distributed.  It involves the ipso factor

3  doctrine Your Honor ruled on in BNY.  We seek limited expedited

4  discovery to identify the note holders who were the ultimate

5  recipients of that collateral.  That information is not

6  currently in the debtors' possession.  We think that shows

7  cause for the issuance of an order permitting expedited

8  discovery.

9       We've received two objections; we believe we've

10  resolved them with an amended order that was provided to Your

11  Honor in which the objectors have proved which resolves their

12  desire to have copies of the discovery served on them as well

13  as the information received and addresses confidentiality

14  issues.

15       We have one change to make to the order if Your Honor

16  is prepared to grant the motion to resolve an issue by the

17  committee that goes to the committee not being required to pay

18  for the documents when they are provided to the committee.

19       THE COURT:  So it sounds as if it's all consensual at

20  this point.

21       MR. DEFILIPPO:  I believe so, Your Honor, yes.

22       THE COURT:  Let's just confirm that that's true.  Is

23  it all consensual at this point?

24       UNIDENTIFIED SPEAKER:  Yes, Your Honor, on behalf of

25  the committee.

1          MR. DOWNEY:  Your Honor, Richard Downey for Deutsche

2   Bank and our concerns were addressed.

3          MR. TOP:  Good morning, Your Honor.  Frank Top from

4   Chapman and Cutler on behalf of US Bank National Association

5   and I can confirm that we're fine with the Court

6   (indiscernible).

7          THE COURT:  Okay, that was easy.  I'll enter it on

8   consent.

9          MR. DEFILIPPO:  Thank you, Your Honor.

10         THE COURT:  Now we're down to the SIPC --

11         MR. WILTENBURG:  Yes, Your Honor.

12         THE COURT:  -- agenda.  Everyone who was involved in

13  the first part of this morning's calendar who wishes to be

14  excused may leave.

15     (Pause)

16         MR. WILTENBURG:  Your Honor, David Wiltenburg, Hughes,

17  Hubbard and Reed on behalf of the SIPC trustee.

18         On today's calendar there are two related items.  The

19  principal item is the motion of Newport Global for permission

20  to take 2004 discovery.  And there's a related motion by

21  Newport to seal certain aspects of that motion.

22         And as today started, I think all parties were

23  prepared to go forward with argument on the motion.  Indeed,

24  Mr. Caputo is here from SIPC, prepared to make comments and Mr.

25  Kobak was prepared to put the motion into a larger context

Page 73

1    about which you'll hear more next week.

2         However, in discussions this morning, we have -- the

3    parties have been able to reach an accommodation that results

4    in adjournment of the motion without date.

5         THE COURT:  Okay.

6         MR. WILTENBURG:  And I'm prepared to answer any

7    questions the Court may have on that.  But, the result is that

8    we don't need to address the principal motion.  It may be that

9    as a technical matter the sealing motion is still on the table.

10        The sealing motion related to certain exhibits and

11   information related to the motion.  The trustee -- again, it is

12   Newport's motion; the trustee has not opposed it.

13        THE COURT:  I looked at Newport's motion and I saw

14   that Exhibit I was under seal.  I've never seen Exhibit I.  I

15   also noted that there was a paragraph that had a number of

16   blackline provisions redacted out; I've never seen the full

17   motion.  It doesn't matter, I assume and because I was able to

18   get to the essence of the motion, I have no official need to

19   see it, but I would like to see the document that I haven't

20   been able to see.

21        MR. WILTENBURG:  Your Honor, we'll arrange for a

22   courtesy --

23        THE COURT:  Mr. Molton's here, I think he's getting up

24   to tell me I can get the document.

25        MR. MOLTON:  Good morning, Your Honor.  David Molton

Page 74

1    for the two Newport movants from Brown Rudnick.

2         We apologize that Your Honor did not get the

3    unredacted copy.  We will get those to you today.

4         THE COURT:  It's possible that they came to chambers.

5    I was preparing my (indiscernible) --

6         MR. MOLTON:  All right.

7         THE COURT:  -- so I was looking at the document and

8    (indiscernible) system.

9         MR. MOLTON:  And I don't think the redactions were of

10    a great extent in the document, so --

11         THE COURT:  No.

12         MR. MOLTON:  So, yeah, I just want to confirm with

13    what Mr. Wiltenburg said we did meet at his offices this

14    morning and I'm pleased to announce that we resolved the

15    matter.  So the motion would be, you know, adjourned without

16    date and we'll get documentation to Your Honor.  We'd

17    appreciate it if Your Honor would grant the sealing order for

18    the limited amount of confidential information that the SIPA

19    trustee had provided us.

20         THE COURT:  Yes, that's granted (indiscernible).

21         MR. MOLTON:  Thank you.  And that's -- unless Your

22    Honor has any other questions, I'm done for today.

23         THE COURT:  Great.  You're excused.

24         MR. MOLTON:  Thank you.

25         MR. WILTENBURG:  Your Honor, I think that's the end of

08-10505547escoDoDoc24780-3Fileed00571241t45-EntataddO0591470144t3t4q609Mi4ExhDoicAment
LEHMARCBROETHLEHROLDINGSINC;etal.Exhibit A
Part 3PgF5158823

Page 75

1      the calendar for today.  So --

2           THE COURT:  I do have some questions for you, then.

3      As I reviewed the 2004 motion presented by Newport and the

4      trustee's response, I viewed the arguments to be less about

5      discovery and more about a timely disposition of the claim

6      determination in respect of any other position (indiscernible)

7      claimed customer of LBI and the intricacies of the relationship

8      with LBI and LBIE claim, the allocation of that claim and

9      matters of (indiscernible).  And so what I'm interested in

10     knowing, although I don't need to hear anything that is not yet

11     ready for primetime, is whether the parties have had any

12     meaningful discussions about the timing for disposing of the

13     principal issues and dispute between parties.

14          MR. WILTENBURG:  Your Honor, that has been approached

15     in a couple of ways.  As the Court may recall, there was

16     initiative last March on behalf of a group of parties including

17     Newport and others similarly situated claimants whose -- who

18     have claims through LBIE.  And at that time, we opposed the

19     idea of setting that litigation in motion right then because

20     the -- at the time, there was an intensive effort between the

21     LBI estate's professionals and the LBIE estate's professionals

22     to reconcile and to see whether the two enemies did indeed, as

23     in theory they -- in the ideal world they would have kind of

24     mirror image accounts of -- so that the books and records would

25     match and the extent of the customer claim would be fixed.

08-13555-scc Doc 2730-3 Filed 09/21/11 Entered 09/21/11 13:46:09 Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Part 3 Pg 16 of 23

1          That effort resulted in allowance by the trustee of

2     the LBIE omn -- what's called the LBIE omnibus claim.  That is

3     the portion of LBIE's claim that is asserted on behalf of LBIE

4     customers; that's -- the terminology for that is the omnibus

5     claim.  And it was allowed in mid-September in an amount

6     exceeding six billion dollars.

7          However, the reconciliation effort is not at an end.

8     In the great mass of information underlying that six billion-

9     plus dollars in allowed claim, there are many transactions --

10     part of the uncertainty results in the mismatch between the

11     LBIE filing date which is September 15 and the LBI filing date

12     which is September 19.  And it continues to be a project for

13     the professionals to sort out what happened during that

14     peculiar period of time.

15          So, that reconciliation is -- has made great progress

16     but is not at an end.  And so in deference to the continuing

17     discussions, the trustee agreed to extend LBIE's time to object

18     to that partial allowance by an additional ninety days.  And so

19     a lot has been but the parties, that is LBIE and LBI, are not

20     at the end of the road in getting to the point of knowing what

21     they agree on exactly and knowing what they disagree on

22     exactly.

23          And until that -- those two things are known, we

24     continue to feel that it would be premature to put litigation

25     in motion regarding the LBIE claimants.  Because if it turns

1    out that there's a match between what LBIE is claiming against

2    LBI, on the one hand, and what the claimant is claiming against

3    kind of a Lehman enterprise on the other hand, it will be

4    unnecessary in those cases to address the question of whether

5    these claimants are independently customers of LBI, because

6    they're -- in effect, their derivative customer status will

7    come to the same thing from the point of view of an LBI-allowed

8    claim.

9            And so, that has been our thinking in terms of where

10   this category of disputed claims would be slotted into, you

11   know, a broader schedule covering many categories of disputed

12   claims.  About which Mr. Kobak will make further remarks at the

13   hearing next Thursday.

14           THE COURT:  What do you estimate is the time you're

15   (indiscernible) getting to that result?

16           MR. WILTENBURG:  Well, the parties picked ninety days

17   as kind of a benchmark for that from the determination date

18   which I believe was September 16.  If the professionals tell us

19   they think it's productive to extend beyond that, if -- it

20   could occur, I guess we would hope that any extension beyond

21   that would not, you know, take us to the, you know, too far

22   down the road.

23           THE COURT:  Okay.  Apparently my question made Mr.

24   Molton want to get up.

25           MR. MOLTON:  I didn't expect to have to get up again,

1    Your Honor, but I do want to say that what -- I know Mr.

2    Wiltenburg has his position on this.  We dispute many parts of

3    it; that's going to be left for another day in front of Your

4    Honor.  Clearly, I think, on behalf of all the prime brokerage

5    customers who have no alleged LBI connections, we'd like that

6    heard sooner than later.

7          We believe that the legal issues, as Your Honor

8    focused on, are not necessarily dependent on the reconciliation

9    per se and the exact line items in the various accounts.  And I

10   think Your Honor suggested that you may have recognized that.

11         And another point that I have to dispute because we're

12   not here to argue it, but it just -- lest silence be construed

13   as assent, we disagree that if the reconciliation matches, it's

14   an apples to apples situation.  Clearly what happens overseas

15   in London and how involved my client and the other prime

16   brokerage get treated under the administrator's proposed scheme

17   or plan or what have you, may leave us much worse off in terms

18   of having our property being treated as part of the general

19   unsecured ball (ph.) and not in a preferred matter, as it is as

20   a SIPA customer, having to share it not only with other

21   customers of LBIE but also vendors and other general unsecured

22   creditors.

23         So, clearly, from our position, we don't agree with

24   Mr. Wiltenburg that it's an apples to apples and if there's a

25   pure reconciliation it doesn't make a difference.  The

 1  customer, I'm sure Your Honor knows since I was here two years

 2  ago in front of Your Honor when this began on this issue and

 3  Your Honor gave me a hard time then on the 2004 motion.  I

 4  think the twenty-four months has made a little bit --

 5          THE COURT:  I was planning on giving you a hard time

 6  again.

 7          MR. MOLTON:  I'm sure you were, Judge.  We actually

 8  got a call from Mr. Wiltenburg yesterday and we were able to

 9  resolve it today.  I knew -- I know that you -- but in any

10  event, you know, we believe that the customer issue for these

11  prime brokerage customers is extremely important; is one that

12  can be heard and decided upon relatively promptly.  And we

13  would urge the trustee to tee it up and let it go.  Indeed,

14  when we talked, we had meetings with the ad hoc group last

15  March, maybe it was January through March.  We were actually

16  encouraged to create proposed stipulated facts and questions of

17  law that would form the basis of a, you know, of a hearing to

18  expedite the process.

19          That, unfortunately, went nowhere as I think that the

20  trustee continued to put its weight on finding a protocol with

21  LBIE, which at this point, as Your Honor had read the papers,

22  we don't believe is ever going to occur.

23          So, I just needed to say that in light of what Mr.

24  Wiltenburg said.  So, thank you, Your Honor.

25          THE COURT:  Okay.  What we've just heard is just

Page 80

1    colloquy on the part of both the trustee and Newport in

2    response to a question that I'm sorry I asked.

3          We've got -- is there anything new for today?

4          MR. MOLTON:  Your Honor, I think not.

5          THE COURT:  Okay.  We'll adjourn until the 2 o'clock

6    adversary block out (ph).

7       (Whereupon these proceedings were concluded at 11:48 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 81

1

2                    I N D E X

3

4                  R U L I N G S

5   DESCRIPTION                                    PAGE    LINE

6   Motion by Lehman Brothers Special Financing     20      6

7   to enforce automatic stay and for sanctions

8   granted

9   Motion by Lehman Brothers Holdings and its      26     16

10  affiliated debtors for authorization and approval

11  for the settlement agreement with Ambac Assurance

12  Corporation and certain related Ambac entities

13  Granted

14  Motion of the debtors for authority to enter     31     10

15  into settlement with SunCal trustee on behalf

16  of SunCal involuntary debtors granted

17                                                   46     10

18  Debtors' motion for approval of a settlement     47      6

19  agreement among LBSF, LBHI, and Societe

20  Generale granted

21

22

23

24

25

Page 82

1

2                          I N D E X, cont'd

3

4                              R U L I N G S

5   DESCRIPTION                                    PAGE    LINE

6   Debtors' motion to stay prosecution of          71      12

7   avoidance actions and to extend the time

8   to serve summonses and complaints and to

9   file avoidance actions granted for

10  nine-month duration

11  Motion for expedited discovery granted on       73       7

12  consent

13  Newport motion to file under seal motion        75      20

14  for leave to conduct Rule 2004 discovery

15  and certain exhibits thereto granted

16

17

18

19

20

21

22

23

24

25

Page 83

1

2                    C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6    **Lisa Bar-Leib**    Digitally signed by Lisa Bar-Leib
                          DN: cn=Lisa Bar-Leib, c=US
                          Reason: I am the author of this document
7    _____  Date: 2010.10.27 11:34:44 -04'00'

8    LISA BAR-LEIB

9    AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  October 21, 2010

18

19

20

21

22

23

24

25